## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administration Requested) |
| | ) | |

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

SportCo Holdings, Inc. and certain of its wholly-owned direct and indirect subsidiaries, as debtors and debtors in possession (the "**Debtors**" or "**Company**") hereby move (the "**Motion**") for entry of an order (the "**Interim DIP Financing Order**"), substantially in the form annexed hereto as **Exhibit B**, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court the District of Delaware (the "**Local Rules**"), *inter alia:*

(i)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $30,000,000 (the "**DIP Facility**," and all amounts extended under the DIP Facility, the "**DIP Loans**") pursuant to the terms and conditions of that certain *Debtor-In-Possession Loan and Security Agreement* (as the same may be amended, restated,

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

supplemented, or otherwise modified from time to time, the "**DIP Agreement**"),[2] by and among the Debtors, Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "**DIP Agent**"), and the other lenders party thereto (the "**DIP Lenders**" and collectively with the DIP Agent and the other "Secured Parties" as defined in the DIP Agreement, the "**DIP Secured Parties**"), substantially in the form of **Exhibit A**, attached hereto;

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements and documents related thereto (collectively, with the DIP Agreement, the "**DIP Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     authorizing the use of proceeds of the DIP Facility extended to the Debtors as expressly provided in the DIP Documents and consistent with the Approved Budget (as defined herein) following entry of this Interim Financing Order, for $3,000,000 in aggregate principal amount of Prepetition ABL Obligations to be "rolled-up" into the DIP Obligations and to allow a "creeping roll up" of additional Prepetition ABL Obligations outstanding under the Prepetition ABL Agreement pursuant to the procedures set forth below and, upon entry of the Final Financing Order, to convert the entire outstanding amount balance of the Prepetition ABL Obligations into DIP Obligations;

(iv)     granting the DIP Facility and all obligations owing thereunder and under the DIP Documents or otherwise to the DIP Secured Parties (collectively, and including all "Obligations" as described in the DIP Agreement, the "**DIP Obligations**") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases (as defined herein);

(v)     granting to the DIP Agent, for the benefit of the DIP Secured Parties under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(vi)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, continuing commitment fees, unused line fees, closing fees, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

---

[2]   The DIP Agreement is attached to this Motion at <u>Exhibit A</u>.  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Agreement or the DIP Orders.  To the extent there is any inconsistency between the terms of this Motion and the DIP Agreement or the DIP Orders, the DIP Agreement or the DIP Orders, as applicable, will control in all respects.

(vii)    authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Secured Parties (as defined herein) under the Prepetition Documents, and providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral;

(viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Financing Order; and

(ix)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

In support of the Motion, the Debtors rely upon the *Declaration of Bradley P. Johnson in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the "**First Day Declaration**").  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## RELIEF REQUESTED

1.    By this Motion, the Debtors respectfully request entry of the Interim DIP Financing Order authorizing the Debtor to, *inter alia*: (a) use the Cash Collateral of the Prepetition Secured Parties on an interim basis under the Approved Budget, (b) obtain Interim Financing from the DIP Lenders up to an aggregate principal amount of $15,000,000, to avoid immediate and irreparable harm to the estate pursuant to the terms and conditions of the DIP Documents, (c) grant to the DIP Agent, for the benefit of the DIP Secured Parties, the liens and superpriority claims described herein and in the DIP Documents, and (d) provide to the Prepetition Secured Parties the adequate protection described herein and in the Interim Financing Order.

2.    The Debtor further requests that the Court schedule the Final Hearing on the Motion within thirty (30) days of entry of the Interim Financing Order to consider entry of the Final Financing Order authorizing the Debtor to (a) use the Cash Collateral of the Prepetition

3

Secured Parties on a final basis under the Approved Budget, and (b) obtain the balance of the borrowings permitted under the DIP Facility, and (c) approve notice procedures with respect to the Motion as well as approve the proposed notice of the Final Hearing and the adequacy of the proposed service thereof.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, and 364, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 6004-1.

