## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-11299 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 8** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion") of SportCo Holdings, Inc. and certain of its wholly-owned direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an order (this "Interim Order")[2] pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court the District of Delaware (the "Local Rules"), *inter alia:*

(i)     authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $25,000,000 (the "DIP Facility," and all amounts extended under the DIP Facility, the "DIP Loans") pursuant to the terms and conditions of that certain

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

[2] Unless otherwise expressly indicated, capitalized terms shall have the meanings set forth in this Interim Order.

*Debtor-In-Possession Loan and Security Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Agreement"), by and among the Debtors, Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and the other lenders party thereto (the "DIP Lenders" and collectively with the DIP Agent and the other "Secured Parties" as defined in the DIP Agreement, the "DIP Secured Parties"), substantially in the form of Exhibit A, attached to the DIP Motion;

(ii)    authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements and documents related thereto (collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    authorizing the use of proceeds of the DIP Facility extended to the Debtors as expressly provided in the DIP Documents and consistent with the Approved Budget and to allow a "creeping roll up" of Prepetition ABL Obligations outstanding under the Prepetition ABL Agreement pursuant to the procedures set forth below;

(iv)    granting the DIP Facility and all obligations owing thereunder and under the DIP Documents or otherwise to the DIP Secured Parties (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases;

(v)    granting to the DIP Agent, for the benefit of the DIP Secured Parties under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral, including, without limitation, all property constituting "Cash Collateral" as

defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(vi)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, continuing commitment fees, unused line fees, closing fees, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vii)    authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents, and providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral;

(viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(ix)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Bradley P. Johnson in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, the DIP Documents, and the evidence submitted and argument made at the interim hearing (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court;

3

and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**.  On June 10, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Delaware (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

13114154.19

D.    **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.    **Notice**.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of thirty largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition Agents, and (iv) all other parties entitled to notice under the Local Rules.

F.    **Debtors' Stipulations.**    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 40 hereof, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition ABL Facility*.  Pursuant to that certain Third Amended and Restated Loan and Security Agreement dated as of September 28, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, certain mortgages on real property owned by the Debtors, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents") among Bonitz Brothers, Inc., Ellett Brothers, LLC, Evans Sports, Inc., Jerry's Sports, Inc., Outdoor Sports Headquarters, Inc., and Simmons Gun

Specialties, Inc. (collectively, the "Prepetition Borrowers"), Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "Prepetition ABL Agent"), and the lenders party thereto (the "Prepetition ABL Lenders," and collectively with the Prepetition Agent and the other "Secured Parties" as defined in the Prepetition ABL Agreement, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Prepetition Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

(ii)     *Prepetition ABL Obligations.*  The Prepetition ABL Facility provided the Prepetition Borrowers with, among other things, a Revolver Commitment (as defined in the Prepetition ABL Agreement).   As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $23,056,470.93 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

(iii)     *Prepetition ABL Liens and Prepetition ABL Collateral.*  As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition Borrowers granted to the Prepetition ABL Agent (for the benefit of the Prepetition ABL Parties) a first

priority security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all their Property (as defined in the Prepetition ABL Agreement) of such Prepetition Borrowers whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Collateral").

(iv)     *Prepetition Term Loan Facility*. Pursuant to that certain Second Lien Loan and Security Agreement dated as of September 28, 2012 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and the Intercreditor Agreement   (the "Prepetition Term Loan Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents and the Intercreditor Agreement, the "Prepetition Documents") by and among the Prepetition Borrowers, Prospect Capital Corporation, as administrative agent and collateral agent (in such capacity, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent and the other "Secured Parties" as defined in the Prepetition Term Loan Agreement, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, individually or collectively, the "Prepetition Secured Parties") Prepetition Term Loan Lenders provided term loans to the Prepetition Borrowers (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)     *Prepetition Term Obligations.*   As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility, together with accrued

and unpaid interest as of the Petition Date, was not less than $249,800,405.00 (collectively, together with any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Borrowers' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)      *Prepetition Term Loan Liens and Prepetition Term Collateral.* As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Borrowers granted to the Prepetition Term Loan Agent (for the benefit of the Prepetition Term Loan Parties) a second priority security interest in and continuing lien on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all their Property (as defined in the Prepetition Term Loan Agreement) of such Prepetition Borrowers whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Term Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral").

