**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SPORTCO HOLDINGS, INC., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11299 (LSS)<br>(Jointly Administered)<br><br>**Hearing Date:  July 16, 2019 at 11:00 am (ET)**<br>**Obj. Deadline:  July 9, 2019 at 4:00 pm(ET)** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL  ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned Chapter 11 bankruptcy cases (the "Chapter 11 Cases") of SportCo Holdings, Inc., and certain of its affiliates (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby objects (the "Objection") to the *Motion of the Debtors For Entry of Interim And Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing The Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to The Prepetition Lenders, (V) Modifying The Automatic Stay, (VI) Scheduling a Final Hearing, And (VII) Granting related Relief* (the "DIP Motion").  In support of the Objection, the Committee respectfully represents as follows:[2]

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number are:  Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355), and United Sporting Companies, Inc. (5758).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion [Docket No. 8], Interim DIP Order (defined herein), DIP Credit Agreement (defined herein), or later in this Objection, as applicable.

**PRELIMINARY STATEMENT**

1.  The Committee finds itself in a unique and unprecedented position approximately four (4) weeks into these Chapter 11 Cases and only three (3) weeks after its appointment. The DIP Facility and Prepetition ABL Facility, which had a total outstanding balance of approximately $5.578 million[3] on July 1, 2019 has been, or is on the verge of being *paid off in full prior to* the Final DIP Hearing. The Committee's advisors have never been involved in a case where this has happened.

2.  While this Court approved the DIP Facility on an interim basis during the first day hearing after raising numerous *sua sponte* concerns, it is now clear – as the Committee also raised in the Committee Motion (defined below) – that the DIP Facility was not necessary and the Debtors could have sought to use cash collateral instead of seeking approval of the DIP Facility and its lender-friendly terms and conditions.

3.  The Committee is not necessarily adverse to the entry of a final DIP order (the "Final DIP Order"), however, the bundle of protections provided by the Final DIP Order should be substantially adjusted to reflect the fact that the DIP Lenders do not require any protection at all since they are receiving the greatest protection of all — payment in full. As discussed in more detail herein, the various fees, claims, lender protections, and most significantly the budget (and its underlying detail) should not be approved by the Final DIP Order. Moreover, as the Debtors have not sought approval of any proposed financing for after the DIP Facility is paid in full, entry of the Final DIP Order should not be used to impose new financing and a post-DIP budget on these cases without filing a motion on proper notice and opportunity to be heard by parties in interest.

---

[3] The projected remaining balance under the DIP Facility and Prepetition ABL Facility as of the week ending June 28, 2019, was $20.287 million – an approximate $14.7 million or 72.5% difference.

2

4. The Committee provided the Debtors, DIP Lenders and Prepetition ABL Lenders a DIP issues list – before the filing of the Committee Motion on June 26, 2019 – but have yet to receive any feedback. Notwithstanding, the Committee will continue to engage with these parties in an effort to reach a consensual resolution. Likewise, the Committee has begun discussions with the Term Loan Lenders in an effort to ensure a seamless transition to cash collateral usage once the DIP Lenders and ABL Lenders are no longer involved in the Chapter 11 Cases.

## RELEVANT BACKGROUND

### A. The Chapter 11 Cases

5. On June 10, 2019 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") and commenced these cases (the "Chapter 11 Cases"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and maintain their property as debtors-in-possession. No trustee or examiner has been appointed in these Chapter 11 Cases.

6. On the Petition Date, the Debtors filed the DIP Motion, which included a detailed description of the terms and conditions of the proposed DIP financing and DIP facility (the "DIP Facility") to be provided to the Debtors by Bank of America, N.A., Wells Fargo Bank, N.A., and Regions Bank (collectively, the "DIP Lenders") and a copy of the proposed debtor-in-possession loan and security agreement (the "DIP Credit Agreement"). [4]

7. On June 13, 2019, the Court entered a substantially modified order approving the DIP Motion on an interim basis (the "Interim DIP Order") after raising several *sua sponte* concerns and addressing arguments presented by parties in interest, including Prospect Capital Corporation ("Prospect") and the Office of the United States Trustee for the District of Delaware (the "U.S.

