## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | Case No. 19-11299 (LSS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTION 105, 363, AND 365 OF THE BANKRUPTCY CODE, (I) APPROVING THE ASSET PURCHASE AGREEMENT FOR THE SALE OF CERTAIN ASSETS OF EVANS SPORTS, INC. AND AUTHORIZING THE SALE CONTEMPLATED THEREIN; AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")
hereby file this motion (this "**Motion**") for the entry of an order, substantially in the form
attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to 105(a), 363, and 365 of title
11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules
2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy
Rules**"), (i) approving the asset purchase agreement (the "**APA**") between Jeffrey Gabel and
Jennifer Gabel (collectively, the "**Buyer**") and Evans Sports, Inc., a South Carolina Corporation
and debtor in possession in these cases (the "**Seller**" or "**Evans**"), in substantially the form
annexed to the Proposed Order as Exhibit 1, for certain assets of the Seller (the "**Evans Assets**"),
as provided for in the APA, and authorizing the transactions contemplated therein; and (ii)
granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Bonitz
Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor
Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo
Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758).  The location of the Debtors' corporate
headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code.

## BACKGROUND

A.      General

4.      On June 10, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "**Chapter 11 Cases**"). These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      On June 17, 2019, an Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") was appointed by the United States Trustee.  *See Notice*

DM_US 161029042-5.105320.0013
69767134.1

*of Appointment of Creditors' Committee* [Docket No. 58].  No trustee, examiner, or other official

committee has been appointed in these Chapter 11 Cases.

7.    The factual background regarding the Debtors, including a description of the

Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases are

set forth in the *Declaration of Bradley P. Johnson In Support of Debtors' Chapter 11 Petitions*

*and First-Day Motions* [Docket No. 9] (the "**First Day Declaration**"), which is incorporated

herein by reference.[2]

B.    Orderly Liquidation of Inventory

8.    After several months of unsuccessful efforts to secure a stalking horse bidder to

purchase the Debtors on a going concern basis, the Debtors' management made the decision to

discontinue going concern sale efforts and commence these Chapter 11 Cases.  After the Petition

Date, the Debtors have continued their orderly liquidation of inventory in the ordinary course of

business and plan to sell their three owned real property locations—in Chapin, South Carolina,

Newberry, South Carolina, and Bellefontaine, Ohio—through a separate sale motion.

9.    On July 3, 2019, the Bankruptcy Court authorized the Unsecured Creditors'

Committee to conduct a process to market the Debtors' assets for a going concern sale for a

three-week period beginning on July 3, 2019, however, the Unsecured Creditors' Committee has

not identified a going-concern buyer to date.

C.    Evans Sports, Inc.

10.    Evans, located at 801 S. Industrial Drive, Houston, Missouri (the "**Business**

**Premises**"), is a wholly-owned subsidiary of debtor Ellett Brothers, LLC engaged in the business

of manufacturing and selling finely detailed wooden storage boxes featuring rugged hardware

---

[2] Capitalized terms not defined herein shall have the meanings provided to them in the First Day Declaration.

3

and finger-joint construction (the "**Business**").  Evans has historically operated its Business at or below break-even.  Indeed, over the past few years Evans has generated EBITDA of $52,454 and negative $36,092 in 2017 and 2018, respectively, on gross sales of $2,269,399 and $1,675,721 over the same period.  From January 1, 2019 through April 30, 2019, Evans generated EBITDA of negative $162,776 on gross sales of $194,091. For the 2018 calendar year, Evans generated just under 0.3% of the Debtors' total net sales across all business lines.  Prepetition, the Debtors' management determined that it would be in their best interest to sell or shut down Evans given that the business was neither strategic nor accretive, and given how much cash it consumes for most of the year.[3]

11.    The Debtors' management looked into selling Evans to certain employees of Evans prior to the Petition Date.  Such employees had made an offer to purchase 100% of the outstanding stock of Evans for the cost of its inventory, its primary asset.  There was relatively little activity with respect to the proposed sale of Evans until April 2019 when the Buyer and Seller resumed discussions related to the sale.  After disclosing that the Debtors intended to file for bankruptcy, such discussions eventually led to the negotiation and drafting of the APA, which contemplates a sale of certain of the Evans Assets such that the Buyer will acquire the Business on a going concern basis.

