**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SPORTCO HOLDINGS, INC., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 19-11299 (LSS)<br>(Jointly Administered)<br><br>**Bidding Procedures Hearing Date:**<br>August 16, 2019 at 10:00 a.m. (prevailing Eastern Time)<br><br>**Bidding Procedures Objection Deadline:**<br>August 9, 2019 at 4:00 p.m. (prevailing Eastern Time) |

**DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF THE BELLEFONTAINE FACILITY,
(B) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE APA,
(C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE
BELLEFONTAINE FACILITY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES AND (B) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND (III) GRANTING RELATED RELIEF**

SportCo Holdings, Inc. and certain of its wholly-owned direct and indirect subsidiaries,

as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter

11 cases (these "Chapter 11 Cases"), hereby move (the "Motion") for entry of an order, in

substantially the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"), pursuant

to sections 105(a), 363(b), (f), and (m), 365, 503, and 507 of title 11 of the U.S. Code (the

"Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i)(a) approving procedures in connection with the sale of the Bellefontaine Facility (as defined below), (b) approving the Debtors' entry into the Stalking Horse APA with the Stalking Horse Bidder (each as defined below), (c) scheduling the related auction and approving the form and manner of notice thereof, (d) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, and (e) scheduling a sale hearing and approving the form and manner of notice thereof, (ii)(a) approving the sale of the Bellefontaine Facility free and clear of liens, claims, interests and encumbrances ("Interests"), and (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (iii) granting related relief.   In support of the Motion, the Debtors rely upon the *Declaration of Dalton Edgecomb, Chief Restructuring Officer of Debtors, in Support of the Debtors' Sale Motion*, attached hereto as **Exhibit B** (the "Edgecomb Declaration").   In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As described in the Edgecomb Declaration, in January of 2019, the Debtors retained Houlihan Lokey Capital, Inc. to pursue a sale of the Debtors as a going-concern. While certain parties expressed interest in a going concern sale transaction, none of the interested parties ultimately presented an offer that the Debtors' boards of directors considered to be value-maximizing after considering all relevant factors.   As a result, in June of 2019, the Debtors' boards of directors made a determination that filing these Chapter 11 Cases to pursue an orderly liquidation of the Debtors' assets was in the best interest of all stakeholders.   The Debtors have utilized the breathing period provided by the automatic stay to continue marketing certain

2

business lines and parcels of real property that drew interest during the Debtors' prepetition marketing process.  In connection with such efforts, the Debtors retained CBRE, Inc. ("CBRE") to market and sell the Debtors' distribution facility located in Bellefontaine, Ohio (the "Bellefontaine Facility").  With the efforts of CBRE, the Debtors have located a stalking horse purchaser for the Bellefontaine Facility and file the instant Motion seeking this Court's approval of certain auction and sale procedures in connection with the sale of such facility.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), (f), and (m), 365, 503, and 507, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9006-1.

5.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.      The Debtors' Chapter 11 Cases

6.      On June 10, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  These Chapter 11

Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8.      On June 17, 2019, an Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee.  *See Notice of Appointment of Creditors' Committee* [Docket No. 58].  No trustee, examiner, or other official committee has been appointed in these Chapter 11 Cases.

9.      The factual background regarding the Debtors, including a description of the Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases are set forth in the *Declaration of Bradley P. Johnson In Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 9] (the "First Day Declaration"), which is incorporated herein by reference.

## II.      The Sale Process for the Bellefontaine Facility

10.      As described in the Edgecomb Declaration, the Debtors, through their investment banker, ran an extensive five month prepetition going concern sale process.  In June of 2019, after no interested party ultimately presented an offer that the Debtors' boards of directors considered to be value-maximizing, the Debtors' boards of directors decided to file these Chapter 11 Cases to pursue an orderly liquidation of the Debtors' assets.

11.      On May 29, 2019, the Debtors retained CBRE to separately market and sell the Bellefontaine Facility.

12.      Based on the efforts of CBRE, Ellett Brothers, LLC has entered into an Agreement of Purchase and Sale, a copy of which is attached hereto as **Exhibit D** (the "Stalking

Horse APA") with E Brothers Ltd. (the "Stalking Horse Bidder") for the sale of the Bellefontaine

Facility.[2]  The terms of such Stalking Horse APA are described herein.

## RELIEF REQUESTED

13.     By this Motion, pursuant to Bankruptcy Code sections 105(a), 363 and 365,

Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and Local Rules 2002-1, 6004- 1 and

9006-1, the Debtors request that the Court enter the Bidding Procedures Order in substantially

the form attached hereto as **Exhibit A**:

<blockquote>

(i)     approving the proposed procedures attached as Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures") to be used in connection with the sale (the "Sale") of the Bellefontaine Facility;

(ii)    authorizing the Debtors to enter into the Stalking Horse APA and to provide certain bid protections (the "Bid Protections") to the Stalking Horse Bidder in connection therewith;

(iii)   scheduling an auction of the Bellefontaine Facility (the "Auction") and a final hearing for approval of the sale of the Bellefontaine Facility (the "Sale Hearing");

(iv)    approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing;

(v)     authorizing certain procedures related to the Debtors' assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") in connection with any Sale; and

(vi)    granting related relief.