## BACKGROUND

### A.      General Background

5.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

6.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases pursuant to

Bankruptcy Rule 1015(b). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

**B.      The Debtors' Need for Postpetition Financing and the Use of Cash Collateral**

7.      The Debtors' obtaining credit on an interim basis pursuant to the DIP Facility as provided for herein is necessary to avoid immediate and irreparable harm to the Debtors, their estates, creditors, and other parties-in-interest, and to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees and otherwise to finance their operations through the chapter 11 process requires the availability of working capital from the DIP Facility.  Without the ability to use Cash Collateral and access the Interim Financing (as defined below) and the DIP Facility, the Debtors, their estates and creditors would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital or financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility.

8.      Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than provided for in the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain sufficient credit (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates

that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the

Debtors and their estates that is subject to a lien.  Financing on a post-petition basis is not

otherwise available without granting the DIP Agent, for the benefit of the DIP Secured Parties,

(1) perfected security interests in and liens on (each as provided herein) all of the Debtors'

existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and

(3) the other protections set forth in this Interim DIP Financing Order.

## SUMMARY TERMS OF THE DIP CREDIT FACILITY[3]

9.     The following is a concise summary of the material terms of the proposed DIP

Documents:

| Provision | Description |
|---|---|
| **Borrowers** | ELLETT BROTHERS, LLC; EVANS SPORTS, INC.; JERRY'S SPORTS, INC.; SIMMONS GUN SPECIALTIES, INC.; BONITZ BROTHERS, INC.; and OUTDOOR SPORTS HEADQUARTERS, INC. |
| **Guarantors** | SPORTCO HOLDINGS, INC. AND UNITED SPORTING COMPANIES, INC. |
| **DIP Lenders** | BANK OF AMERICA, N.A., WELLS FARGO BANK, N.A., and REGIONS BANK, subject to the satisfaction of all conditions set forth in the DIP Agreement and in the DIP Financing Orders, is providing a commitment for 100% of the DIP Facility. |
| **DIP Agent** | BANK OF AMERICA, N.A. |
| **DIP Facility** | The DIP Facility is a senior secured superpriority debtor-in-possession loan facility in an aggregate principal amount, before giving effect to the DIP Roll-Up Obligations (as defined below), of $30,000,000, which shall be made available subject to the terms and conditions set forth in the DIP Documents and this Interim Order; *provided that*, the aggregate amount of DIP Loans shall not exceed $15,000,000 at any one time (the "**Interim Financing**") prior to |

---

[3]   The following summary is included for convenience only and is qualified in its entirety by reference to the DIP Documents, which shall control in the event of any inconsistency. Capitalized terms used in this summary, unless otherwise defined, have the meaning used in the DIP Documents.

69055666.2

| | |
|---|---|
| | entry of the Final DIP Financing Order. |
| | The conditions precedent to funding under the DIP Facility are listed in the Section 10 of the DIP Agreement and include the absence of an event of default and the delivery of an Approved Budget. |
| **Roll-Up** | Subject to the entry of the Final DIP Financing Order, the indebtedness of the Borrowers to the Prepetition Secured Parties under the Prepetition Loan Documents, whether for borrowed money, fees, expenses, or otherwise (the "**DIP Roll-Up Obligations**"), will be added to the DIP Facility, subject to customary challenge rights in favor of other parties in interest and any statutory committee as provided by the DIP Financing Orders. |
| **Interest Rates and Fees** | A variable interest rate, for any day, equal to the sum of (A) the greater of (I) the Prime Rate (as defined in the DIP Agreement) for such day or (II) (x) the Federal Funds Rate (as defined in the DIP Agreement) for such day plus (y) 0.50%, and (B) 3.25%. At all times while any Event of Default exists, unpaid principal, interest and other amounts shall bear interest at a rate per annum equal to the Default Rate in excess of the foregoing interest rate. The DIP Lenders are also entitled to certain fees under the DIP Documents, including a closing fee of $500,000 under Section 2.2.1 of the DIP Agreement and ¶ 2 of the Interim DIP Financing Order and an unused line fee equal to 0.375% under Section 2.2.2 of the DIP Agreement and ¶ 2 of the Interim DIP Financing Order. Under Section 2.4 of the DIP Agreement and ¶ 34 of the Interim DIP Financing Order, the reimbursement of the DIP Agent's reasonable and documented professionals' fees and expenses will be made following certain notice and objection procedures. |
| **Termination Event** | The DIP Facility shall mature, and all unpaid principal, interest, fees and expenses shall be immediately due and payable, on the earliest to occur of (i) the date the Debtors have sufficient cash to repay the Obligations (as defined in the DIP Agreement) in full, (ii) August 31, 2019, and (iii) the acceleration of the DIP Obligations and the termination of the commitment to make the DIP Loans in accordance with the terms of the DIP Agreement or the DIP Financing Orders, as applicable. |
| | The date on which the earlier of clauses (i), (ii), and (iii) occurs is referred to as a "**Termination Event**." Upon a Termination Event, the DIP Facility shall be deemed terminated and the DIP Lenders shall have no further obligation to provide financing pursuant to the DIP Facility or the DIP Financing Orders. All unpaid principal, interest, fees and expenses under the DIP Facility shall be due and payable in full upon a Termination Event, whether at maturity, upon acceleration or otherwise. Upon a Termination Event, the Debtors' |