(vii)      *Priority of Prepetition Liens; Intercreditor Agreement.*   The Prepetition Agents entered into that certain Intercreditor and Subordination Agreement (the "Intercreditor Agreement") dated as of September 28, 2012 to govern the respective rights, interests,

8

obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors. Each of the Prepetition Borrowers under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(viii)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*   The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, nonavoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or permitted by the Prepetition ABL Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties

or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the aggregate value of the Prepetition ABL Collateral exceeds the amount of the Prepetition ABL Obligations and the claims of the Prepetition ABL Parties arising under, or secured by, the Prepetition ABL Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)    *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected second priority liens and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens are subject only to (1) the Prepetition ABL Liens, and (2) liens senior by operation of law or permitted by the Prepetition Term Loan Documents (solely to the extent any such liens were valid, properly perfected, nonavoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens," and, together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens"); (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition

10

Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of section 502 and 506 of the Bankruptcy Code.

(x)      *No Control.* None of the DIP Secured Parties or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, and/or the Prepetition Documents.

13114154.19

(xi)    *Cash Collateral*. All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(xii)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors have been and are in default of their obligations under the Prepetition Documents and that as of the Petition Date interest was accruing on the Prepetition Secured Obligations at the default rate.

G.    **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.

H.    **[Reserved]**

I.    **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth

herein or therein.  The DIP Agreement is a "replacement" of the Senior Loan Agreement as that term is used in the Intercreditor Agreement, and any repayment of the Prepetition ABL Obligations pursuant to this Interim Order shall not be deemed to constitute a "discharge" of Senior Liabilities as that term is used in the Intercreditor Agreement.

        J.        **Findings Regarding Postpetition Financing**

        (i)      *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Chapter 11 Cases and fund their operations.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order" and, together with the Interim Order, the "DIP Financing Orders"), which shall be in form and substance acceptable to the DIP Agent.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

        (ii)      *Priming of the Prepetition Liens.*  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Term Loan Parties are deemed to have consented to the priming pursuant to Section 4.5 of the Intercreditor Agreement.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

13114154.19

(iii)    *Need for Postpetition Financing.*   Based on the record made at the Interim Hearing regarding the Debtors' need for the DIP Facility, including the testimony of the Debtors' CRO, Dalton Edgecomb, and for the reasons given by the Court on the record at the Interim Hearing, the Court finds it appropriate to allow the Debtors to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, enable the orderly liquidation of their operations and to administer and preserve the value of their estates.

(iv)    *No Credit Available on More Favorable Terms.*   Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Secured Parties: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Interim Order.

(v)    *Use of proceeds of the DIP Facility.*   As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Secured Parties, and the Prepetition ABL Parties require, and the Debtors

13114154.19

have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraph 19 hereof, the "Approved Budget" and, such variances, the "Permitted Variances")[4] solely to pay: (a) expenses and fees required to be paid to the office of the clerk of the Court or the office of the U.S. Trustee; (b) professional fees subject to any limitations in the DIP Financing Orders and the Approved Budget; (c) any of the DIP Obligations; (d) the Prepetition ABL Obligations to the extent authorized by the Court; (e) with respect to the Prepetition Term Obligation, fees in accordance with the Approved Budget; and (f) other expenses that are incurred during the pendency of the Chapter 11 Cases and described in the Approved Budget not to exceed the Permitted Variances or that are authorized by the Court in orders entered in the Chapter 11 Cases that are acceptable to the DIP Agent, but excluding payment of any Prepetition Term Loan Obligations.

(vi)    *Application of Proceeds of Collateral.*    As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Secured Parties, and the Prepetition ABL Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order.

(vii)    *Roll-up Obligations.*    Cash Collateral shall be used to effectuate a "creeping roll up" of Prepetition ABL Obligations outstanding under the Prepetition ABL Agreement pursuant to the procedures set forth in Paragraph 11 hereof.  In connection with entry

---

[4] A copy of the initial Approved Budget is attached hereto as **Exhibit 1**.

13114154.19

of the Final Order, the Prepetition ABL Parties may request entire remaining outstanding balance of the Prepetition ABL Obligations to be rolled up and converted into DIP Obligations.

K.      **Adequate Protection**.  Until all Prepetition ABL Obligations and all Prepetition Term Loan Obligations, as applicable, are Paid in Full, the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral as set forth in this Interim Order.  "Full Payment" shall have the meaning given to "Full Payment" in the Prepetition ABL Agreement, the Prepetition Term Loan Agreement or the DIP Agreement, as applicable, and "Paid in Full" shall have the corollary meaning.