---

[4] The DIP Credit Agreement was attached to the DIP Motion as **Exhibit A**. [Docket No. 8-1].

3

Trustee") [Docket No. 51]. A hearing on final approval of the DIP Motion is scheduled for July 16, 2019 ("Final DIP Hearing").

8.      On June 17, 2019, the U.S. Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 58]. That same day, the Committee selected the law firm of Lowenstein Sandler LLP as its lead counsel, Morris James LLP as its Delaware counsel, and Emerald Capital Advisors as its financial advisors.

9.      On June 26, 2019, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order (A) Authorizing the Committee's Financial Advisors to Run a Going Concern Sale Process and Solicit Alternative Proposals Using, Inter Alia, the Debtors' Confidential Information, (B) Directing the Debtors to Cooperate in Such Efforts, and (C) Granting Reconsideration of the Interim DIP Order* [Docket No.82] (the "Committee Motion"). In advance of the hearing on the Committee Motion, the parties agreed that the Committee would run a going concern sale process for a three-week period subject to certain limitations embodied in an Order entered by this Court resolving the sale aspect of the Committee Motion [Docket No. 109]. The portion of the Committee Motion concerning the reconsideration of the entry of the Interim DIP Order was adjourned until the Final DIP Hearing.

**B.  The Debtors' Pre-Petition Capital Structure**

10.     On September 28, 2012, the Debtors entered into that certain Third Amended and Restated Loan and Security Agreement and the facility provided for under the agreement (the "Prepetition ABL Facility") dated September 28, 2012, between the Prepetition Borrowers, various lender parties thereto (the "Prepetition ABL Lenders"), and Bank of America, N.A., as administrative and collateral agent on behalf of the Prepetition ABL Lenders. As of the Petition Date, the Prepetition ABL Lenders are the same as the DIP Lenders.

11. On September 28, 2012, the Debtors also entered into that certain Second Lien Loan and Security Agreement and the facility provided for under the agreement, (the "Prepetition Term Loan Facility"), dated September 28, 2012, between the Debtors, various lenders party thereto (the "Prepetition Term Loan Lenders"), and Prospect, as administrative and collateral agent on behalf of the Prepetition Term Loan Lenders.

## OBJECTION

12. As indicated previously, the Committee does not object to the entry of a narrowly tailored Final DIP Order that takes into account the unique circumstances of these Chapter 11 Cases. Accordingly, the Committee requests the following modifications/deletions to the Interim DIP Order and DIP Credit Agreement prior to the entry of any Final DIP Order:

| No. | Provision | Requested Modification / Deletion |
|---|---|---|
| 1. | Interim DIP Order at ¶¶ 2 and 20. | The $500,000 closing fee should not be approved by the Final DIP Order. |
| 2. | DIP Credit Agreement at ¶2.2.2. | The unused line fee of .375% is excessive especially as the Debtors do not need to draw on the DIP Facility. |
| 3. | Interim DIP Order at ¶ 5; DIP Credit Agreement at ¶ 6.1. | There should not be a lien on avoidance action proceeds or any potential claims, or proceeds of such claims, against the equity sponsor, directors and officers, or the Term Loan Lenders, including, but not limited to, Prospect. |
| 4. | Interim DIP Order at ¶¶ 5, 15, 42, and 53. | There should not be a Section 506(c) waiver especially as the Committee is not comfortable that all administrative claims, including Section 503(b)(9) claims[5] and professional fees[6], are included in the budget. |

---

[5] The Prepetition ABL Lenders indicated in their objection to the Committee Motion that they were not aware of any Section 503(b)(9) claims, but would agree to include them in the budget.

[6] While not publicly filed, the informal allocation of the $4.9 million professional fee line item between and among the Debtors, lenders and the Committee is unfairly prejudicial to the Committee's ability to exercise its fiduciary duties.