12.    In connection with the proposed sale of the Evans Assets, more fully described in the APA, the Debtors conferred with their board of directors and Chief Restructuring Officer, Dalton Edgecomb. The Debtors determined that $170,000 purchase price under the APA, along with the value of the assumed liabilities, provide value to the estates superior to what would result from liquidating the Evans Assets. The Debtors further determined that any subsequent

---

[3] Evans Business is seasonal in nature and only generates income in two to three months of the year.

4

marketing efforts were unlikely to yield superior offers for the assets, and could jeopardize the proposed transaction with the Buyer and cause the Debtors to continue incurring administrative obligations with respect to the Evans Assets.    After consultation with Mr. Edgecomb and counsel, the Debtors determined that proceeding with a private sale to Buyer offered the best course of action available to the Debtors and would maximize value to the Debtors' estates. Accordingly, Debtors' counsel engaged in arm's-length negotiations with the Buyer and its counsel to finalize the price and other terms of the sale to Buyer, as set forth in the APA.

13.    The Debtors are not aware of any third parties that will be inclined to put forth a higher and better offer for the Evans Assets.  However, to ensure that the APA is the highest and best offer for the Evans Assets, the Debtors will further consider alternative offers for some or all of the Evans Assets made prior to the hearing on this Motion.

## SUMMARY OF THE APA[4]

14.    Following arm's-length negotiations, the Buyer and the Seller entered into the APA, a summary of which follows.

- Assets Sold: The Buyer will acquire from the Seller the Evans Assets, consisting of all properties, rights, interests and other assets of the Seller to the extent used in the Seller's Business, including tangible assets, transferable computer software, the Seller's trade name, transferable licenses and permits, telephone numbers, email addresses, domain names and websites, transferable leases and executory contracts, customer lists, and books and records, free and clear of all encumbrances and without successor liability.

- Purchase Price: The Buyer will pay the Seller a purchase price (the "**Purchase Price**") of $170,000.00 in consideration of the sale and transfer of the Evans Assets. Upon execution of the APA, the Buyer shall deposit $17,000 with Seller's counsel, and the balance of the Purchase Price shall be due in full at the consummation of the transactions contemplated in the APA (the "**Closing**").

- Assumed Liabilities: The Buyer will assume certain liabilities (the "**Assumed Liabilities**") relating to the Business, as set forth in the APA.

---

[4] The summary of the APA is qualified in its entirety by the APA. If there are any inconsistencies between the summary contained herein and the APA, the APA shall control. Capitalized terms used but not defined in the following summary of the APA shall have the definitions ascribed to them in the APA.

Specifically, these include liabilities and obligations of any kind or nature: (i) arising and accruing after the Closing date under the work in process or orders; and (ii) arising and accruing after the Closing date under any transferred contracts.

•     <u>Closing Date and Time</u>: The Closing shall take place at 11:59 p.m. Eastern Time (the "**Effective Time**") on the first day that is three business days after the satisfaction or waiver of all of the conditions to closing set forth in Article VIII and Article XI of the APA (other than those conditions to be satisfied at the Closing itself, but subject to the satisfaction or, if permitted by applicable law, waiver of such conditions at the Closing), or at such other time as Seller and Buyer may mutually agree upon in writing.

•     <u>Other Documents</u>: In connection with the Closing, the Buyer and the Seller will enter into such other documents as necessary to effect the transactions pursuant to the terms of the APA, including an assumption agreement wherein the Buyer will assume the lease for the Business Premises.

•     <u>Transferred Employees</u>: The Buyer will offer new employment as of the Effective Time to all of Sellers' employees.

**RELIEF REQUESTED**

15.    By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, (i) approving the APA in substantially the form annexed to the Proposed Order as <u>Exhibit 1</u> and authorizing the transactions contemplated therein; and (ii) granting related relief. As set forth more fully below, the Debtors believe that the relief requested herein is in the best interest of the Debtors, their estates, and all stakeholders.

**BASIS FOR RELIEF REQUESTED**

A.    <u>The Debtors Have Satisfied Section 363(b) of the Bankruptcy Code.</u>

16.    Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that,

6

"[a]ll sales not in the ordinary course of business may be by private sale or by public auction."

Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private

sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that

> [T]he notice of a proposed use, sale, or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

17.     To approve the use, sale or lease of property outside the ordinary course of

business, the Court must find "some articulated business justification" for the proposed action.

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d

Cir. 1983); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 145–47 (3d Cir.

1986) (implicitly adopting the "articulated business justification" and good-faith tests of *Lionel*);

*In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (concluding that the Third

Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Titusville Country Club

v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re

Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa.