</blockquote>

14.     The Debtors also move the Court, pursuant to Bankruptcy Code sections 105, 363

and 365, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, for entry of an order

in substantially the form attached hereto as **Exhibit C** (the "Sale Order"):

<blockquote>

(i)     authorizing the sale of the Bellefontaine Facility to the Successful

</blockquote>

---

[2] Capitalized terms not defined herein shall have the meanings provided to them in the Stalking Horse APA.

Bidder (as defined below) at the Auction free and clear of all liens, claims, interests and encumbrances (the "Sale Transaction");

(ii)    authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith; and

(iii)   granting related relief.

## THE PROPOSED SALE

**I.    The Primary Terms of the Stalking Horse APA**

15.    The Stalking Horse APA contemplates the sale of the Bellefontaine Facility to the

Stalking Horse Bidder, subject to higher or better bids, on the following material terms:[3]

| Stalking Horse APA Provision | Summary Description |
|---|---|
| **APA Parties** | Ellett Brothers, LLC, as Seller, and E Brothers Ltd. as Purchaser |
| **Purchase Price APA § 4.1** | The purchase price (the "Purchase Price") for the Bellefontaine Facility is $7,395,000.00. |
| **Sale Assets; Avoidance Actions APA § 1.1** | The sale assets are: (i) that certain parcel of real property located at and commonly known as 1 Hunter Place, Bellefontaine, Ohio, as more particularly described in Exhibit A annexed to the Stalking Horse APA, (ii) the structures and improvements located thereon, and (iii) any related fixtures, furniture, equipment, and personal property specifically identified in the Stalking Horse APA (collectively, the "Bellefontaine Facility"). Purchaser is not purchasing avoidance actions. |
| **Excluded Liabilities APA § 10.4.2(a)(i)** | In the event there is no Auction, or that Purchaser presents the winning bid at the Auction, Seller is required to use its best efforts to obtain entry of a Court order authorizing the sale of the Bellefontaine Facility to Purchaser free and clear of all liens, claims or interests. |
| **Assumption and Assignment of Contracts APA § 7.1.2** | Seller and Purchaser are required to cooperate and coordinate a transfer to the Purchaser of all Contracts and/or responsibility for the supply to the Property of electric power and other utilities, if any, on the Closing Date, with Purchaser causing all such utility services to be placed in its name as of the Closing Date, provided, however, if Seller, despite using commercially reasonable efforts, cannot coordinate a transfer of the Contracts, and/or responsibility for the supply of utilities on the Closing |

---

[3] The summary of the terms contained in this Motion is qualified in its entirety by reference to the provisions of the Stalking Horse APA. In the event of any inconsistencies between the provisions of the Stalking Horse APA and the summary set forth herein, the terms of the Stalking Horse APA shall govern. The summary of terms highlights certain terms in accordance with Local Rule 6004-1.

| Stalking Horse APA Provision | Summary Description |
|---|---|
| | Date, then Seller shall use commercially reasonable efforts to cooperate with Purchaser to ensure that post-closing such transfer is effectuated. |
| | "Contracts" include all service, maintenance, telecommunications and other contracts in connection with the Bellefontaine Facility, if any, set forth on <u>Schedule 3.1.6</u> to the Stalking Horse APA. |
| | If Seller's accounts are not closed as of the Closing, Seller is required to use commercially reasonable efforts to cause all services using meters to be read as of the Closing Date, and charges and fees due under Contracts for the supply to the Property of electric power and other utilities, if any, in respect of the billing period of the related service provider in which the Closing Date occurs (the "<u>Current Billing Period</u>") will be apportioned on a per diem basis based upon the number of days in the Current Billing Period prior to the Closing Date (which shall be allocated to Seller) and the number of days in the Current Billing Period on and after the Closing Date (which shall be allocated to Purchaser) and assuming that all charges are incurred uniformly during the Current Billing Period. |
| | All deposits, if any, made by Seller as security with respect to any utility service shall be credited to Seller if such amounts remain on deposit after the Closing for the benefit of Purchaser; provided, however, in lieu thereof, Seller shall be entitled in its sole discretion to receive a refund of such security deposits directly from any such service provider without credit to Purchaser. |
| **Payment of Cure Costs** | The Stalking Horse APA does not expressly provide for the payment of cure costs. However, it is expected that Seller will keep the Contracts current through Closing. |
| **Good Faith Deposit APA § 4.2.1** | Purchaser will pay within three business days after execution of the Stalking Horse APA a down payment of $369,750.00 via wire transfer to the Title Company, as escrow agent. |
| **Closing Deadlines APA § 5.1** | The Closing Date shall occur at 10:00 a.m. Eastern Time on the date that is ten days after entry of the Sale Order. |
| | Seller may adjourn the Closing Date one or more times upon at least one (1) Business Days' prior notice to Purchaser in order to remedy Title Defects or to satisfy any other conditions to Purchaser's obligation to consummate the Closing, but may not extend the Closing Date by more than thirty days in aggregate. |
| **Sale Milestones APA § 10.4.1** | No later than three (3) business day after the Stalking Horse APA is executed, must file a motion with the Bankruptcy Court seeking entry of a Bidding Procedures Order. |
| | In the event there is no Auction, or that Purchaser presents the winning bid at the Auction, then Seller must use its best efforts to obtain entry of an order of the Court approving the sale on the terms of the Stalking |