7

|  | authority to use Cash Collateral shall also lapse, subject to the rights and remedies set forth in the DIP Financing Orders. |
|---|---|
| **Purpose of Funding** | The proceeds of the DIP Facility and Cash Collateral will be used solely for (a) working capital and general corporate purposes of the Debtors, (b) bankruptcy-related costs and expenses (subject to the Carve Out (as defined below)), and, (c) for any other purpose consented to in writing by the DIP Agent and Required Lenders. |
| **Entities with Interests in Cash Collateral** | The DIP Secured Parties and the Prepetition Secured Parties |
| **Use of Cash Collateral** | The Postpetition Financing contemplates the Debtors' continued use of Cash Collateral,[4] according to an Approved Budget on the terms and conditions set forth in the Interim DIP Financing Order. *See* Interim DIP Financing Order at ¶ 11. |
| **Budget** | The Debtors' use of all cash (whether or not from advances under the DIP Facility or pursuant to the Prepetition Secured Parties' consent, *i.e.,* collections of accounts receivable generated by the Debtors' operations) shall be subject to a weekly budget for the 13-week period commencing on the Petition Date, in form and substance acceptable to, and approved in writing by, the DIP Agent, in its sole and absolute discretion (the "**Approved Budget**").[5] The Approved Budget is subject to amendment with the written consent of the DIP Agent, in its sole and absolute discretion. Moreover, the Debtors are allowed a 7.5% variance under certain reporting categories specified in the budget, as well as under their projected aggregate weekly cash receipts and cash disbursements. The Debtors are required, by the DIP Agreement, to periodically deliver certain reports to the DIP Agent and Prepetition Secured Parties showing results and variances under the Approved Budget to date as well as daily cash receipts and disbursements, among other information. |
| **Restrictions on Use of Funds** | None of the advances under the DIP Facility and no Cash Collateral may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, |

---

[4] "**Cash Collateral**" means all "cash collateral" as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent and each Prepetition Agent holds a lien, security interest, or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date or subsequently arising.

[5] The Debtors have provided a budget to the DIP Agent and Prepetition Agents setting forth in reasonable detail the projected receipts and disbursements of the Debtors on a weekly basis following the Petition Date. This budget has been approved by the DIP Agent as provided by the DIP Documents. A summary of the Approved Budget is attached to the Interim DIP Financing Order as <u>Exhibit 1</u>. The Debtors believe that the Approved Budget is achievable and will enable it to operate their businesses without the accrual of unpaid administrative expenses.