L.      **Sections 506(c) and 552(b)**.  In light of (i) the DIP Secured Parties' agreement to provide the DIP Facility; (ii) the DIP Secured Parties' agreement that their liens and superpriority claims shall be subject to the Carve Out; and (iii) the Prepetition ABL Parties' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP Liens, (a) subject to entry of a Final Order, the Prepetition ABL Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Secured Parties and Prepetition ABL Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.      **Good Faith of the DIP Secured Parties**.

(i)      *Willingness to Provide Financing.*  The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d)

findings by this Court that the DIP Facility are essential to the Debtors' estates, that the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Secured Parties and Prepetition ABL Parties, with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties and Prepetition ABL Parties within the meaning of section 364(e) of the Bankruptcy Code.

N.     **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

O.     **Interim Hearing**.  The notice of the Interim Hearing described in Finding E is sufficient under the circumstances, and no further notice is required in connection with the relief set forth in this Interim Order under the circumstances.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      <u>Interim Financing Approved</u>.  The DIP Motion is granted, the Interim Financing is authorized and approved, subject to the terms and conditions set forth in the DIP Documents and this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**<u>DIP Facility Authorization</u>**

2.      <u>Authorization of the DIP Facility</u>.  The DIP Facility is hereby approved.  The Debtors are expressly and immediately authorized to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents.  The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not

13114154.19

the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents; provided, however, that the closing fee set forth in Section 2.2.1 of the DIP Agreement shall only be payable upon entry of the Final Order.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.      Authorization to Borrow.  In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (a) entry of the Final Order or (b) the DIP Termination Date, and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit (in the form of loans) up to an aggregate outstanding principal amount of not greater than $10,000,000 at any one time outstanding under the DIP Facility (the "Interim Financing").  "DIP Termination Date" shall have the meaning given to "Commitment Termination Date" in the DIP Agreement.

4.      DIP Obligations.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

13114154.19

Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Secured Parties, under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.  Without limiting the foregoing, the DIP Obligations shall also include cash management and bank product exposure.  The Debtors shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens, and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    <u>DIP Liens</u>.  Subject and subordinate to the Carve Out in all respects, in order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of the DIP Secured Parties, are hereby granted, continuing, valid, binding,

enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") upon (a) all of the Debtors' rights in property of the Debtors' estates as of the Petition Date, and all of the Debtors' rights in property acquired postpetition, whether now existing or hereafter acquired or arising subject to entry of a Final Order (b) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral, (c) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code), (d) subject to entry of a Final Order, the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof, and (e) all property of the Debtors that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, the "DIP Collateral").

6.    DIP Lien Priority.    The DIP Liens are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out in all respects and shall otherwise be junior only to, as to the DIP Collateral, Permitted Prior Liens. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest

21

avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7. <u>Superpriority Claims</u>. Subject in all respects to the Carve Out, upon entry of this Interim Order, the DIP Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c) (subject to entry of the Final Order), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; *provided, however,* that the DIP Superpriority Claims shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and shall be subject to the Carve Out and senior to the Adequate Protection Superpriority Claims .

8. <u>No Obligation to Extend Credit</u>. Except as required to fund the Carve Out as set forth in paragraph 38 hereof, the DIP Secured Parties shall have no obligation to make any loan, advance any other extension of credit under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim

Order have been satisfied in full or waived by the DIP Agent in its sole discretion, and in accordance with the terms of the DIP Agreement.

9.    <u>Use of Proceeds of DIP Facility</u>.  From and after the Petition Date, the Debtors shall use extensions of credit under the DIP Facility, in accordance with the Approved Budget, only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents

10.    [Reserved].

**<u>Authorization to Use Cash Collateral</u>**

11.    <u>Authorization to Use Cash Collateral</u>.  Until Full Payment of all Prepetition ABL Obligations, all Cash Collateral received by the Debtors shall be applied to the Prepetition ABL Obligations.  Following the Full Payment of all Prepetition ABL Obligations and subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Documents and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date; *provided, however,* that during the Default Notice Period the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses critical the administration of the Debtors' estates in accordance with the Approved Budget, and as otherwise agreed by the DIP Agent in its sole discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Approved Budget.  Upon the Full Payment of all Prepetition ABL Obligations and all DIP Obligations, (a) the Prepetition Term Loan Parties are deemed not to have consented to the use of any Cash Collateral and the Debtors shall be permitted to seek use of such Cash Collateral;

and (b) the Prepetition Term Loan Parties shall be entitled to seek any and all relief available to it under the Bankruptcy Code or applicable law and nothing herein shall act as a waiver of any such rights.