5

| | | |
|---|---|---|
| 5. | Interim DIP Order at ¶¶43 and 44; DIP Credit Agreement at ¶ 4.5. | There should not be a Section 552(b) equity of the case waiver or a waiver of the Debtors' estates' marshaling rights. |
| 6. | Interim DIP Order at ¶¶ 38, 39, and 58. | • The Challenge Period applies to both the Prepetition ABL Lenders and Term Loan Lenders, but the Challenge Period should not apply to the Term Loan Lenders, especially since the Term Loan Lenders are not providing additional financing.<br>• The proposed release provision in the Interim DIP Order appears only to apply to the DIP Lenders and Prepetition ABL Lenders, which is inconsistent with the Challenge Period also applying to the Term Loan Lenders. This needs to be clarified to ensure that the Term Loan Lenders are excluded from the Challenge Period. |
| 7. | Interim DIP Order at ¶ 38 and 39; DIP Motion at ¶9 (section of chart entitled Restriction on Use of Funds). | The $50,000 challenge budget should not be limited to investigating the validity and perfection of liens. The Committee should be able to use the funds to investigate any potential causes of action. There is an inconsistency in the motion and the Interim DIP Order that should be clarified. |
| 8. | Interim DIP Order at ¶ 37. | The $300,000 cap on fees after receipt of a Carve Out Trigger Notice should be increased. |
| 9. | Interim DIP Order at ¶¶ 12(b) and 14(b). | The calculation of the Term Loan Lenders' adequate protection for diminution purposes should be based on the actual value of their claim, not the original principal amount of such claim. |
| 10. | Interim DIP Order at ¶ 16. | The Term Loan Lenders' advisor fees should not be paid as they are underwater. A mere reallocation to the payment of principal is not acceptable. |
| 11. | Interim DIP Order at ¶ 34. | The indemnity provided to the DIP Lenders should not be any broader than the indemnity under the Prepetition ABL Facility. |
| 12. | Interim DIP Order at ¶ 24. | Setoff should be permitted if a motion is filed or such set off is embodied in a timely filed proof of claim. |
| 13. | Interim DIP Order at ¶ 24(c). | • Credit bidding by the Term Loan Lenders should be limited to the actual value of their claim, not the original face amount.<br>• No lenders should be able to credit bid for any unencumbered assets and those assets must be paid for in cash.<br>• The Committee's challenge rights must be preserved in the event that there is a credit bid for the purchase of the Debtors' assets through the inclusion of language in the Final DIP Order |

6

| | | |
|---|---|---|
| | | requiring the DIP Lenders, Prepetition ABL Lenders, or Term Loan Lenders, if they credit bid, to disgorge cash in the event of a successful lien or other challenge.<br>• If a credit bid is allowed, the Final DIP Order must make clear that the alleged liens and security interests of the DIP Lenders, Prepetition ABL lenders, or Term Loan Lenders are not *ipso facto* found valid by the entry of a Final DIP Order. According to *In re Radnor Holdings Corp.*, 353 B.R. 820 (Bankr. D. Del. 2006), unless this Court expressly reserves the Committee's rights, the entry of an order permitting a credit bid may be tantamount to an order approving the nature, extent and validity of their liens and also prevents a lien challenge. |
| 17. | Interim DIP Order at ¶¶ 19, 20, 24(b), and 36. | The Committee should be provided all of the reporting given by the Debtors to the lenders. |
| 18. | N/A | The Committee needs more information about the $1 million "Winddown" line item in the budget. |
| 19. | N/A | The Committee needs to see the schedules to the DIP Credit Agreement. |

## **CONCLUSION**

**WHEREFORE**, based upon the foregoing, the Committee respectfully requests that the Court (a) not approve the Motion and DIP Facility on a final basis unless the Final DIP Order incorporates the Committee's concerns raised in the Objection, and (b) provide such other and further relief as the Court deems just and appropriate.

Dated:  July 12, 2019                   **MORRIS JAMES LLP**

/s/ Brya M. Keilson
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750
E-mail:  emonzo@morrisjames.com
E-mail:  bkeilson@morrisjames.com

and

7

Jeffrey Cohen, Esq.
Eric Chafetz, Esq.
Gabriel L. Olivera, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
E-mail: jcohen@lowenstein.com
E-mail: echafetz@lowenstein.com
E-mail: golivera@lowenstein.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*