1987).

B.      Entry into the APA is Within the Sound Business Judgment of the Debtors, and the
        Transactions Provided Therein Should Be Approved.

18.     Generally, courts have applied four factors in determining whether a sale of a

debtor's assets should be approved: (a) whether a sound business reason exists for the proposed

transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction

has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice

is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test);

*Abbotts Dairies*, 788 F.2d at 145–57 (implicitly adopting the articulated business justification

7

test and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

19.     This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Here, the terms of the APA meets these requirements and should be approved.

20.     Additionally, the Debtors acknowledge that where "there is an 'insider' relationship between the [Debtor] and [a purchaser] . . . it warrants close scrutiny." *In re Phila. Newspapers, LLC*, 2009 Bankr. LEXIS 3167, *27-28 (Bankr. E.D. Pa. Oct. 8, 2009), *rev'd on other grounds*, 599 F.3d 298 (3d Cir. 2010). However, the Debtors do not believe the instant transaction is an insider transaction as the buyers are not officers of the Debtors and they do not otherwise control the Debtors day-to-day activities taken as a whole.

   i.     *Proceeding by Private Sale Reflects a Prudent Exercise of the Debtors' Business Judgment.*

21.     Ample business justification exists to sell the Evans Assets through a private transaction rather than conducting a public sale or auction process. The Debtors submit that an

DM_US 161029042-5.105320.0013
69767134.1

order granting the relief requested herein is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Relative to a liquidation, the sale provides significantly greater total value. Also, in addition to the purchase price, the Buyers intend to employ the employees of Evans, helping the Seller avoid severance costs.

22.     The Debtor has obtained what it considers the highest and best value for the Evans Assets, and has not received any competing interest for the Evans Assets. Under the circumstances, the Debtors believe that a public auction or extended marketing process are unjustified and that such procedures are unlikely to generate additional value. Rather, this delay would cause the Debtors to incur increased administrative expenses, such as monthly rent, and threaten the transaction with the Buyer. For these reasons, the Debtors have determined that they have identified the value-maximizing alternative for the Evans Assets, and it is in the Debtors' best interest to pursue this opportunity.

*ii.*        *The Purchase Price is Fair and Reasonable.*

23.     The Seller has engaged in arm's length negotiations with the Buyer through counsel. Relative to a liquidation, the sale provides significantly greater value. No other offers have been made for these assets. As a result, in light of the nature of the Evans Assets, and the circumstances of this case, the Debtors believe that the proposed sale provides fair and reasonable value to the Debtors. Accordingly, the Debtors submit that the proposed sale is in the best interest of the Debtors' estates and represents a fair and reasonable disposition.

*iii.*        *The Sale Is Proposed in Good Faith.*

24.     The sale pursuant to the APA has been proposed in good faith as the APA was the product of good-faith, arm's-length negotiations between the Seller and the Buyer, and was negotiated with the active involvement of the Debtors' counsel. The Debtors believe that the sale

to the Buyer pursuant to the terms and conditions of the APA is not the product of collusion or bad faith. No evidence exists to suggest that the APA is anything but the product of arm's-length negotiations between the Seller and the Buyer. Under the circumstances, the Buyer should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good-faith purchaser. *See Abbott Diaries*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

> *iv.    Adequate and Reasonable Notice of the Assignment Will Be Provided.*

25.    The Debtors will provide adequate notice of this Motion to parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) ("[T]he notice of a proposed . . . sale . . . shall include . . . the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms and effects of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

C.    The Sale Should Be Free and Clear of Liens, Claims, and Interests.

26.    In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. §

363(f); *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be

approved provided the requirements of at least one subsection are met).

       27.     Here, the Debtors believe that one or more of the subsections of section 363(f) of

the Bankruptcy Code have been satisfied. Furthermore, courts have held that they have the

equitable power to authorize sales free and clear of interests that are not specifically covered by

section 363(f). *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D.

Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White

Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Accordingly, the Debtors

request that the transactions contemplated by the APA be approved "free and clear."

D.      Assumption and Assignment Should Be Approved Under Section 365 of the <u>Bankruptcy
Code, to the Extent Applicable.</u>

       28.     Pursuant to section 365(a) of the Bankruptcy Code, a debtor in possession may,

subject to the Court's approval, assume or reject any executory contract or unexpired lease. The

standard used to determine whether a debtor may assume or reject an executory contract or

unexpired lease is the "business judgment" test. *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R.