7

| Stalking Horse APA Provision | Summary Description |
|---|---|
| | Horse APA within three days after the Sale Hearing, or such other date set by the Bankruptcy Court. |
| **Bid Protections APA § 10.4** | The Stalking Horse APA provides for the following "Bid Protections" <br><br> a. a break-up fee in the amount of $270,000 (the "Breakup Fee"); and <br><br> b. reasonable, actual, and documented costs and expenses incurred by the Stalking Horse Bidder related to its due diligence, and pursuing, negotiating, and documenting the transaction(s) contemplated by the Stalking Horse APA, in an amount not to exceed $100,000 (the "Expense Reimbursement"). <br><br> The Bid Protections are payable pursuant to the terms of the Stalking Horse APA and the Bidding Procedures Order in the event that the Stalking Horse Bidder is not the Successful Bidder at an Auction for the Bellefontaine Facility and the Stalking Horse Bidder is not selected as the Backup Bidder or if the Debtors consummate an Alternative Transaction with respect to the Bellefontaine Facility to another Bidder at consummation of an Alternative Transaction and/or under such other conditions specified in the Stalking Horse APA. <br><br> "Alternative Transaction" is a transaction or series of related transactions (which could include a Chapter 11 Plan) pursuant to which Seller accepts a bid to acquire all of the Bellefontaine Facility from a Person other than Purchaser or any affiliate of Purchaser (or a group or joint venture that includes Purchaser or any affiliate of Purchaser), in accordance with the Bidding Procedures Order or otherwise, but does not mean the sale of goods or services of the Seller's business conducted in the ordinary course. <br><br> If no Alternative Transaction closes, neither the Breakup Fee nor the Expense Reimbursement will be due or paid. <br><br> In the event that payment of any amount of the Bid Protections becomes due and payable, and such amounts are actually paid to the Stalking Horse Bidder, such amounts will constitute liquidated damages. |
| **Buyer's Termination Rights APA §§ 3.3, 8.5.2, 12.2** | If, on the Closing Date, a Title Defect results in Seller being unable to convey to Purchaser marketable title to the Property, Seller is entitled to reasonable adjournments of the Closing not to exceed thirty days in the aggregate. If at the adjourned date Seller is unable to convey marketable title, or if Seller notifies Purchaser in writing that it has elected not to cure or extinguish any Title Defect, then Purchaser may terminate the Stalking Horse APA by written notice to Seller. <br><br> Purchaser shall have the right to cause to be conducted an environmental |

DM_US 161244748-3.105320.0013
69768988.1

| Stalking Horse APA Provision | Summary Description |
|---|---|
| | assessment or assessments of the Bellefontaine Facility prior to Closing. If the results of the assessments are unsatisfactory to Purchaser, in Purchaser's reasonable discretion, Purchaser may terminate the Stalking Horse APA. |
| | If, after the Execution Date but prior to the Closing, Purchaser first becomes aware of a Breach of any of the representations or warranties made by Seller in the Stalking Horse APA, Purchaser may deliver to Seller a Claim Notice with respect to such Breach within five (5) Business Days after so becoming aware (but, in any event, prior to the Closing). In such event, Seller has the right (but not the obligation) to attempt to cure such Breach and shall, at its option, be entitled to extend the Closing Date pursuant to Section 5.1 of the Stalking Horse APA for the purpose of such cure. If Seller elects to attempt to so cure but is unable to so cure any such Breach, or if Seller does not attempt any such cure, then Purchaser, as its sole remedy for any and all such Breaches, may elect, provided that such Breaches were not within Purchaser's Knowledge as of the Execution Date and such Breaches result in a Material Adverse Effect, terminate this Agreement in its entirety by written notice given to Seller on or prior to the Closing Date. |
| | The Purchaser may terminate the Stalking Horse APA if the conditions to Closing set forth in section 10.2 thereof are not satisfied. Section 10.2 requires that (i) the Sale Order have been entered by the Court approving the Sale to the Stalking Horse Bidder, (ii) Seller shall have executed and delivered to Purchaser all required documents and shall have taken all material actions required of Seller under the Stalking Horse APA, and (iii) that all representations and warranties made by Seller in the Stalking Horse APA be true and correct in all material respects as of the Closing Date. |
| | If prior to the Closing there shall occur a taking by condemnation of any material portion of the Property, then Purchaser may terminate the Stalking Horse APA by written notice given to Seller within fifteen (15) Business Days after Seller has given Purchaser the notice referred to in Section 12.1 of the Stalking Horse APA, or at the Closing, whichever is earlier. |
| **Requested Findings as to Good Faith, Successor Liability; Relief from Rule 6004(h) APA § 10.4.2** | Seller is required to obtain a Sale Order that, among other things, contains findings that Purchaser is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code and that Purchaser is not deemed to be a successor to Seller, to have, *de facto* or otherwise, merged with or into Seller or to be a mere continuation of Seller |
| | The Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). |

9

II.     **The Bidding Procedures**

16.     The Bidding Procedures, which are attached as Exhibit 1 to the Bidding Procedures Order, are designed to maximize value for the Debtors' estates, while effectuating an expeditious sale of the Bellefontaine Facility.  Among other things, the Bidding Procedures set forth procedures for interested parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing.