| | |
|---|---|
| | causes of action, adversary proceedings, contested matters or other litigation against the DIP Secured Parties (each in its capacity as such). None of the advances under the DIP Facility and no Cash Collateral may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, contested matters or other litigation against the Prepetition Secured Parties (each in its capacity as such), except up to the amount of $50,000 for an investigation (including any related discovery proceedings) by a committee or other parties in interest (other than the Debtors) in connection with the validity and perfection of the liens granted under the Prepetition Credit Facilities, as set forth in the DIP Financing Orders. |
| **Security and Superpriority** | The DIP Obligations shall (a) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority administrative expense claim status in the Chapter 11 Case with priority over any and all administrative expenses, and (b) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, be secured by liens on the DIP Collateral (as defined below), in all cases subject to the Carve Out and the priorities set forth in the DIP Agreement. |
| **DIP Collateral** | For purposes of this Motion, "**DIP Collateral**" means, collectively, all now owned or hereafter acquired assets and property of the Debtors and their chapter 11 estates, whether real or personal, tangible or intangible, or otherwise, and any and all proceeds therefrom, including, without limiting the generality of the foregoing, all Cash Collateral, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, trailers, rolling stock, proceeds of avoidance actions under chapter 5 of the Bankruptcy Code ("**Avoidance Actions**") (but, in the case of proceeds of Avoidance Actions, subject to entry of the Final DIP Financing Order), all intercompany claims, any and all proceeds available to the Debtors arising from insurance policies (including, without limitation, policies for the benefit of directors and officers of the Borrowers), all intellectual property, all claims and causes of action of the Debtors or their estates and any and all proceeds therefrom. For the avoidance of doubt, the DIP Collateral shall include, without limiting the generality of the foregoing, all assets of the Borrowers that are secured pursuant to the Prepetition Loan Documents. |
| **Adequate Protection** | The Prepetition Secured Parties are each entitled to and shall each receive adequate protection to protect (to the extent of any diminution in value of their respective interests in the value of their respective prepetition collateral, including any Cash Collateral) resulting from (a) the incurrence of the DIP Obligations, (b) the use |

69055666.2

| | |
|---|---|
| | of Cash Collateral, (c) the granting of the liens and the superpriority claim under the DIP Agreement, (d) the acquiescence of the Prepetition Secured Parties in the Carve Out, (e) any other diminution in the value of their respective prepetition collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, by the granting of the following, all as more fully set forth in the DIP Financing Orders: (a) a replacement lien in the DIP Collateral, (b) an adequate protection superpriority claim pursuant to section 507(b) of the Bankruptcy Code; and (c) the right to hereafter request additional or further adequate protection in the event that the protection granted by the DIP Financing Orders proves to be inadequate.  The Prepetition ABL Lenders shall also receive cash payments in the form of interest due on the Prepetition ABL Obligations and fees and expenses payable under the Prepetition ABL Documents from and after the Petition Date. |
| **Carve Out** | The term "**Carve Out**" means, collectively:  (i) Allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court; (ii)    All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) All accrued and unpaid fees (other than any "success," "restructuring," "transaction" or similar fees), disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Committee (the "**Case Professionals**" ), at any time prior to the delivery of the Carve Out Trigger Notice (as defined herein), but solely to the extent the same are incurred in accordance with the Approved Budget and are reflected as estimated professional fees and disbursements in the most recent borrowing base certificate delivered to the DIP Agent by the Debtors prior to the delivery of a Carve Out Trigger Notice (which estimated professional fees and disbursements shall not be more than the amounts set forth in the Approved Budget for such Case Professionals), less the amount of any prepetition retainers received by such Case Professionals and not previously returned or applied to fees and expenses; and (iv) All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $300,000 less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (iii) above.  The Carve Out shall be senior to all claims and liens, including DIP Liens and liens granted to each of the Prepetition Secured Parties, as well as any |