12. <u>Adequate Protection Liens</u>.

(a) *Prepetition ABL Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

(b) *Prepetition Term Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition Term Adequate Protection Liens</u>," and together with the Prepetition ABL Adequate Protection Liens, the "<u>Adequate Protection Liens</u>").

13. <u>Priority of Adequate Protection Liens</u>.

(a) The Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to (i) the Prepetition ABL Permitted Prior Liens

and (ii) the DIP Liens.  The Prepetition ABL Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(b)     The Prepetition Term Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to (i) Prepetition Term Loan Permitted Prior Liens; (ii) the DIP Liens; (iii) the Prepetition ABL Liens; and (iv) the Prepetition ABL Adequate Protection Liens.  The Prepetition Term Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(c)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.    <u>Adequate Protection Superpriority Claims</u>.

(a)     *Prepetition ABL Superpriority Claim*. As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent (on behalf of the Prepetition ABL Parties) is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (the "<u>Prepetition ABL Superpriority Claim</u>").

(b) *Prepetition Term Loan Superpriority Claim.* As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties) is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").

15.    Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c) (subject to entry of the Final Order), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided, however,* that the Adequate Protection Superpriority Claims shall be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein, and subject to the Carve Out in all respects and junior to the DIP Superpriority Claims.

16.    Adequate Protection Payments and Protections for Prepetition Secured Parties. Subject to the Carve Out in all respects, as further adequate protection (the "Prepetition Adequate Protection Payments"), the Debtors are authorized and directed to provide adequate protection to the applicable Prepetition Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of, subject to

Paragraph 40 hereof, (a) to the Prepetition ABL Parties, interest *(provided* that, for the avoidance of doubt, interest shall cease to accrue under the Prepetition ABL Documents upon the repayment of the Prepetition ABL Obligations in full as provided in this Interim Order), and (b) immediately upon entry of this Interim Order, to the Prepetition Secured Parties, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including, without limitation, the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Secured Parties, whether arising prior to or after the Petition Date.  For the avoidance of doubt, to the extent the Prepetition Term Loan Lenders are not entitled to adequate protection then any adequate protection payments may be reallocated by the Court as a paydown of principal.

17.    <u>Adequate Protection Reservation</u>.  Subject to the Carve Out in all respects, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**<u>Provisions Common to DIP Financing and use of Cash Collateral</u>**

18.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if: (a) the amendment, modification, or supplement (i) is in accordance with the DIP Documents,

and (ii) does not prejudice the rights of the Debtors, any of the Prepetition Secured Parties, any unsecured creditors, or the U.S. Trustee in any material respect; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to a Committee (if appointed), counsel to the Prepetition Term Loan Agent and the U.S. Trustee (collectively, the "Notice Parties") at least two (2) business days prior to the effective date of any non-material amendment, modification, or supplement, and at least five (5) business days prior to any material amendment, modification, or supplement; and (c) the amendment, modification, or supplement is filed with the Court; *provided, however,* that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement, unless such amendment is a material amendment and a party in interest files an objection to such amendment with the Court prior to the proposed effective date thereof, in which case such amendment shall only be effective upon approval by the Court; and *provided further,* that such amendment, or supplement shall be without prejudice to the right of any party in interest to be heard.

19.    Budget Maintenance.  The use of extensions of credit under the DIP Facility shall be in accordance with the Approved Budget, subject to the variances set forth in paragraph 20 hereof, depicting on a weekly and line by line basis, (a) projected cash receipts, (b) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), asset sales and any other fees and expenses relating to the DIP Documents), (c) projected net cash flow, (d) projected inventory receipts and levels, (e) projected Borrowing Base and Availability (each as defined in the DIP Agreement), including detailed calculations with respect to advance rates and eligibility categories, (f) professional fees, and (g) total available liquidity for the first 13 weeks from the

Closing Date (as defined in the DIP Agreement). The Approved Budget (including, for the avoidance of doubt, the initial Approved Budget and any updated Approved Budget) shall be in form and substance acceptable to DIP Agent in its sole discretion.  The budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Agent) from time to time (provided that such updated budget shall be in form and substance satisfactory to, and approved by,DIP Agent in its sole discretion), and actuals and variances shall be reported on a weekly basis. No such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved Budget"; *provided*, *however*, that in the event that the DIP Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior Approved Budget shall continue in effect, with weekly details for any periods after the initial 13-week period to be derived in a manner reasonably satisfactory to the DIP Agent from the monthly budget prepared by the Debtors (and approved by the DIP Agent in its sole discretion prior to the Closing Date) for these Chapter 11 Cases, and such disagreement shall give rise to an Event of Default under the DIP Agreement and this Interim Order once the period covered by the prior Approved Budget has terminated. A copy of any updated Approved Budget shall be filed with the Court and delivered at least two (2) business days prior to its effective date to counsel to the Prepetition Term Loan Agent, counsel for a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Agent.