845, 846 (Bankr. W.D. Pa. 1987) (citing *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984)).

Debtors are given significant discretion when requesting to assume or reject an executory

contract. *See generally Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir.

2005). The business judgment test "requires only that the trustee [or debtor in possession]

demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-

Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R.

845, 846 (Bankr. W.D. Pa. 1987) (citation omitted). Moreover, pursuant to section 365(b)(1) of

the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide

DM_US 161029042-5.105320.0013
69767134.1

adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

29.     Once an executory contract is assumed, the trustee or debtor-in-possession may elect to assign such contract. *See In re Rickel Home Cts., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate[.]"); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist a trustee in realizing the full value of the debtor's assets).

30.     Section 365(f) of the Bankruptcy Code further provides that a debtor may assign an assumed contract as long as "adequate assurance of future performance . . . is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B. R. 524, 538 (Bankr. D.N.J. 1989); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986).

31.     Here, the Court may approve the assumption and assignment of the Evans Assets subject to the APA, to the extent any such assets constitute executory contracts, because (i) the Debtors have exercised reasonable business judgment, (ii) the Seller shall be responsible for the payment of cure costs with respect to the Seller's transferable real property leases, personal property leases, executory contracts, and agreements, as shown on Schedule 2.1.6 to the APA,

DM_US 161029042-5.105320.0013
69767134.1

and (iii) the Buyer is well-versed in Evans' business and can demonstrate adequate assurance of future performance.

32.     *First*, the assumption and assignment is a reasonable exercise of the Debtors' business judgment. In connection with its efforts to maximize the value of its assets, the Debtors have determined that the Seller's entry into the APA is in the best interest of the Debtors' estates for the reasons set forth above. Moreover, the Seller would eliminate its ongoing obligation to perform under such executory contracts and avoid the accrual of any further administrative obligations, rejection damages, or other potential liability thereunder, thereby providing an additional benefit to the Debtors' estates.

33.     *Second*, the amounts owing to contract counterparties (the "**Contract Counterparties**"), as set forth in Schedule 2.1.6 to the APA, will be cured in connection with assumption and assignment. Each such counterparty will be provided with notice of this Motion and will have an opportunity to object to the potential assumption and assignment of their respective contracts prior to the entry of an order approving this Motion. As set forth in the Proposed Order, any counterparty that fails to object to the proposed assumption and assignment of any contract will be deemed to consent to that assumption and assignment pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Proposed Order, along with the cure amounts identified therein. *See, e.g.*, *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor was deemed to have consented to sale by not objecting to sale motion).

34.     *Third*, the Buyer is well-versed in Evans business, given that Jeffrey Gabel and Jennifer Gabel are current employees of Evans, and upon Closing of the APA the Buyer will be able to fulfill its ongoing obligations with respect to the Evans Assets. Accordingly, for the reasons set forth above, the Debtors have satisfied the requirements of section 365 of the Bankruptcy Code, to the extent applicable. The assumption and assignment of the executory

13

contracts on the terms set forth in the APA is in the best interests of the Debtors' estates and should be approved.

E.     Waiver of the 14-Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) <u>Is Appropriate.</u>

35.     Finally, the Debtors request a waiver of the 14-day stay that would otherwise apply to the sale (and any assumption and assignment) pursuant to Bankruptcy Rules 6004(h) and 6006(d). Doing so will allow for a prompt closing of the sale. The Court should approve the waiver of the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d), to the extent applicable.

## **<u>NOTICE</u>**

36.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Unsecured Creditors' Committee; (iii) counsel to the Prepetition Term Loan Agent; (iv) the Contract Counterparties; and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is necessary.

*[remainder of page intentionally left blank]*

DM_US 161029042-5.105320.0013
69767134.1

WHEREFORE, the Debtors submit that the requirements of sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 6006(d) have been satisfied and respectfully request that the Court enter the Proposed Order, in substantially the form attached hereto as **Exhibit A**, and grant such other relief as the Court deems just and proper.

Dated: July 25, 2019
      Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Brenna A. Dolphin (Del. Bar No. 5604)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
bdolphin@polsinelli.com

-and-

**McDERMOTT WILL & EMERY LLP**
Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone:    (212) 547-5400
Facsimile:    (212) 547-5444
twwalsh@mwe.com
dazman@mwe.com
rorloff@mwe.com

*Counsel to the Debtors and Debtors in Possession*