17.     Certain of the salient terms of the proposed Bidding Procedures are highlighted below:[4]

- **Key Proposed Dates (subject to the Court's availability)**:

| | |
|---|---|
| **4:00 p.m. (prevailing Eastern Time) on August 9, 2019** | Deadline to Object to Approval of the Bidding Procedures and Bidding Protections |
| **10:00 a.m. (prevailing Eastern Time) on August 16, 2019** | Hearing to consider entry of the Bidding Procedures Order |
| **Within five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to file Assumption and Assignment Notice |
| **5:00 p.m. (prevailing Eastern Time) on the date that is fourteen days after filing of the Assumption and Assignment Notice** | Deadline to file Cure Objections and Adequate Assurance Objections |
| **5:00 p.m. (prevailing Eastern Time) on August 30, 2019** | Bid Deadline |

---

[4] The summary of the terms contained in this Motion is qualified in its entirety by reference to the provisions of the Bidding Procedures.  In the event of any inconsistencies between the provisions of the Bidding Procedures and the summary set forth herein, the terms of the Bidding Procedures shall govern.  Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

| | |
|---|---|
| **10:00 a.m. (prevailing Eastern Time) on September 6, 2019** | Auction (if necessary), to be held at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 |
| **4:00 p.m. (prevailing Eastern Time) on September 9, 2019** | Deadline to Object to Sale Transaction other than Cure Objections and Adequate Assurance Objections |
| **10:00 a.m. (prevailing Eastern Time) on September 11, 2019** | Sale Hearing |
| **Not later than ten days after entry of a Court order approving the Sale or Sales** | Sale Closing |

- **Bid Deadline**: The following parties must receive a Bid in writing, on or before 5:00 p.m. (prevailing Eastern Time) on August 30, 2019, or such other date as may be agreed to by the Debtors: (i) the Debtors, their counsel, and their chief restructuring officer, (ii) counsel to the Prepetition Term Loan Agent, and (iii) counsel to the Committee.

- **Auction Qualification Process**: As set forth in further detail in the Bidding Procedures, a Qualified Bidder must, among other requirements, (a) deliver financial statements demonstrating the financial capability of the bidder to consummate the sale; (b) propose a purchase price for the Bellefontaine Facility, and clearly state which assets the Qualified Bidder is agreeing to purchase, including any assumption of liabilities, provided that any Bid must equal or exceed either (x) the sum of the Purchase Price plus the Bid Protections plus $50,000 or (y) such other combination of cash, assumed liabilities and/or excluded assets as the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent, may determine to exceed the value to the Debtors' estates from the Stalking Horse APA by at least $50,000, after taking into consideration the Bid Protections; (c) provide a good faith deposit in the amount of five percent of the Purchase Price; (d) provide an executed non-contingent sale agreement on the same or better terms as those contained in the Stalking Horse APA filed with the Court, marked to show changes from the Stalking Horse APA; (e) fully disclose the identity of each entity that will be bidding for the Bellefontaine Facility or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), participating in, or benefitting from (including through license or similar arrangement with respect to the assets to be acquired in connection with such bid) such bid, and the complete terms of any such sponsorship, participation, financing, or benefit; (f) identify with particularity the executory contracts and unexpired leases to be assumed and assigned; and (g) state that it constitutes a good faith, bona fide offer and that the Qualified Bidder intends to consummate the proposed transaction if selected as the Successful Bidder or the Backup Bidder.  Bids must remain open offers capable of being accepted until entry of the Sale Order or, in the case of a Backup Bid, until the Successful Bidder closes the Sale Transaction.

DM_US 161244748-3.105320.0013
69768988.1

- **Auction and Sale Procedures**: If the Debtors receive more than one Qualified Bid by the Bid Deadline, the Debtors shall conduct an Auction at 10:00 a.m. (prevailing Eastern Time) on September 6, 2019 at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173, or such other place and time as the Debtors shall notify in writing all Qualified Bidders that have submitted Qualified Bids. If the Debtors do not receive more than one Qualified Bid other than the Stalking Horse Bidder's Bid, the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid.

18.     A prompt sale of the Bellefontaine Facility represents the best option available to maximize value for all stakeholders in these Chapter 11 Cases.  Moreover, it is critical for the Debtors to execute on a sale transaction as expeditiously as possible, as the Debtors are utilizing cash collateral and the proceeds of their debtor in possession financing in order to conduct this sale process. Therefore, time is of the essence.

## III.     The Notice Procedures

19.     Within five (5) business days after entry of an order approving the Bidding Procedures, or as soon practicable thereafter (the "Mailing Date"), in accordance with Bankruptcy Rule 2002(a) and (c), the Debtors (or their agents) shall serve the auction and sale notice (the "Auction and Sale Notice"), substantially in the form attached hereto as **Exhibit E**, by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon: (a) all entities known to have expressed an interest in a transaction with respect to the Bellefontaine Facility during the past nine (9) months; (b) all entities known to have asserted any interest in or upon the Bellefontaine Facility; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Stalking Horse Bidder or Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Committee; (g) counsel to the Prepetition Term Loan Agent, (h) the

DM_US 161244748-3.105320.0013
69768988.1

Internal Revenue Service; (i) the U.S. Department of Justice; (j) the office of the attorney general for the State of Ohio; (k) counsel to the Stalking Horse Bidder; (l) all parties entitled to notice pursuant to Local Rule 2002-1(B); (m) to the extent not already included above, all parties in interest listed on the Debtor's creditor matrix; and (n) other persons reasonably requested by the Stalking Horse Bidder (collectively, the "Notice Parties").