69055666.2

| | adequate protection liens and claims described herein. |
|---|---|
| **Events of Default** | The DIP Agreement specifies certain events of default under the Postpetition Financing (each an "**Event of Default**"), including: (i) occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances; (ii) failure by the Borrowers to be in compliance in all respects with any provision of the DIP Documents; (iii) reversal, modification, amendment, stay or vacation of the Interim DIP Financing Order or the Final DIP Financing Order, as entered by the Bankruptcy Court, without the prior written consent of the DIP Agent; (iv) the filing with the Bankruptcy Court of a plan of reorganization or liquidation in these Cases that does not provide for indefeasible payment in full in cash to the DIP Secured Parties of the DIP Obligations (including the portion of the DIP Obligations related to the DIP Roll-Up Obligations); (vi) the appointment in these Cases of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code); (vii) the filing of a motion by the Debtors seeking dismissal of these Cases or the conversion of these Cases to cases under chapter 7 of the Bankruptcy Code; (viii) the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtors to any other creditor or party in interest in these Cases; (ix) failure of all amounts due and owing to the DIP Secured Parties under, in respect of or in connection with the DIP Facility to be paid in full in cash on the Revolver Maturity Date; and (x) if any provision in the DIP Agreement shall cease to be binding on or enforceable against the parties thereto. |
| **Indemnity** | The Borrowers have agreed to indemnify, pay and hold harmless the DIP Secured Parties (each in its capacity as such) (and its respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated by the DIP Facility or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction). |
| **Releases** | The Borrowers have agreed to release and exculpate the Prepetition Secured Parties in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee.  The release and challenge rights are set forth in greater detail in the Interim DIP Financing Order attached hereto.   The Debtors' acknowledgments regarding the validity, enforceability and perfection of the claims and liens under Prepetition Loan Documents (defined as the "Debtors' Stipulations" |

11

|  | under the Interim DIP Financing Order), are set forth at ¶¶ F(i) through (xii) of the Interim DIP Financing Order. The Debtors' Stipulations are subject to the challenge rights and deadlines set forth at ¶ 40 of the Interim DIP Financing Order. |
|---|---|

## PROVISIONS TO BE HIGHLIGHTED PURSUANT TO LOCAL RULE 4001-2

10.     Local Rule 4001-2(a)(i) requires that financing motions must highlight the following provisions (the "**Highlighted Provisions**"), identify the location of any such provision in the proposed order, and justify such inclusion:

| Highlighted Provision | Location/Justification |
|---|---|
| ***Grant of priority or a lien on property of the estates***. | Interim DIP Financing Order ¶¶ 5-6 |
| ***(A)   Provisions   that   grant   cross-collateralization protection to prepetition secured creditors, and (B) provisions that deem prepetition secured debt to be postpetition debt.*** | Subject to the entry of the Final DIP Financing Order, 100% of the indebtedness of the Debtors to the Prepetition Secured Parties under the Prepetition Loan Documents, will be added to the DIP Facility subject to (a) the priorities set forth in the Interim DIP Financing Order and (b) the reservation of challenge rights under paragraph 40 of the Interim DIP Financing Order. *See* Interim DIP Financing Order ¶ 10 |
| ***Adequate protection or priority for a claim that arose before the commencement of the cases***. | Interim DIP Financing Order, ¶¶ 12-17 |
| ***Determination of validity, enforceability, priority or amount of a claim that arose before the commencement of the cases, or of any lien securing the claim***. | Interim DIP Financing Order, ¶¶ (F)(vi)-(vii), but subject to challenge rights in ¶ 40 consistent with the time periods contemplated by Local Rule 4001-2(a)(i)(B) |
| ***Waiver or modification of the automatic stay***. | Interim DIP Financing Order, ¶ 21 |
| ***Waiver or modification of authority to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request use of cash collateral or request authority to obtain credit***. | DIP Agreement, Section 11.1.10 (Insolvency Proceeding Defaults); Interim DIP Financing Order, ¶¶ 24, 56 |

| | |
|---|---|
| ***Waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estates***. | DIP Liens are automatically perfected upon entry of Interim DIP Financing Order without necessity of further filing or recording. Interim DIP Financing Order, ¶¶ 6, 22.<br><br>Adequate Protection Liens are automatically perfected upon entry of Interim DIP Financing Order without necessity of further filing or recording. Interim DIP Financing Order, ¶¶ 12, 22 |
| ***Establishment of deadlines for filing a plan, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order***. | N/A |
| ***Waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estates, or on the foreclosure or other enforcement of the lien***. | DIP Liens are automatically perfected upon entry of Interim DIP Financing Order without necessity of further filing or recording. Interim DIP Financing Order, ¶¶ 6, 22<br><br>Adequate Protection Liens are automatically perfected upon entry of Interim DIP Financing Order without necessity of further filing or recording. Interim DIP Financing Order, ¶¶ 12, 22 |
| ***Release, waiver or limitation on any claim or other cause of action belonging to the estates or the trustee***. | The Interim DIP Financing Order contains releases and exculpations for the Prepetition Secured Parties in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee consistent with the time periods contemplated by Local Rule 4001-2(a)(i)(B). Interim DIP Financing Order, ¶ (F)(i)-(xiii) (listing the "**Debtors' Stipulations**"), ¶ 40 (challenge rights) |
| ***Indemnification of any entity***. | The Debtors have agreed to indemnify the DIP Secured Parties ((each in its capacity as such) (and their respective directors, officers, employees and agents) against any |