20.    <u>Budget Compliance</u>.  The Debtors shall not permit unfavorable variance from the Approved Budget exceeding (a) 7.5% for total disbursements and (b) 7.5% with respect to cumulative net cash flow of the Debtors, in each case for the period from the Petition Date through the measurement date at the end of each week.  All variances shall be tested weekly on

the Friday of such week, beginning with the two-week period ending on June 21, 2019, followed by the three-week period ending on June 28, 2019, and measured on a rolling four-week basis thereafter.

21.    <u>Modification of Automatic Stay</u>.    The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Secured Parties or the Prepetition ABL Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Secured Parties and Prepetition ABL Parties under the DIP Documents, the DIP Facility, and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Secured Parties and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

22.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Secured Parties, and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP

Agent and Prepetition Agents is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agents all such financing statements, mortgages, notices, and other documents as the DIP Agent or the Prepetition Agents may reasonably request.  Each of the DIP Agent and the Prepetition Agents, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition Agents are the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee, lender's loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party under such documents or to be the loss payee, lender's loss payee, mortgagee or additional insured, as applicable.  The Prepetition Agents shall serve as agents for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

13114154.19

23.    <u>Application of Cash Collateral</u>.  All Cash Collateral now or hereafter received by Debtors shall be remitted to the Prepetition ABL Agent for application against Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Documents, until the Full Payment of all Prepetition ABL Obligations.

24.    <u>Protections of Rights of DIP Secured Parties and Prepetition Secured Parties.</u>

(a)    Unless the DIP Agent and the Prepetition ABL Agent shall have provided their prior written consent, or all DIP Obligations and all Prepetition ABL Obligations have been Paid in Full, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Interim Order; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Secured Parties', or the Prepetition ABL Parties' rights under this Interim Order, the DIP Documents or the Prepetition Documents with respect any DIP Obligations or Prepetition ABL Obligations.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not all DIP Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders and the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent, the DIP Lenders, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders) to provide under the DIP Documents or the provisions of this Interim Order; (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives (including third party representatives) of each of the DIP Agent and Prepetition Agents to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agent and Prepetition Agents, and their respective consultants, advisors, and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the DIP Agent and Prepetition ABL Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral.

(c)     No Debtor shall object to any DIP Secured Parties or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations and Prepetition Obligations, in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

25.     Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the Full Payment of all DIP Obligations and all Prepetition ABL Obligations, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.

26.     Cash Collection.  From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Documents (or in such other accounts as are designated by the DIP Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control

13114154.19

of the DIP Agent.  All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the to the Prepetition ABL Agent for application against Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Documents, until all Prepetition ABL Obligations are Paid in Full, and thereafter to the DIP Agent for application in accordance with the DIP Documents and this Interim Order.  Unless otherwise agreed to in writing by the DIP Agent, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order"). The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent.

27.    Maintenance of DIP Collateral.  Until the Full Payment of all DIP Obligations and all Prepetition ABL Obligations, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order that has first been agreed to by the DIP Agent or as otherwise required by the DIP Documents or this Interim Order.

28.    Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.

13114154.19

29.     <u>DIP Termination Date.</u>  On the DIP Termination Date, all DIP Obligations shall be Paid in Full, and any right of Debtors to use Cash Collateral shall automatically terminate.

30.     <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, or (b) the occurrence of an "Event of Default" under the DIP Agreement.

31.     <u>Rights and Remedies Upon Event of Default</u>.  Upon or at any time after the occurrence of an Event of Default and for so long as such Event of Default shall exist, subject to giving four (4) business days' written notice to Debtors and any other applicable notice parties under the DIP Financing Orders (in either event, the "<u>Default Notice Period</u>"), DIP Agent may in its discretion (and, upon receipt of written instructions to do so from DIP Lenders, shall) (a) declare the principal of and any accrued interest on the DIP Loans and all other DIP Obligations owing under any of the DIP Documents to be, whereupon all DIP Obligations shall be Paid in Full by the Debtors without further notice or demand (all of which notice and demand Debtors expressly waives) and (b) terminate the Revolver Commitments (as defined in the DIP Agreement).  Further, upon and after the occurrence of an Event of Default and for so long as such Event of Default shall exist, subject to the Default Notice Period, DIP Agent may in its discretion (and, upon receipt of written direction of DIP Lenders, shall) exercise from time to time the following rights and remedies in accordance with applicable non bankruptcy law: (i) all of the rights and remedies of a secured party under the UCC or under other applicable law, and all other legal and equitable rights to which DIP Agent may be entitled under any of the DIP