20.    The Auction and Sale Notice shall indicate that copies of the Motion, the Stalking Horse APA, the Bidding Procedures Order, and all other documents filed with the Court can be obtained on the website of the Debtors' claims and noticing agent, BMC Group, Inc., https://www.bmcgroup.com/usc.  The Auction and Sale Notice will also indicate the proposed deadline for objecting to the Sale Transaction and the anticipated date and time of the Sale Hearing, subject to the Court's availability.  In addition, the Auction and Sale Notice shall provide notice that the Debtors will seek to assume and assign certain executory contracts to be identified in accordance with the Assumption and Assignment Procedures (as described further below) at the Sale Hearing.  The Debtors request that such notice be deemed to be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

21.    As soon as reasonably practicable after the conclusion of the Auction, if any, the Debtors shall file on the docket, but not serve, a notice identifying the Successful Bidder and Backup Bidder, substantially in the form attached hereto as **Exhibit F** (the "Post-Auction Notice").

## IV.    The Assumption and Assignment Procedures

22.    At the closing of the Sale Transaction, the Debtors anticipate that they may assume certain executory contracts and unexpired leases designated by the Stalking Horse Bidder (or other Successful Bidder) ("Purchased Contracts") pursuant to section 365(b) of the

Bankruptcy Code and assign such Purchased Contracts to the Stalking Horse Bidder (or other Successful Bidder).  The Debtors accordingly are seeking approval of proposed procedures to govern the assumption and assignment of all Purchased Contracts (the "<u>Assumption and Assignment Procedures</u>").  Because the Assumption and Assignment Procedures are set forth in detail in the attached Bidding Procedures Order, they are not restated herein.   Generally speaking, however, the Assumption and Assignment Procedures: (a) outline the process by which the Debtors will serve notice, in substantially the form attached hereto as **<u>Exhibit G</u>** (the "<u>Assumption and Assignment Notice</u>"), to all counterparties to the Purchased Contracts regarding the proposed assumption and assignment and related cure amounts, if any; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of Purchased Contracts.

<u>**BASIS FOR RELIEF**</u>

I.     **Approval of the Proposed Sale Transaction is Appropriate Under Section 363 of the Bankruptcy Code**

23.     The Sale Transaction should be approved as a sound exercise of the Debtors' business judgment.  Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ."  11 U.S.C. § 363(b)(1).  A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).  Once a court determines that a valid business justification exists for a sale outside of the ordinary course of business, the court must determine whether (a) adequate and reasonable notice of the sale was given to interested

parties, (b) the sale will produce a fair and reasonable price for the property, and (c) the parties have acted in good faith. *See In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).   As described below, the proposed Sale Transaction meets each of these requirements.

      A.    The Sale Transaction Represents a Sound Exercise
            of the Debtors' Business Judgment

24.    Here, a strong business justification exists for the Sale Transaction.  As described above and in the Sale Declaration, a sale of the Bellefontaine Facility represents the best opportunity for the Debtors to maximize value for the benefit of their stakeholders.  The Stalking Horse Bidder is an arms'-length third party purchaser.  The Sale Transaction is a reasonable exercise of the Debtors' business judgment and is in the best interests of all of the Debtors' stakeholders.

      B.    The Bidding Procedures are Fair and Designed to
            Maximize the Value Received For the Bellefontaine Facility

25.    The Debtors believe that the Bidding Procedures satisfy each of the remaining requirements for approval of a sale under section 363 of the Bankruptcy Code by (a) providing sufficient notice of each element of the proposed sale process, (b) facilitating a value-maximizing sale, and (c) ensuring an unbiased and good faith sale process.  The detailed Bidding Procedures outlined above and set forth in Exhibit 1 to the Bidding Procedures Order provide notice designed to fully inform all parties with a stake in the sale process regarding the portions of the sale process most relevant to their interests.  For example, the Bidding Procedures ensure that any entities asserting an interest in the Bellefontaine Facility and parties to the Purchased Contracts will receive notice of the proposed Sale Transaction, the procedures for objecting to

DM_US 161244748-3.105320.0013
69768988.1

the Sale Transaction, and the proposed assumption and assignment of their respective contracts or leases.    Similarly, the Bidding Procedures outline all material aspects of the potential purchaser notification, bid qualification, due diligence, bid submission, bid selection, and auction process, including the timing for each.    Thus, the Bidding Procedures provide assurance to each entity potentially interested in purchasing the Bellefontaine Facility that their respective rights will be protected and the Sale Transaction process will be fair and reasonable.

26.    Further, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select, in their reasonable business judgment, the highest and best offer for the Bellefontaine Facility.    Moreover, the Bidding Procedures provide the Debtors with the flexibility to modify the Bidding Procedures, if necessary, to maximize value for the Debtors' estates.    Accordingly, the Debtors believe the Court should approve the Bidding Procedures.