| | |
|---|---|
| | loss or liability incurred in connection with the DIP Facility or the use of the proceeds thereof, except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction.  DIP Agreement, Section 14.2 (General Indemnity); Interim DIP Financing Order, ¶ 34 |
| ***Release, waiver or limitation on rights under Sections 506(c) and 552(b).*** | Upon entry of the Final DIP Financing Order, in light of the DIP Facility, the Prepetition Secured Parties' consent to use of Cash Collateral, and the agreements of the DIP Secured Parties and the Prepetition Secured Parties to subordinate their respective rights of payment, liens and superpriority/priority claims to the Carve Out, the DIP Secured Parties and Prepetition Secured Parties will receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code. Interim DIP Financing Order, ¶¶ F(ix), 5, 42, 44 |
| ***Liens granted on claims arising under Chapter 5.*** | Upon entry of a Final DIP Financing Order, the DIP Collateral will include all avoidance actions and claims arising under chapter 5 of the Bankruptcy Code.  DIP Agreement, Section 6.1 (Grant of Security Interest); Interim DIP Financing Order, ¶ 5 |

11.     The provisions of the DIP Documents are all justified under the circumstances of the Chapter 11 Cases because the DIP Secured Parties and the Prepetition Secured Parties would not agree to the Postpetition Financing without the inclusion of such terms. As discussed *infra*, the funds provided by the DIP Facility are needed to allow the Debtors to operate and the DIP

Facility presents the only available postpetition financing. The Debtors respectfully submit that the inclusion of the Highlighted Provisions are required and appropriate under the circumstances.

**<u>BASIS FOR RELIEF</u>**

**A.    The Debtors Should be Authorized to Obtain Postpetition Financing**

12.    The Debtors submit it is within their sound and prudent business judgment to obtain this Postpetition Financing. Bankruptcy Code section 364 permits debtors to obtain secured or superpriority postpetition financing when unsecured credit is not available. 11 U.S.C. § 364(c). Bankruptcy Courts, after notice and a hearing, may also authorize postpetition credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected. 11 U.S.C. § 364(d).

13.    With regarding to obtaining postpetition financing, debtors who utilize their sound business judgment are permitted considerable deference, so long as the postpetition financing does not conflict with the policies underlying the Bankruptcy Code. *See, e.g.*, *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivable facility because they "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."). *See also Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case

15

impartially."). Further, "courts will almost always defer to the business judgment of a debtor in the selection of a lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011).

14.     To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds* 607 F.3d 957 (3d Cir. 2010). *See also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (noting that courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code."). This inquiry involves the consideration of whether the terms are fair when considering the terms in light of the relevant circumstances of the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Courts may also look to noneconomic benefits of postpetition financing. *See, e.g., In re Ion Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) ("Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.").

15.     Debtors are not obligated and have "no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Say. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,120 n.4 (N.D. Ga. 1989). *See also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *Ames*, 115 B.R. at 37-39; *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981); *In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st 1980); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).

16.     Here, the Debtors have exercised their sound business judgment by entering into the DIP Facility. The terms and conditions set forth the DIP Documents are fair and reasonable. The DIP Facility will allow the Debtors to access up to $30,000,000. Further, the DIP Facility benefits the Debtors by allowing the use of Cash Collateral, thereby reducing the amount which must be borrowed.

17.     While the Debtors are not required to seek credit from every source, the Debtors and their professionals nevertheless undertook a process to evaluate other potential sources of postpetition financing, finding none obtainable on better terms.