36

Documents, all of which rights and remedies shall be cumulative and shall be in addition to any other rights or remedies contained in the DIP Agreement or any of the other DIP Documents, and none of which shall be exclusive; (ii) the right to collect all amounts at any time payable to a Debtor from any Account (as defined in the DIP Agreement) of a person at any time indebted to a Debtor; (iii) the right to take immediate possession of any of the DIP Collateral; (iv) the right to sell or otherwise dispose of all or any DIP Collateral in its then condition, or after any further manufacturing or processing thereof, at public or private sale or sales, with such notice as may be required by applicable law, in lots or in bulk, for cash or on credit, all as DIP Agent, in its sole discretion, may deem advisable; (v) appointment of a receiver, to take possession of all or any portion of the DIP Collateral and to exercise such rights and powers as the court appointing such receiver shall confer upon such receiver; (vi) the right to require Debtors to cash collateralize the Bank Product Debt (as defined in the DIP Agreement) and, if Debtors fail promptly to make such cash collateralization, DIP Lenders may advance such amount as a DIP Loan.  The DIP Lenders shall have no obligation to make any DIP Loans after the occurrence of an Event of Default and for so long as such Event of Default shall exist, including during the Default Notice Period.

32.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code: No Modification or Stay of this Interim Order</u>.  The DIP Secured Parties and Prepetition ABL Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties and Prepetition ABL Parties are entitled to the protections

provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any extensions of credit previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

33.     <u>DIP and Other Expenses</u>.  Subject to paragraph 40 hereof, the Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Secured Parties in connection with the DIP Facility, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, *provided, however*, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide reasonably detailed invoice summaries of its fee and expenses (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors.  Any objections raised by the Debtors, the U.S. Trustee or a Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized and

13114154.19

directed to pay on the Closing Date all undisputed reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Secured Parties and the Prepetition ABL Parties incurred on or prior to such date without the need for any professional engaged by the DIP Secured Parties or the Prepetition ABL Parties to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to the DIP Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

34.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Secured Parties in accordance with the terms and conditions of the DIP Agreement.

35.    <u>Proofs of Claim</u>.  The DIP Secured Parties and Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of (a) the Prepetition Agents (on behalf of the Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the DIP Secured Parties and the Prepetition Secured Parties.

36.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Secured Parties and the Prepetition ABL Parties reasonable access to the Debtors' premises and their

books and records in accordance with the DIP Documents and Prepetition Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.    In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and the Prepetition Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

      37.    <u>Carve Out</u>.

      (a)    Subject to the terms, conditions and limitations contained in this paragraph 37 hereof, but only to the extent and subject to the express exclusions set forth herein, the DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "<u>Carve Out</u>"):

      (i)    Allowed administrative expenses pursuant to 28 U.S.C. § 1930 for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

      (ii)    All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve Out</u>");

      (iii)    All accrued and unpaid fees (other than any "success," "restructuring," "transaction" or similar fees), disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Committee (the "<u>Case Professionals</u>" ), at any time prior to the delivery of the Carve Out Trigger Notice, but

40

solely to the extent the same are in amounts incurred in accordance with the Approved Budget, which estimated professional fees and disbursements shall in no event be more than the amounts set forth in the Approved Budget for such Case Professionals (the aggregate amount of which shall not be increased absent consent of each of the Prepetition Agents), less the amount of any prepetition retainers received by such Case Professionals and not previously returned or applied to fees and expenses; and

(iv)     All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $300,000 (the "Wind-Down Carve Out Amount") less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (iii) above.