C.    <u>The Break-Up Fee and Expense Reimbursement for the Stalking Horse Bidder are Necessary to Preserve the Value of the Debtors' Estates</u>

27.    The Debtors believe that granting the Bid Protections to the Stalking Horse Bidder will ensure the Debtors' ability to maximize the realizable value of the Bellefontaine Facility for the benefit of the Debtors' estates, their creditors, and other parties in interest.    The Bidding Procedures and the Bid Protections were a material inducement to, and express condition of, the willingness of the Stalking Horse Bidder to submit its bid through execution of the Stalking Horse APA that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.    The Stalking Horse Bidder conditioned its willingness to serve as a stalking horse bidder on the inclusion of these provisions in the Stalking Horse APA.    As set forth in the Sale Declaration, the Purchase Price for the Bellefontaine Facility is $7,395,000.    Based on the Purchase Price, the proposed Breakup Fee is

an amount totaling $270,000, which is equal to approximately 3.6% of the Purchase Price, and the proposed Expense Reimbursement is $100,000, or approximately 1.4% of the Purchase Price.

28.     The United States Court of Appeals for the Third Circuit has held that break-up fees and expense reimbursements must meet the standards applicable to the allowance of administrative expenses under section 503(b) of the Bankruptcy Code.  *See In re Reliant Energy Channelview LP,* 594 F.3d 200, 206 (3d Cir. 2010) (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527 (3d Cir. 1999)).  The Third Circuit has identified at least two instances in which bidding incentives may benefit the estate.  First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if the assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *O'Brien,* 181 F.3d at 537.  Second, "if the availability of break-up fees and expense [reimbursements] were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.*

29.     The Bid Protections should be approved and afforded superpriority administrative expense status under Bankruptcy Code sections 503(b) and 507 because they provide a clear benefit to the Debtors' estates.  By conducting due diligence, participating in negotiations for a potential transaction and entering into the Stalking Horse APA, the Stalking Horse Bidder for the Bellefontaine Facility has established a bid standard, including a price floor, and initiated a sales process that will serve as a catalyst for other bidders to submit higher and better bids with respect to the Bellefontaine Facility.  The Debtors submit that the amount of the Break-Up Fee and the

DM_US 161244748-3.105320.0013
69768988.1

Expense Reimbursement is reasonable and appropriate in light of the size and nature of the transaction and the efforts that have been and will be expended by the Stalking Horse Bidder for the Bellefontaine Facility, including conducting the legal and financial diligence necessary to negotiate and enter into the Stalking Horse APA, and will serve as the baseline for other bids for the Bellefontaine Facility.

30.    Moreover, the Debtors believe that the execution of the Stalking Horse APA by the Stalking Horse Bidder provides an incentive for others that may have had interest in the Bellefontaine Facility, but did not take efforts to negotiate definitive documents or submit competitive bids, to consider expending the time and effort to do so now.  To the extent that the Stalking Horse APA entices other potentially interested purchasers to participate in the bidding and auction process, the Break-Up Fee will provide a material benefit to the Debtors' estates in the form of an increased sale price.  On the other hand, in the event that others are not encouraged by the Stalking Horse Bid to undertake additional efforts and participate in the Auction, the Break-Up Fee will not be paid and, thus, should not affect the value received by the Debtors for the Bellefontaine Facility.  Accordingly, the Debtors submit that it is appropriate to enter into the Stalking Horse APA containing the Bid Protections in favor of the Stalking Horse Bidder for the Bellefontaine Facility pursuant to the Bidding Procedures.

31.    Here, the Stalking Horse Bidder for the Bellefontaine Facility has conditioned its willingness to enter into the Stalking Horse APA on the Court's approval of, among other things, the Break-Up Fee and Expense Reimbursement.  The proposed Break-Up Fee and Expense Reimbursement were the result of arm's-length negotiations between representatives of the Debtors and the Stalking Horse Bidder, which is not an insider of the Debtors.  The Debtors submit that the Break-Up Fee and Expense Reimbursement are justified to induce the Stalking

DM_US 161244748-3.105320.0013
69768988.1

Horse Bidder to enter into the Stalking Horse APA and to adequately compensate it for the risks it is taking.  The proposed transaction with the Stalking Horse Bidder ensures that the Debtors will have at least one substantial offer for the Bellefontaine Facility.

32.    If approved by the Court, the Debtors would be required to pay the Stalking Horse Bidder a Break-Up Fee totaling $270,000 (which is equal to approximately 3.6% of the Purchase Price) and $100,000 in Expense Reimbursement (which is equal to approximately 1.4% of the Purchase Price) in the event that the Break-Up Fee and the Expense Reimbursement are payable under the terms of the Stalking Horse APA.  The Bid Protections fall well within the range of bid protections typically approved by bankruptcy courts in the Third Circuit.  *See, e.g.*, *In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Feb. 27, 2009) (approving $650,000 break-up fee and up to $400,000 expense reimbursement in connection with $17.65 million sale, or 5.9% of the total purchase price); *In re Tallygenicom, L.P.*, Case No. 09-10266 (CSS) (Bankr. Del. Feb. 19, 2009) (approving $750,000 break-up fee and up to $750,000 expense reimbursement in connection with $36.6 million sale, or approximately 4.1% of the purchase price); *In re Fluid Routing Solutions Intermediate Holding Corp.*, Case No. 09-10384 (CSS) (Bankr. D. Del. Feb. 19, 2009) (court approved expense reimbursement of up to $750,000 in connection with an $11 million sale, or up to 6.8% of the purchase price).  Therefore, the Debtors respectfully request that the Bid Protections be approved.