18.     The terms and conditions of the DIP Documents were negotiated by the parties in good faith and at arm's length. The Debtors will require a significant postpetition financing to support operations and restructuring. Only the DIP Secured Parties were able to provide a

facility which was adequate, reasonable, and fair under the circumstances. Therefore, the Court should find that the each of the DIP Secured Parties is a "good faith" lender within the meaning of Bankruptcy Code section 364(e).

19.    The Debtors have determined, in their sound business judgment, based upon their own analysis and the recommendations of their professionals, that the DIP Documents provide the best opportunity for postpetition financing on the most favorable terms available. It is necessary to preserve the administrative of the Chapter 11 Cases, and therefore, will benefit all creditors. The DIP Facility allows the Debtors to continue operations and maintain the value of the estates for an anticipated sale of all or substantially all of their assets under Bankruptcy Code section 363.

**B.    The Debtors' Use of Cash Collateral Should be Approved**

20.    Bankruptcy Code section 363(c)(2) does not allow a debtor to use a secured creditor's cash collateral without consent or court approval. Bankruptcy Code section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

21.    The Debtors request authority to use Cash Collateral on the terms set forth in the proposed Interim DIP Financing Order.  At this time, the Prepetition ABL Parties through the Prepetition ABL Agent, have affirmatively consented to the use of Cash Collateral.  The Prepetition Term Loan Parties are deemed to have consented to the use of Cash Collateral and other relief requested in this Motion under Section 4.5 of the Intercreditor Agreement, subject to the Prepetition Term Loan Parties' right to seek or request additional adequate protection under Section 4.6 of the Intercreditor Agreement. The Prepetition Term Loan Parties' right to seek or request additional adequate protection under Section 4.6 of the Intercreditor Agreement is

18

preserved under the proposed Interim DIP Financing Order.  *See* Interim DIP Financing Order, ¶ 17. Thus, the Debtors respectfully submit that the requirements of Bankruptcy Code section 363(c)(2) have been satisfied.

**C.    The Interests of the Prepetition Secured Parties are Adequately Protected**

22.    Debtors may only obtain postpetition financing "secured by a senior or equal lien on property of the estate that is subject to a lien only if" adequate protection is provided to parties whose liens are primed. 11 U.SC. § 364(d)(1)(B). Bankruptcy Code section 361 delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. Adequate protection is determined on a case-by-case basis and may take various forms. *See, e.g.*, *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993); *MBank Dallas., N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of this requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.").

23.    The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); see also *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

19

24.    Here, the Adequate Protection offered to the Prepetition Secured Parties is fair and reasonable. The adequate protection proposed in the Interim DIP Financing Order is consistent with customary protections, including replacement liens and superpriority claims. The adequate protection properly protects the Prepetition Secured Parties from any diminution in value of its interests in the use of the cash collateral during the pendency of the Chapter 11 Cases. These provisions were negotiated in good faith and at arm's-length with the Prepetition Secured Parties. Without these protections, the Debtors would not be able to secure the Postpetition Financing.

**D.    The Roll-Up is in the Best Interests of the Estates and Should Be Approved**

25.    The Debtors agreed to roll-up the DIP Roll-Up Obligations because, among other things, it (i) will not prejudice the Debtors' stakeholders and (ii) provides significant benefits to the Debtors' estates.

26.    The roll-up of the DIP Roll-Up Obligations will not prejudice the Debtors or their estates because the Prepetition ABL Lenders are significantly oversecured. A prepetition asset based loan ("ABL") facility that is oversecured and which is being rolled up into another ABL facility–in other words, an ABL-to-ABL roll up–does not harm the Debtors' stakeholders– including the general unsecured creditors–because the only variable is timing, not certainty, of repayment. Courts in this district place particular importance on whether a prepetition secured creditor is oversecured in determining whether to approve a roll-up. *See, e.g.*, *In re Real Indus., Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. Nov. 20, 2017), Hr'g Tr. 39:9-19 ("So, let's talk about the roll-up. I had the same issue on Friday and I did something that, as you might imagine, a Court would be reluctant to do, and I approved the roll-up on the first day, and I did it in those circumstances in which there didn't seem to be any dispute over whether that lender that was the beneficiary of the roll-up was over-secured."); *In re Velocity Holding Company,*