(b)     So long as no Carve Out Trigger Notice has been issued by the DIP Agent, until all DIP Obligations are Paid in Full, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code but solely to the extent the same are incurred in accordance with the Approved Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base certificate delivered to the DIP Agent by the Debtors prior to the delivery of the Carve Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount. The DIP Agent shall be entitled to maintain reserves against the borrowing base under the DIP Agreement at all times in an amount equal to: accrued and unpaid fees and expenses in accordance with the Approved Budget and as reflected in the estimates provided on the most

recent borrowing base certificate delivered to the DIP Agent by the Debtors plus the Wind-Down Carve Out Amount plus amounts payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and fees required to be paid to the Clerk of this Court pursuant to 28 U.S.C. § 156(c) plus an amount equal to the amounts reflected in the Approved Budget for professional fees and expenses for the next four weeks. The Carve Out shall not be deemed increased if actual fees are higher in fact than the Approved Budget or the estimates provided on a borrowing base certificate. "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel, the U.S. Trustee, the Prepetition Term Loan Agent and its counsel, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent (i) at the time all DIP Obligations and all Prepetition ABL Obligations are to be Paid in Full or (ii) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice." Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any fees or expenses of the Case Professionals shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under the Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

(c) Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the Prepetition Agents, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses. The DIP Secured Parties and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of

42

any fees or disbursements of any Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

38.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Secured Parties', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring Debt (as defined in the DIP Agreement) without the prior consent of the DIP Agent, except to the extent permitted under the DIP Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Secured Parties or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code

or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Secured Parties, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Secured Parties or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Obligations; provided that a Committee (if appointed) may use up to $50,000 (in the aggregate) in connection with the investigation (including discovery proceedings), but not the initiation or prosecution, of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties.

39.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Secured Parties or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Approved Budget provided by the Debtors to the DIP Agent.

40.     Effect of Stipulations on Third Parties.

(a)     Generally.  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "Prepetition Lien and Claim Matters")

13114154.19

are and shall be binding on the Debtors, each of the Debtors' estates, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings required under the Bankruptcy Code and Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 40 hereof) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (a) 60 days from the date of formation of a Committee (if appointed), or (b) 75 days following the entry of the Interim Order in the case or any other party with requisite standing (the deadline established by clauses (a) and (b), the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and of the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the thirtieth (30th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as

applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

(b)     *Binding Effect.*    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof.  Upon entry of the Final Order, to the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending

13114154.19

themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 40 hereof, the Court may fashion any appropriate remedy, including without limitation claw back of Prepetition Obligations repaid pursuant to this Interim Order.

41.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

42.     Section 506(c) Claims.  Subject to and upon entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Secured Parties, the Prepetition ABL Parties, the Prepetition Term Loan Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Secured Parties, the Prepetition ABL Parties, and the Prepetition Term Loan Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

43.     No Marshaling/Applications of Proceeds.  Subject to and upon entry of a Final Order, the DIP Secured Parties and Prepetition ABL Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

44.     Section 552(b).  Subject to and upon entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the

47

Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

45.    <u>Access to DIP Collateral</u>.  Subject to entry of the Final order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent exercisable on behalf of the DIP Secured Parties, respectively, contained in this Interim Order, the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that an Event of Default or the DIP Termination Date has occurred and is continuing, the DIP Agent, may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that, subject to and effective upon entry of the Final Order, the DIP Agent shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent calculated on a daily per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded in this paragraph 45 hereof.  For the avoidance of doubt, subject to (and without waiver of) the rights of the DIP Secured Parties under applicable nonbankruptcy law, the DIP Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the DIP Agent on such notice to the landlord as shall be required by this Court.

13114154.19

46.  <u>Limits on Lender Liability</u>.  Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition ABL Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases.  Subject to entry of the Final Order, the DIP Secured Parties and the Prepetition ABL Parties shall not, solely by reason of having made loans under the DIP Facility be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.,* as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or any of the Prepetition ABL Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

47.  <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Secured Parties) and the Prepetition ABL Agent (on behalf of the Prepetition ABL Parties) shall be, and shall be deemed to be, without any further action or notice, named as loss payee, lender's loss payee, mortgagee or additional insured, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

48.  <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood,

however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

49.     <u>No Superior Rights of Reclamation</u>.  Based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Documents and the relation back of the DIP Liens, any alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens.

50.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties', the Prepetition ABL Parties' and, subject to the Intercreditor Agreement or payment in full of the Prepetition ABL Obligations, the Prepetition Term Loan Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Secured Parties, and/or the Prepetition ABL Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Secured Parties,

13114154.19

Prepetition ABL Parties or Prepetition Term Loan Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 Cases.

51.    No Waiver by Failure to Seek Relief.  The failure of the DIP Secured Parties or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Secured Parties, Prepetition Secured Parties, a Committee (if appointed), or any party in interest.