## II.    The Proposed Sale Satisfies the Requirements of Section 363(f)
of the Bankruptcy Code for a Sale Free and Clear of Interests

33.    The Sale Transaction also meets the requirements to be a sale free and clear of Interests.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

DM_US 161244748-3.105320.0013
69768988.1

1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2)      such entity consents;

3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)      such interest is in bona fide dispute; or

5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34.    A sale that meets the requirements for a sale free and clear of interests pursuant to section 363(f) of the Bankruptcy Code also bars claimants from asserting successor liability against the successful purchaser.  *See, e.g., In re Trans World Airlines, Inc.,* 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re NE Opco, Inc.,* 513 B.R. 871, 876 (Bankr. D. Del. 2014); *In re Ormet Corp.,* No. 13-10334 (MFW), 2014 WL 3542133, at *3 (Bankr. D. Del. July 17, 2014); *Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.),* 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

35.    The Debtors submit that the Sale Transaction will satisfy the requirements of section 363(f) of the Bankruptcy Code.  The Debtors will provide all parties asserting claims against the Bellefontaine Facility, including, but not limited to, all creditors and interest holders of the Debtors, with notice of, and an opportunity to object to, the Sale Transaction.  Absent objection, each such party will be deemed to have consented to the Sale Transaction.  *See, e.g.,*

*FutureSource LLC v. Reuters, Ltd.,* 312 F.3d 281 (7th Cir. 2002) (failure to object may constitute consent, if there was adequate notice); *In re Christ Hosp.,* No. CIV.A. 14-472 ES, 2014 WL 4613316, at *14 (D.N.J. Sept. 12, 2014) ("Silence by affected claim holders may constitute consent for purposes of section 363(f)(2)").  In addition, the Debtors believe that certain of the parties asserting claims against the Bellefontaine Facility could be compelled to accept a monetary satisfaction of such interests.  Accordingly, approval of the sale of the Bellefontaine Facility free and clear of all interests is warranted.

### III.    A Successful Bidder[5] Should Be Afforded the Protections of Sections 363(m) and 363(n) of the Bankruptcy Code

36.    Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.),* 992 F.2d 7, 8 (1st Cir. 1993).

37.    As required by section 363(m) of the Bankruptcy Code, the Bidding Procedures have been proposed in good faith and provide for both the Debtors and the potential purchaser to act in good faith in negotiating the terms of the Sale Transaction and the assignment of the Purchased Contracts related thereto.  Moreover, in the Edgecomb Declaration, the Debtors have presented evidence that the terms of the Sale Transaction were negotiated at arm's length, with both parties represented by their own counsel.  Accordingly, the Debtors request that the Sale Order include a provision concluding that the Successful Bidder is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtors believe that

---

[5] The Debtors' references throughout this Motion to a "Successful Bidder" include the Stalking Horse Bidder, who is deemed to have submitted a Qualified Bid, or any other entity that is a Successful Bidder following the Auction, if any.

DM_US 161244748-3.105320.0013
69768988.1

providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors and the closing of the same will occur promptly.

38.     Moreover, neither the Debtors nor the Stalking Horse Bidder have engaged in any conduct that would cause or permit the Stalking Horse APA to be avoided under section 363(n) of the Bankruptcy Code.  If, following the Auction, the Stalking Horse is not the Successful Bidder, the Debtors will have negotiated an alternative asset purchase agreement with the Successful Bidder in good faith and at arms'-length.  The Bidding Procedures are designed to prevent the Debtors or the Successful Bidder from engaging in any conduct that would cause or permit the Stalking Horse APA or the Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.

39.     Accordingly, the Debtors request that the Court make a finding at the Sale Hearing that the Stalking Horse Bidder (or other Successful Bidder) (a) is purchasing the Bellefontaine Facility in good faith, (b) is entitled to the full protections of section 363(m) of the Bankruptcy Code, and (c) has not entered into an agreement with other potential bidders or otherwise engaged in conduct that violates section 363(n) of the Bankruptcy Code.

IV.    **Assumption and Assignment of the Purchased Contracts**
       **Should be Authorized**

40.     Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Further, section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance . . . is provided . . . ."  11 U.S.C. § 365(f)(2).  Assumption and assignment of the Purchased Contracts in connection with the Sale Transaction is appropriate.

22

A.   Assumption of the Purchased Contracts Contracts is a Reasonable
     Exercise of the Debtors' Business Judgment

41.   Assumption or rejection of a contract is a matter of the debtor's business judgment. *See Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982), *aff'd sub nom., N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *In re Physiotherapy Holdings, Inc.,* 506 B.R. 619, 622 (Bankr. D. Del. 2014) (citing *In re Federal Mogul Global, Inc.,* 293 B.R. 124, 126 (D. Del. 2003)). A debtor's decision in this regard is "entitled to great deference from the Court." *See In re Armstrong World Indus.,* 348 B.R. 136, 162 (Bankr. D. Del. 2006). In order to satisfy the business judgment test, a debtor must only show that assumption or rejection of an executory contract will benefit the estate. *See Bildisco,* 682 F.2d at 79; *see also In re HQ Global Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

42.   To facilitate the Sale Transaction and to maximize the value received for the Bellefontaine Facility, the Debtors request approval under section 365 of the Bankruptcy Code of their assumption and assignment of the Purchased Contracts to the Successful Bidder. Certain of the Debtors' executory contracts and unexpired leases may be necessary for the Successful Bidder's continued operation of the Bellefontaine Facility.