*Inc.*, No. 17-12442 (KJC) (Bankr. D. Del. Nov. 17, 2017), Hr'g Tr. 38:1-2 (court remarking that whether a secured creditor is oversecured "directly affects whether they should have a roll-up"); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. April 8, 2016), Hr.'g Tr. 65:7-17 ("[A]s noted in the colloquia of counsel, Wells Fargo has the first [lien] on all the current assets and they are, it has been represented to me, over-secured. So in that event I don't see the harm in letting this [roll-up of prepetition obligations] go out on first day."). Furthermore, the roll-up of the DIP Roll-Up Obligations are subject to review and challenge— and potentially to being unwound—by a creditors' committee, if appointed, or another party-in-interest with requisite standing if a committee is not appointed. These factors – the Prepetition ABL Lenders being oversecured and the protections inherent in the future ability to challenge the relief requested herein – dictate that the Debtors' stakeholders are not harmed by the roll-up requested herein.

27.    Ultimately, the DIP Facility provides the Debtors with the best path for a peaceful, going-concern transition into Chapter 11. The Prepetition Lenders are unlikely to continue to lend postpetition without some assurance regarding their prepetition claims. Absent the Prepetition ABL Lenders' support, the Debtors are unlikely to find the financing necessary to fund these cases. See First Day Decl. ¶¶ 78-81. In contrast, the roll-up of the Prepetition ABL Facility merely affects the timing, not the amount or certainty, of the Prepetition ABL Lenders' recovery—the secured claims arising as a result of the Prepetition ABL Facility are required by Section 1129 of the Bankruptcy Code to be satisfied in full before recoveries to junior creditors may be provided, absent consent of such secured parties (which consent the Debtors do not have here).

## E.  Modification of the Automatic Stay is Warranted

28.     The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis to permit the DIP Agent to exercise, upon the occurrence and during the continuation of an Event of Default, and to take other remedies relating to the Collateral without further order or application to the Court. The DIP Agent is required to provide three (3) business days written notice on the Notice Parties prior to any enforcement right or remedy under the DIP Documents.

29.     This type of modification of the automatic stay is ordinary and standard feature of postpetition debtor in possession financing facilities, and, in the Debtors' business judgment, reasonable and fair under the current circumstances.

## F.     Interim Approval and Scheduling of a Final Hearing

30.     Interim relief may be granted on a motion to obtain financing and use cash collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).

31.     The Debtors will face immediate and irreparable harm without the entry of the Interim DIP Financing Order. Therefore, the Debtors respectfully request that the Court schedule a final hearing, no sooner than 14 days after the date of this Motion and no later than 25 days after the Petition Date, to consider entry of the Final DIP Financing Order.

## CONSENT TO JURISDICTION

32.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

33.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Agent; (c) Counsel to the Prepetition Agents; (d) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (e) the Internal Revenue Service; (f) the Taxing Authorities; (g) the United States Attorney for the District of Delaware; (h) the Attorney General for the state of Delaware; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

34.     In addition, Interim DIP Financing Order will be served on the Notice Parties no later than one (1) business day after its entry by this Court. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required. A copy of the Motion also is available on the Court's website: www.deb.uscourts.gov.

## NO PRIOR REQUEST

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[The remainder of this page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim DIP Financing Order, the form of which is attached as **Exhibit B** hereto; and grant such other and further relief as is just and proper.

Dated: June 10, 2019
         Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**
*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Brenna A. Dolphin (Del. Bar No. 5604)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
bdolphin@polsinelli.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh (*pro hac vice* pending)
Darren Azman (*pro hac vice* pending)
Riley T. Orloff (*pro hac vice* pending)
340 Madison Avenue
New York, New York 10173-1922
Telephone:(212) 547-5400
Facsimile: (212) 547-5444
Email:    twwalsh@mwe.com
          dazman@mwe.com
          rorloff@mwe.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

69055666.2