52.    Binding Effect of Interim Order.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Secured Parties, Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

53.    No Modification of Interim Order.  Until and unless all DIP Obligations and all Prepetition Secured Obligations have been Paid in Full, the Debtors irrevocably waive the right

to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (or the Prepetition ABL Agent), (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including,, without limitation, any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agent (or the Prepetition ABL Agent) for any order allowing use of Cash Collateral (other than as permitted during the Default Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent (or the Prepetition Agents), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agents.

54.    <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors, DIP Secured Parties and Prepetition Secured Parties each shall be bound by, and in all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement.

55.     <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

56.     <u>Discharge</u>.  The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations (including all DIP Obligations) have been Paid in Full, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties and the Prepetition ABL Agent has otherwise agreed in writing.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "<u>Prohibited Plan or Sale</u>") without the written consent of each of the DIP Secured Parties and the Prepetition ABL Agent.  For the avoidance of doubt, (i) the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents; and (ii) in no event may the adequate protection provided herein to the Prepetition Term Loan Lenders be discharged under a reorganization plan in these Chapter 11 Cases or otherwise absent consent of the Prepetition Term Loan Agent or indefeasible payment in full of the Prepetition Term Loan Obligations.

13114154.19

57.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Secured Parties and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms); (ii) in respect of the Prepetition ABL Facility, all Prepetition ABL Obligations pursuant to the Prepetition Documents and this Interim Order, have been Paid in Full; and (iii) in respect of the Prepetition Term Loan Facility, all Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Interim Order, have been paid in full.   The terms and provisions concerning the indemnification of the DIP Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

58.     Subject to the Challenge Period, the Prepetition ABL Parties intend to require that the Final Order shall provide, and the Debtors have agreed as a condition to obtaining financing

under the DIP Facility, that in consideration of the Prepetition ABL Parties the DIP Agent and the DIP Lenders permitting Debtors to use the prepetition collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Prepetition ABL Documents, the DIP Documents, and this Interim Order, each Debtor, on behalf of itself and its successors and assigns, (collectively, the "ABL and DIP Releasors"), shall, forever release, discharge and acquit each Prepetition ABL Party, the DIP Agent, and each DIP Lender, and each of their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, with respect to the Prepetition ABL Obligations, the Prepetition ABL Documents, the DIP Obligations, and the DIP Documents, and any loans, advances, letters of credit, bank products, or other financial accommodations made by any of the Prepetition ABL Parties to the Debtors (or any of them) pursuant to the Prepetition ABL Documents including, without limitation, any so-called "lender liability" claims or defenses, that ABL and DIP Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof.  In addition, upon the repayment in full of all Prepetition ABL Obligations owed to the Prepetition ABL Parties and the DIP Obligations owed to the DIP Agent and the DIP Lenders by the Debtors and the termination of the rights and obligations arising under the Prepetition ABL Documents and the DIP Documents (which payment and termination shall be on terms and conditions acceptable to the Prepetition ABL Agent and DIP Agent, respectively), the Prepetition ABL Parties, the DIP Agent and the

13114154.19

DIP   Lenders, shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Prepetition ABL Documents, the DIP Documents, this Interim Order or the Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out (or any portion thereof), on terms and conditions acceptable to the Prepetition ABL Agent and DIP Agent, but for the avoidance of doubt, excluding any claims or causes  of action for gross negligence or willful misconduct).

59.    Final Hearing.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for July 16, 21019 at 11:00 AM (ET) before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware.  On or before June 17, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on July 9, 2019 at 4:00 PM (ET), which objections shall be served so as to be received on or before such date by: (i) SportCo Holdings, Inc., 267 Columbia Ave, Chapin, SC 29036; (ii) proposed counsel to the Debtors, Polsinelli PC, 222 Delaware Ave, Suite 1101, Wilmington, DE 19018 (Attn: Christopher A. Ward) or cward@polsinelli.com and

McDermott Will & Emery LLP 340 Madison Ave, New York, New York 10173-1922 (Attn: Timothy W. Walsh and Darren Azman) or twwalsh@mwe.com and dazman@mwe.com; (iii) counsel to the DIP Agent and the Prepetition ABL Agent, Winston & Strawn LLP and Richards, Layton and Finger, PA; (iv) counsel to the Prepetition Term Loan Agent, Olshan Frome Wolosky LLP and Blank Rome LLP; (v) counsel to the Committee (if appointed); and (vi) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David Buchbinder) or David.L.Buchbinder@usdoj.gov.

60.    <u>Nunc Pro Tunc Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

61.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: June 13th, 2019**
**Wilmington, Delaware**

13114154.19