43.   The Debtors further request that the Sale Order provide that the Purchased Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder, notwithstanding any provisions in the Purchased Contracts, including those described in sections 365(b)(2), 365(f)(1), and 365(f)(3) of the Bankruptcy Code that prohibit such assignment.

23

44.     The Debtors also request that the Sale Order provide that to the extent any provision in any Purchased Contract assumed and assigned (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment (including, without limitation, any "change of control" provision), or (b) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of the Chapter 11 Cases, (ii) the insolvency or financial condition of the Debtors at any time before the closing of the Chapter 11 Cases, (iii) the Debtors' assumption and assignment of such Purchased Contract, or (iv) the consummation of the Sale Transaction, then such provisions shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify, terminate or declare a breach or default under such Purchased Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Purchased Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  The Debtors request that all such provisions be deemed to constitute unenforceable anti-assignment provisions and are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

   B.  <u>Any Defaults Under the Purchased Contracts Will be<br>Cured and Evidence of Adequate Assurance of Future<br>Performance by the Successful Bidder Will be Provided</u>

45.     Once an executory contract or unexpired lease is assumed, the trustee or debtor in possession may generally elect to assign such contract, so long as it cures any defaults and provides adequate assurance of future performance.  *See* 11 U.S.C. § 365(f)(2)(B) (a debtor may

DM_US 161244748-3.105320.0013
69768988.1

assign an executory contract or unexpired lease of nonresidential property if "adequate assurance of future performance by the assignee of such contract or lease is provided . . . ."). The requirements to show "adequate assurance of future performance" will depend on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001); *In re Decora Indus.*, No. 00-4459 (JJF), 2002 WL 32332749, at *8 (D. Del. May 20, 2002) ("[A]dequate assurance falls short of an absolute guaranty of payment."). Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtors has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

46.    The Debtors contemplate that the Successful Bidder will be able to provide adequate assurance of future performance in connection with any Purchased Contracts because such Successful Bidder must submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the Sale Transaction. The Debtors will present facts at the Sale Hearing to show the financial credibility, willingness, and ability of the Successful Bidder to perform under the Purchased Contracts. The Sale Hearing thus will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Purchased Contracts, as required under section 365(f)(2)(B) of the Bankruptcy Code.

DM_US 161244748-3.105320.0013
69768988.1

47.     Moreover, as set forth above, the Debtors have proposed to file a list of the Purchased Contracts and the cure amounts that the Debtors believes are due under each such Purchased Contract.  The Debtors will serve an Assumption and Assignment Notice on all counterparties to Purchased Contracts and provide them with an opportunity to be heard.  In the absence of an objection by a non-Debtor party to a Purchased Contract, the counterparty to the Purchased Contract will receive the specified cure amount, if any, at the closing of the Sale Transaction with funds paid by the Successful Bidder, which will be required under the terms of any asset purchase agreement entered into between the Debtors and the Successful Bidder.

48.     Accordingly, the Debtors submit that implementation of the Assumption and Assignment Procedures regarding assumption and assignment of the Purchased Contracts is appropriate in these cases.  The Court, therefore, will have a sufficient basis to authorize the Debtors to assume and assign the Purchased Contracts under the Stalking Horse APA or any alternative asset purchase agreement with the Successful Bidder.

## WAIVER OF BANKRUPTCY RULE 6004(H) AND 6006(D); AUTOMATIC STAY

49.     To implement the foregoing immediately, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and the assumption and assignment of the Purchased Contracts under Bankruptcy Rule 6006(d). Here, a waiver of the stay is appropriate because the Sale Transaction was extensively marketed and notice of the Sale Transaction was and will be adequately provided to all parties-in-interest. Likewise, the non-Debtor parties to the Purchased Contracts will be provided with adequate notice of, and opportunity to object to, the assumption and assignment of the Purchased Contracts.

## NOTICE

50.    Notice of this Motion shall be provided to (a) all entities known to have expressed an interest in a transaction with respect to the Bellefontaine Facility during the past nine (9) months; (b) all entities known to have asserted any interest in or upon the Bellefontaine Facility; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Stalking Horse Bidder or Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Committee; (g) counsel to the Prepetition Term Loan Agent, (h) the Internal Revenue Service; (i) the U.S. Department of Justice; (j) the office of the attorney general for the State of Ohio; (k) counsel to the Stalking Horse Bidder; (l) all parties entitled to notice pursuant to Local Rule 2002-1(B); (m) to the extent not already included above, all parties in interest listed on the Debtor's creditor matrix; and (n) other persons reasonably requested by the Stalking Horse Bidder.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

51.    No prior motion for the relief requested herein has been made to this or any other Court.

DM_US 161244748-3.105320.0013
69768988.1

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed Bidding Procedures Order and the Sale Order; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 25, 2019
        Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Brenna A. Dolphin (Del. Bar No. 5604)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
Email: cward@polsinelli.com
           bdolphin@polsinelli.com

-and-

**McDERMOTT WILL & EMERY LLP**
Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
Email: twwalsh@mwe.com
           rorloff@mwe.com
           dazman@mwe.com

*Counsel to the Debtors and*
*Debtors in Possession*

DM_US 161244748-3.105320.0013
69768988.1