**EXHIBIT A**

<u>Bidding Procedures Order</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | Case No. 19-11299 (LSS) (Jointly Administered) |
| Debtors. | **Re: Docket No. ___** |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING
TO THE SALE OF THE BELLEFONTAINE FACILITY, INCLUDING APPROVING A
BREAK-UP FEE AND EXPENSE REIMBURSEMENT,
(B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS,
(C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO,
(D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE,
AND (E) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (the "Debtors") for the entry of an order (this "Bidding Procedures

Order"): (a) approving the proposed bidding procedures attached as **Exhibit 1** to this Bidding

Procedures Order (the "Bidding Procedures"), by which the Debtors will solicit and select the

highest or otherwise best offer for the sale (the "Sale") of the Bellefontaine Facility; (b)

establishing procedures for the assumption and assignment of executory contracts and unexpired

leases, including notice of proposed cure amounts (the "Assumption and Assignment

Procedures"); (c) approving the form and manner of notice with respect to certain procedures,

protections, and agreements described herein and attached hereto; (d) approving the Debtors'

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion, the Bidding Procedures, or the Stalking Horse APA, as applicable.

selection of E Brothers Ltd. ("Stalking Horse Bidder") as the stalking horse bidder, the Bid Protections (as defined below) for the Stalking Horse Bidder, and that certain Agreement of Purchase and Sale (the "Stalking Horse APA"), attached as **Exhibit D** to the Motion; (e) scheduling a final hearing (the "Sale Hearing") to approve the Sale; and (f) granting related relief, and upon the Debtors' further request that, at the Sale Hearing, this Court enter an order (a "Sale Order"), a proposed form of which is annexed to the Motion as **Exhibit C**, (x) authorizing the sale of the Bellefontaine Facility free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") to the fullest extent allowable under section 363(f) of the Bankruptcy Code, except as expressly set forth in the Sale Order, with any such Interests to attach to the proceeds thereof with the same validity, extent and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Sale; (y) authorizing the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code; and (z) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish

DM_US 161412328-1.105320.0013
69769001.1

just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Rules 2002-1, 6004-1, and 9006-1of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

D.      Notice of the Motion, the hearing on the proposed Bidding Procedures, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to: (a) all entities known to have expressed an interest in a transaction

DM_US 161412328-1.105320.0013
69769001.1

with respect to the Bellefontaine Facility during the past nine (9) months; (b) all entities known to have asserted any interest in or upon the Bellefontaine Facility; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Stalking Horse Bidder or Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Committee; (g) counsel to the Prepetition Term Loan Agent; (h) the Internal Revenue Service; (i) the U.S. Department of Justice; (j) the offices of the attorneys general for the State of Ohio; (k) counsel to the Stalking Horse Bidder; (l) all parties entitled to notice pursuant to Local Rule 2002-1(B); (m) to the extent not already included above, all parties in interest listed on the Debtors' creditor matrix; and (n) other persons reasonably requested by the Stalking Horse Bidder (collectively, the "Notice Parties").  Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.    The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (a) approval of the Bidding Procedures; (b) approval of the selection of the Stalking Horse Bidder; (c) approval of the Assumption and Assignment Procedures; (d) approval of the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto; (e) the scheduling of a date for the Sale Hearing; and (f) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

DM_US 161412328-1.105320.0013
69769001.1

F.      Entry into the Stalking Horse APA with the Stalking Horse Bidder is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.  The Bidding Procedures and the Stalking Horse APA provide the Debtors with the opportunity to sell the Bellefontaine Facility in order to preserve and realize its optimal value.

G.      The Bidding Procedures, in the form attached hereto as **Exhibit 1**, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.  The Bid Protections being granted to the Stalking Horse Bidder: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507 of the Bankruptcy Code and in accordance with the Stalking Horse APA; (b) are commensurate to the benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (c) are reasonable and appropriate, including in light of the size and nature of the Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the Sale is subject to higher or better offers; and (d) were necessary for the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse APA.

H.      The Debtors have demonstrated a reasonable business justification for the payment of the Bid Protections under the circumstances and as set forth in the Stalking Horse APA.  The Bidding Procedures and the Bid Protections were a material inducement to, and express condition of, the willingness of the Stalking Horse Bidder to submit its bid through execution of the Stalking Horse APA that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.  Unless it is assured that

5

the Bid Protections will be available, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse APA (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated in the Bidding Procedures). The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Bellefontaine Facility will be realized.

I.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.   The Bidding Procedures and the Stalking Horse APA were negotiated by the Debtors, the Stalking Horse Bidder and each of their respective counsel and advisors at arms' length and in "good faith" within the meaning of Bankruptcy Code section 363(m).

J.      The Assumption and Assignment Notice, substantially in the form attached to the Motion as **Exhibit G** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the applicable Purchased Contracts in connection with the sale of the Bellefontaine Facility and the related cure costs, and no other or further notice is required.   The Motion, this Bidding Procedures Order, and the Assumption and Assignment Procedures set forth herein are reasonably calculated to provide counterparties to any Purchased Contracts with proper notice of the potential assumption and assignment of their Purchased Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

DM_US 161412328-1.105320.0013
69769001.1

K.    The Auction and Sale Notice, substantially in the form attached to the Motion as **Exhibit E**, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Bellefontaine Facility, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets to be sold; (v) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as may be set forth in the Sale Order) to the fullest extent allowable under section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (vi) notice of the proposed assumption and assignment of Purchased Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder(s) arising from the Auction, if any), and no other or further notice of the Sale shall be required.

L.    The Post-Auction Notice, substantially in the form attached to the Motion as **Exhibit F** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s) and Backup Bidder, and no other or further notice is required.

M.    The Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

DM_US 161412328-1.105320.0013
69769001.1

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is granted as provided herein.[3]

2.       All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court or otherwise sustained by the Court, are overruled.

## I.    Timeline for the Sale

3.       The Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| | |
|---|---|
| **Within five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to file Assumption and Assignment Notice |
| **5:00 p.m. (prevailing Eastern Time) on the date that is fourteen days after filing of the Assumption and Assignment Notice** | Deadline to file Cure Objections and Adequate Assurance Objections |
| **5:00 p.m. (prevailing Eastern Time) on August 30, 2019** | Bid Deadline |
| **10:00 a.m. (prevailing Eastern Time) on September 6, 2019** | Auction (if necessary), to be held at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 |
| **4:00 p.m. (prevailing Eastern Time) on September 9, 2019** | Deadline to Object to Sale Transaction other than Cure Objections and Adequate Assurance Objections |
| **10:00 a.m. (prevailing Eastern Time) on September 11, 2019** | Sale Hearing |

---

[3] Notwithstanding anything to the contrary herein, the consummation of the Sale is subject to entry of the Sale Order.

| | |
|---|---|
| **Not later than ten days after entry of a Court order approving the Sale or Sales** | Sale Closing |

4.      For the avoidance of doubt, the Debtors reserve the right, and are authorized, after consultation with the Prepetition Term Loan Agent and the Committee, to modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures.

**II.      The Bidding Procedures**

5.      The Bidding Procedures are approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

6.      The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be 5:00 p.m. (prevailing Eastern Time) on August 30, 2019. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

7.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse APA is deemed a Qualified Bid in all

respects. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder and no Auction shall take place.

8. The Debtors are authorized to conduct and preside over the Auction in accordance with the Bidding Procedures. The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on September 6, 2019 at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 (or at any other time and location as the Debtors may hereafter designate on proper notice). The Debtors will provide notice to the Prepetition Term Loan Agent, the Committee, the Stalking Horse Bidder, and all other Qualified Bidders if the Auction date, time, or location is changed. The Auction will be conducted openly and all creditors will be permitted to attend.

9. Any Qualified Bidder with a valid and perfected lien on the Bellefontaine Facility shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of such secured creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to, and in accordance with, Bankruptcy Code section 363(k) or other applicable law. Each person or entity holding a valid, properly perfected security interest in assets with respect to which there are no other more senior security interests for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such assets by Credit Bid. The failure of the Committee to object to a bid put forth by a secured creditor or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection, or amount of the secured creditors' alleged liens, security interests, and claims or (b) release the secured creditor from any causes of action that can be brought by or on behalf of the Debtors' estates.

10.    Further, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any and all such overbids to include the full amount of the Bid Protections in lieu of cash for purposes of evaluating the overbid equal to cash in the same amount.

### III.    Stalking Horse Bidder, Bid Protections, and Stalking Horse APA

11.    The Debtors are authorized to enter into the Stalking Horse APA, subject to higher or otherwise better offers at the Auction.  The Bid Protections contained in the Stalking Horse APA are hereby approved, and shall survive termination of the Stalking Horse APA, if any, by the Debtors.  The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Bid Protections upon the Debtors' consummation of an Alternative Transaction with a purchaser other than the Stalking Horse Bidder from the consideration received from the consummation of such Alternative Transaction, as set forth in the Stalking Horse APA.  The Bid Protections: (a) shall be allowed administrative expense claims under sections 503(b) and 507 of the Bankruptcy Code (which claims are non-recourse to the Debtors other than as to the consideration (if any) received from the consummation of an Alternative Transaction) and, if triggered, (b) shall be payable in accordance with the terms of the Stalking Horse APA without further order of this Court.  Any Sale Order approving a sale to a Successful Bidder other than the Stalking Horse Bidder shall provide for the payment at the closing of an Alternative Transaction of all Bid Protections to which the Stalking Horse Bidder is entitled under the Stalking Horse APA, as modified by this Order.

12.    Notwithstanding anything to the contrary in the Stalking Horse APA, in the event that the Stalking Horse Bidder is selected as the Backup Bidder at the conclusion of the Auction, the amount and terms of the Stalking Horse Bidder's Backup Bid shall be those of its highest and best bid at the Auction.

DM_US 161412328-1.105320.0013
69769001.1

**IV.     Notice Procedures**

13.     The Auction and Sale Notice is approved.

*A.     Notice of Sale, Auction, and Sale Hearing*

14.     Within three business days after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors shall serve the Auction and Sale Notice by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon the Notice Parties.  The Auction and Sale Notice shall indicate that copies of the Motion, the Stalking Horse APA, the Bidding Procedures Order, and all other documents filed with the Court can be obtained on the website of the Debtors' claims and noticing agent, BMC Group, Inc., https://www.bmcgroup.com/usc (the "Case Website").

15.     Service of the Auction and Sale Notice as described above shall be sufficient and proper notice of the Sale with respect to known interested parties.

*B.     Notice of Successful Bidder(s).*

16.     As soon as reasonably practicable after the conclusion of the Auction, but no later than 5:00 p.m. (prevailing Eastern Time) the next business day, the Debtors shall file on the docket, but not serve, the Post-Auction Notice, which shall identify the Successful Bidder(s) and Backup Bidder.  The form of the Post-Auction Notice substantially in the form attached to the Motion as **Exhibit F** is approved.

**V.     Assumption and Assignment Procedures**

17.     The Assumption and Assignment Procedures, which are set forth below, regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, following the Auction, if any) pursuant to section

12

365(f) of the Bankruptcy Code and in accordance with the Stalking Horse APA are hereby approved to the extent set forth herein.

18.     Within five business days after entry of this Order (any such date, the "Assumption and Assignment Service Date"), the Debtors shall file with the Court and post on the Case Website the Notice of Assumption and Assignment and, included therewith, a list (the "Purchased Contracts List") that specifies: (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "Purchased Contracts"), including the name of each non-Debtor counterparty to such Purchased Contract (each individually, and "Purchased Contract Counterparty" and together, the "Purchased Contract Counterparties"); and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Purchased Contract (the "Cure Costs").  The Debtors shall serve, via first class mail, the Notice of Assumption and Assignment, in substantially the form attached to the Motion as **Exhibit G**, on all Purchased Contract Counterparties.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

19.     A Purchased Contract Counterparty listed on the Notice of Assumption and Assignment may file an objection (a "Contract Objection") to the proposed assumption and assignment of the applicable Purchased Contract, the proposed Cure Costs, if any, and the ability of the Stalking Horse Bidder to provide adequate assurance of future performance.  All Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due, including each and every asserted default in the applicable contract or lease (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and

DM_US 161412328-1.105320.0013
69769001.1

served on the following parties by no later than 5:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the Assumption and Assignment Service Date (the "Contract Objection Deadline"): (i) **Debtors' Chief Restructuring Officer**. Winter Harbor, LLC, 265 Franklin Street, 10th Floor, Boston, Massachusetts 02210 (Attn: Dalton Edgecomb; dedgecomb@winterharborco.com); (ii) **Debtors' Counsel**. McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 (Attn: Darren Azman and Riley T. Orloff; dazman@mwe.com, rorloff@mwe.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher Ward; cward@polsinelli.com); (iii) **Stalking Horse Bidder's Counsel**. Thompson, Dunlap & Heydinger, Ltd., 1111 Rush Ave. P.O. Box 68, Bellefontaine, Ohio 43311 (Attn: Joshua M. Stolly; jstolly@tdhlaw.com); (iv) **Counsel to the Official Committee of Unsecured Creditors**. Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020 (Attn: Jeffrey Cohen, Eric Chafetz and Gabriel L. Olivera; jcohen@lowenstein.com, echafetz@lowenstein.com and golivera@lowenstein.com), and Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Eric J. Monzo and Brya M. Keilson; emonzo@morrisjames.com, bkeilson@morrisjames.com); (v) **Counsel to the Prepetition Term Loan Agent.** Olshan Frome Wolosky LLP, 1325 Avenue of the Americas, New York, New York 10019 (Attn: Adam H. Friedman and Jonathan T. Koevary; afriedman@olshanlaw.com, jkoevary@olshanlaw.com) and Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Regina Stango Kelbon and Victoria A. Guilfoyle; kelbon@blankrome.com, guilfoyle@blankrome.com); and (vi) **the Office of the United States Trustee for the District of Delaware**. 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 Attn: David L. Buchbinder; David.L.Buchbinder@usdoj.gov) (collectively, the "Objection Recipients"). Objections to the

DM_US 161412328-1.105320.0013
69769001.1

ability of a Successful Bidder(s) other than the Stalking Horse Bidder to provide adequate assurance of future performance (an "Adequate Assurance Objection") shall be raised by 4:00 p.m. (prevailing Eastern Time) on September 9, 2019 (the "Adequate Assurance Deadline").

20.    If a Purchased Contract Counterparty files a Contract Objection in a manner that is consistent with the requirements set forth above, and the parties, in consultation with the Committee and the Prepetition Term Loan Agent, are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, in consultation with the Successful Bidder(s), the Committee, and the Prepetition Term Loan Agent, or such other date determined by this Court. In the event that a dispute regarding the Cure Costs with respect to a Purchased Contract has not been resolved as of the Closing Date, the Parties will nonetheless remain obligated to consummate the Stalking Horse APA or Alternative Transaction, as applicable.

21.    If the Purchased Contract Counterparty does not file and serve a Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing alternative Cure Costs in connection with any properly filed and served Contract Objection, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any Purchased Contract or any other document, and (b) the Purchased Contract Counterparty will be deemed to have consented to the assumption and assignment of the Purchased Contract and the Cure Costs, if any, and will be forever barred from asserting any claim related to such Purchased Contract for any default occurring or continuing prior to the Contract Objection Deadline against the Debtors or the Stalking Horse Bidder (or other Successful Bidder following

the Auction, if any), or the property of any of them.  A Purchased Contract Counterparty shall not be barred from seeking additional amounts on account of any defaults occurring between the date of service of the Notice of Assumption and Assignment and the date of assumption and assignment of the Purchased Contract.

22.     The inclusion of a Purchased Contract on the Notice of Assumption and Assignment will not: (a) obligate the Debtors to assume any Purchased Contract listed thereon or the Stalking Horse Bidder or any other Successful Bidder(s) to take assignment of such Purchased Contract; or (b) constitute any admission or agreement of the Debtors that such Purchased Contract is an executory contract.  Only those Purchased Contracts that are included on a schedule of assumed and assigned contracts attached to the Stalking Horse APA, or the final asset purchase agreement with the Successful Bidder(s) at Closing, if any (including amendments or modifications to such schedules in accordance with such Stalking Horse APA or asset purchase agreement, as applicable) will be assumed and assigned to the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any).

**VI.     Sale Hearing.**

23.     A Sale Hearing to (a) approve the sale of the Bellefontaine Facility to the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any) and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at 10:00 a.m. (prevailing Eastern Time) on September 11, 2019, and may be adjourned or rescheduled without further notice other than by announcement in open court on the date scheduled for the Sale Hearing or by the filing of a notice on the Court's docket, which shall be posted on the Case Website.  At the Sale Hearing, the Debtors will seek Court approval of the Successful Bid and the Backup Bid, if any.  The Sale Hearing shall be a hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing, subject to the

16

Debtors' Fiduciary Out and as may be otherwise required by the Court.  In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale, the Debtors may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder(s), and the Debtors shall be authorized, but not required, to consummate the transaction with the Backup Bidder, upon notice to the Committee and the Prepetition Term Loan Agent, without further order of the Bankruptcy Court.

24.     Any and all objections, if any, to the Sale to the Stalking Horse Bidder and entry of the Sale Order (a "<u>Sale Objection</u>") must be filed and served on the Objection Recipients by 4:00 p.m. (prevailing Eastern Time) on September 9, 2019 (the "<u>Sale Objection Deadline</u>").  Any party failing to timely file a Sale Objection will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the Bellefontaine Facility free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code and the Stalking Horse APA or other definitive agreement for the Sale.

## VII.    Miscellaneous.

25.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order.

26.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

27.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Bidding Procedures Order that relate to the Bid Protections shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors, and assigns.

28.     The Stalking Horse Bidder shall have standing to appear and be heard in connection with all proceedings regarding the sale of the Bellefontaine Facility in the Chapter 11 Cases, including the conduct of the Auction and the interpretation of the Bidding Procedures.

29.     The rights of the Committee and parties in interest to object to the Court's approval of any sale are preserved. The entry of this Bidding Procedures Order and the approval of the Bidding Procedures shall not be deemed a waiver of such rights.

30.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

31.     In the event of any conflict or inconsistency between the terms of this Bidding Procedures Order and the Stalking Horse APA, this Bidding Procedures Order shall govern and control for all purposes.

32.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, the Stalking Horse APA, and the implementation of this Bidding Procedures Order.

DM_US 161412328-1.105320.0013
69769001.1

**EXHIBIT 1 TO BIDDING PROCEDURES ORDER**

<u>Bidding Procedures</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | Case No. 19-11299 (LSS) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES FOR
## THE SALE OF THE BELLEFONTAINE FACILITY

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 19-11299 (LSS).

On August __, 2019, the Bankruptcy Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale of the Bellefontaine Facility, (B) Authorizing the Debtors to Enter into the Stalking Horse APA, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"), by which the Bankruptcy Court approved the below procedures (the "Bidding Procedures") relating to the sale of the Debtors' entire right, title and interest in and to their distribution center and sales office located at 1 Hunter Place, Bellefontaine, Ohio, including the Debtors' owned furniture, fixtures and equipment located at such facility (collectively, the "Bellefontaine Facility"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction or auctions (the "Auction") for the sale (the "Sale") of the Bellefontaine Facility.

Pursuant to the Bidding Procedures Order, the Bankruptcy Court approved E Brothers Ltd. (the "Stalking Horse Bidder") as the stalking horse purchaser for the Bellefontaine Facility pursuant to that certain Agreement of Purchase and Sale dated as of July 24, 2019 (the "Stalking Horse APA"), including the Bid Protections contained therein.

## 1.      Submissions to the Debtors.

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Bid Notice Parties"):

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

1

a.    **Debtors**. c/o SportCo Holdings, Inc., 267 Columbia Avenue, Chapin, South Carolina 29036 (Attn: Bradley P. Johnson; bradjohnson@ellett.com).

b.    **Debtors' Counsel**. McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 (Attn: Darren Azman and Riley T. Orloff; dazman@mwe.com, rorloff@mwe.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher Ward; cward@polsinelli.com).

c.    **Debtors' Chief Restructuring Officer**. Winter Harbor, LLC, 265 Franklin Street, 10th Floor, Boston, Massachusetts 02210 (Attn: Dalton Edgecomb; dedgecomb@winterharborco.com).

d.    **Debtors' Real Estate Broker**. CBRE, Inc., 200 Civic Center Dr., 14th Floor, Columbus, Ohio 43215 (Attn: Rick Trott and Shelby Gumpf: Richard.Trott@cbre.com, Shelby.Gumpf@cbre.com).

e.    **Counsel to the Official Committee of Unsecured Creditors**. Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020 (Attn: Jeffrey Cohen, Eric Chafetz and Gabriel L. Olivera; jcohen@lowenstein.com, echafetz@lowenstein.com and golivera@lowenstein.com), and Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Eric J. Monzo and Brya M. Keilson; emonzo@morrisjames.com, bkeilson@morrisjames.com).

f.    **Counsel to the Prepetition Term Loan Agent.** Olshan Frome Wolosky LLP, 1325 Avenue of the Americas, New York, New York 10019 (Attn: Adam H. Friedman and Jonathan T. Koevary; afriedman@olshanlaw.com, jkoevary@olshanlaw.com) and Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Regina Stango Kelbon and Victoria A. Guilfoyle; kelbon@blankrome.com, guilfoyle@blankrome.com).

g.    **The Office of the United States Trustee for the District of Delaware**. 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: David L. Buchbinder; David.L.Buchbinder@usdoj.gov).

2.    **Potential Bidders.**

The Debtors, in consultation with their financial advisor and real estate broker, have identified, and may in the future identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a Sale Transaction. To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "Potential Bidder") must deliver or have previously delivered an executed confidentiality agreement on terms acceptable to the Debtors, in consultation with the Committee, and the Prepetition Term Loan Agent (a "Confidentiality Agreement").

2

3.    **Qualified Bidders.**

a.    If requested by the Debtors after consultation with counsel to the Committee and the Prepetition Term Loan Agent, a Potential Bidder that wishes to become a Qualified Bidder must deliver (i) the most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Bellefontaine Facility, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee and the Prepetition Term Loan Agent, and a written commitment acceptable to the Debtors and their advisors, in consultation with the Committee and the Prepetition Term Loan Agent, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale) and (ii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.  Financials and any other information provided pursuant to this provision will not be shared with the Stalking Horse Bidder or with any other Potential Bidder.

A "Qualified Bidder" is a Potential Bidder: (i) whose Financials (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Bellefontaine Facility, the Financials of its equity holder(s)), or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee and the Prepetition Term Loan Agent, as applicable, demonstrate the financial capability to consummate the Sale, as determined in the Debtors' reasonable business judgment (in consultation the Committee and the Prepetition Term Loan Agent); and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below).

On or before the date that is three (3) business days after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to counsel to the Committee and the Prepetition Term Loan Agent.  The Stalking Horse Bidder shall be deemed a Qualified Bidder that has submitted a Qualified Bid at all times.

b.    For the avoidance of doubt, two or more Potential Bidders may submit a Bid for the Bellefontaine Facility, provided that such Bid(s), when taken as a whole (collectively, a "Joint Bid"), is determined by the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent, to constitute a Qualified Bid; provided, however, that any Joint Bid must comply with section 363(n) of the Bankruptcy Code and Potential Bidders must first seek the Debtors' permission before they contact each other.

c.    If any Potential Bidder is determined by the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit (as defined below) and all

DM_US 161419330-4.105320.0013
69769011.1

accumulated interest thereon on or within three (3) business days after the Bid Deadline.

d.    Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may, in consultation with the Committee and the Prepetition Term Loan Agent, discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.  Bids must remain open offers capable of being accepted until entry of the Sale Order or, in the case of a Backup Bid, until the Backup Bidder closes the Sale Transaction.

e.    Any disputes related to these Bidding Procedures shall be resolved by the Bankruptcy Court.

**4.    Due Diligence.**

a.    **Diligence Provided to Potential Bidders.**

Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information.  **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.**  The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, access, and inspection rights, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall make all written due diligence provided to any Potential Bidder available to all other Potential Bidders.

The Debtors shall not furnish any confidential information relating to the Bellefontaine Facility or the Sale to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement.  The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access and inspection; *provided* that the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) may decline to provide such information or access to Potential Bidders who, at such time and in the Debtors' reasonable business judgment (in consultation with the Committee and the Prepetition Term Loan Agent) have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold from Potential Bidders any diligence materials that the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine (in consultation with the Committee and the Prepetition Term Loan Agent) is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) as a Potential Bidder.

**All due diligence requests must be directed to:**

**CBRE, Inc., 200 Civic Center Dr., 14th Floor, Columbus, Ohio 43215 (Attn: Rick Trott and Shelby Gumpf: Richard.Trott@cbre.com, Shelby.Gumpf@cbre.com).**

b.      **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence requested by the Debtors or their advisors (in consultation with the Committee and the Prepetition Term Loan Agent) regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence may be a basis for the Debtors to determine (in consultation with the Committee and the Prepetition Term Loan Agent) that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors, the Committee and the Prepetition Term Loan Agent, and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential bidder information, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing, the Debtors and the Debtors' advisors may disclose confidential bidder information: (a) with the prior written consent of such bidder and the Debtors; (b) to the counsel and financial advisors to the Committee, (c) to the counsel to the Prepetition Term Loan Agent, and (d) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**5.      Bid Requirements.**

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment (after consultation with the Committee and the Prepetition Term Loan Agent) shall constitute a "Qualified Bid." For the avoidance of doubt, notwithstanding the following, the Stalking Horse APA will be deemed a

Qualified Bid for all purposes and at all times.  The form of a Bid must include a proposed asset purchase agreement (a "Bid APA") duly executed by the Potential Bidder, a redline comparing the Bid APA to the Stalking Horse APA, and a schedule of executory contracts and unexpired leases proposed to be assumed by the Debtors and assigned to the Qualified Bidder (the "Proposed Assumed Contracts").

a. **Assets.**  Each Bid must provide for the purchase of the Bellefontaine Facility.

b. **Purchase Price.**  Each Bid must clearly set forth the purchase price to be paid for the Bellefontaine Facility (the "Purchase Price"); provided such Purchase Price must equal or exceed either (a) the sum of $7,395,000.00 plus the Bid Protections plus $50,000 or (b) such other combination of cash, assumed liabilities and/or excluded assets as the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent, may determine to exceed the value to the Debtors' estates from the Stalking Horse APA by at least $50,000, after taking into consideration the Bid Protections ((a) or (b), a "Minimum Bid").

c. **Deposit.**  With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds a cash deposit in the amount of five percent of the Purchase Price, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

d. **Same or Better Terms**.  Each Bid for the Bellefontaine Facility must be on terms that are not more burdensome to the Debtors than the terms of the Stalking Horse APA as determined by the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent).  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of Proposed Assumed Contracts and a copy of the proposed purchase agreement.  The Bid must also include the Stalking Horse APA clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) that the Qualified Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "Qualified Bid Documents").

e. **Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on (i) obtaining financing, (ii) shareholder, board of directors, or other internal approval, or (iii) the outcome or completion of a due diligence review by the Potential Bidder.  Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties or (ii) the satisfaction at the closing of the Sale of specified conditions, which shall not be more burdensome to the Debtors, as determined by the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent), than those set forth in the Stalking Horse APA.

6

f.    **Identity**. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid. Each Bid must also disclose any past or present connections or agreements with the Debtors, the Stalking Horse Bidder, any other Potential Bidder or Qualified Bidder and its affiliates, and/or any officer or director of the foregoing (including any current officer or director of the Debtors).

g.    **Demonstrated Financial Capacity**. A Qualified Bidder must have, in the Debtors' reasonable business judgment (in consultation with the Committee and the Prepetition Term Loan Agent), the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid. Each Bid must include financial information that will be provided to the non-Debtor counterparties to Proposed Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

h.    **Committed Financing.** To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent), which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent).

i.    **Binding and Irrevocable.** A Qualified Bid must include a signed writing stating that the Qualified Bid is irrevocable until the later of (i) two (2) business days after the closing of a Sale to another Qualified Bidder, and (ii) thirty (30) days after the conclusion of the Sale Hearing (as defined below).

j.    **Expenses; Disclaimer of Fees.** Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is

7

agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

k.   **Authorization.**  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors in consultation with the Committee and the Prepetition Term Loan Agent) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

l.   **As-Is, Where-Is.**  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Bellefontaine Facility prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Bellefontaine Facility in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Bellefontaine Facility or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

m.   **Adherence to Bidding Procedures.**  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures.  Each Bid must expressly state that the Potential Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bid.

n.   **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

o.   **Bid Deadline**.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 5:00 p.m. (prevailing Eastern Time) on August 30, 2019 (the "Bid Deadline") by the Bid Notice Parties.

The Debtors reserve the right (in consultation with the Committee and the Prepetition Term Loan Agent) to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

**6.   Right to Credit Bid.**

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on the Bellefontaine Facility (each, a "Secured Creditor"), shall have the right to credit bid all or a portion of the value of such Secured Creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to, and in accordance with, Bankruptcy Code section 363(k) or other applicable law (each such bid, a "Credit Bid").  A Credit Bid may be applied only to reduce the cash consideration with respect to

the Bellefontaine Facility to the extent that the Secured Creditor holds a valid, properly perfected security interest with respect to which there are no other more senior security interests. Each person or entity holding a valid, properly perfected security interest in assets with respect to which there are no other more senior security interests for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such assets by Credit Bid.

In the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any and all such overbids to include the full amount of the Bid Protections in lieu of cash and for purposes of evaluating the overbid equal to cash in the same amount.

Credit Bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Bidder's entitlement to the Bid Protections granted under the Bidding Procedures Order or any subsequent Bankruptcy Court order.

**7.     Auction.**

If the Debtors receive a Qualified Bid other than the Stalking Horse APA for the Bellefontaine Facility, the Debtors will conduct an Auction to determine (in consultation with the Committee and the Prepetition Term Loan Agent) the Successful Bidder.  The Debtors shall notify the Stalking Horse Bidder and other Qualified Bidders that have submitted a Qualified Bid if one or more Qualified Bids are received.  If the Debtors do not receive a Qualified Bid other than the Stalking Horse APA, the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid.

On the date that is one (1) business day after the Bid Deadline or such other time as is reasonably practicable, but not later than noon Eastern Time on the day before the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' sole business judgment (the "Baseline Bid"), after consultation with the Committee and the Prepetition Term Loan Agent, and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, which may include, among other things: (a) the number, type, and nature of any changes to the Stalking Horse APA, if any, requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").  Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any subsequent bids at the Auction.  At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

9

The Auction, if necessary, will be conducted at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 on September 6, 2019 at 10:00 a.m. (prevailing Eastern Time), or at such other time and location as designated by the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent. The Debtors will provide notice to the Bid Notice Parties, the Stalking Horse Bidder and all other Qualified Bidders if the Auction date, time, or location is changed. The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

a.    **The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

The Auction will be conducted openly and all creditors will be permitted to attend. The Qualified Bidders and the Stalking Horse Bidder may appear at the Auction in person or through duly authorized representatives.

b.    **Terms of Overbids.**

"Overbid" means any bid made at the Auction by a Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i)    **Minimum Overbid Increment.** The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the $50,000 (a "Minimum Overbid Increment"). The Debtors shall have discretion, in consultation with the Committee and the Prepetition Term Loan Agent, to accept initial and subsequent overbids in lesser amounts.

Additional consideration in excess of the amount set forth in the respective Baseline Bid must include: (1) cash, (2) assumption of liabilities, or (3) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to section 363(k) of the Bankruptcy Code and any other restrictions set forth herein.

(ii)    **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their reasonable business judgment, after consultation with the Committee and the Prepetition Term Loan Agent, extend from

DM_US 161419330-4.105320.0013
69769011.1

time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

    (iii)    **Overbid Alterations.**  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment (in consultation with the Committee and the Prepetition Term Loan Agent), but shall otherwise comply with the terms of these Bidding Procedures.  Any Overbid must comply with the conditions for a Qualified Bid.

    (iv)    **Announcing Highest Bid.**  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid for the Bellefontaine Facility, or in subsequent rounds, the Overbid previously designated by the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) as the prevailing highest or otherwise best Bid for the Bellefontaine Facility (the "Prevailing Highest Bid").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors, in consultation with the Committee and the Prepetition Term Loan Agent, as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid.

    c.    **Consideration of Overbids.**

The Debtors reserve the right, in their discretion (in consultation with the Committee and the Prepetition Term Loan Agent) to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment (in consultation with the Committee and the Prepetition Term Loan Agent), may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) to provide the Debtors with an opportunity to consider (in consultation with the Committee and the Prepetition Term Loan Agent) how to value each Overbid.  The full amount of the Bid Protections shall be included as value of any bid made by the Stalking Horse Bidder in each round of bidding at the Auction, including for purposes of comparing the value of a Qualified Bidder's Overbid to the bid of the Stalking Horse Bidder in any round of bidding.

    d.    **Closing the Auction.**

    (i)    The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their reasonable business judgment (in consultation with the Committee and the Prepetition Term

DM_US 161419330-4.105320.0013
69769011.1

Loan Agent), is the highest or otherwise best Bid. Such Bid or Joint Bid, as applicable, shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "<u>Successful Bidder</u>," at which point the Auction will be closed. The Debtors shall notify the Qualified Bidders of the Successful Bid within one business day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

(ii)     Subject to the Fiduciary Out in Section 13 herein and as may be otherwise required by the Court, the Debtors (in consultation with the Committee and the Prepetition Term Loan Agent) shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall not constitute a Qualified Bid.

(iii)    As soon as reasonably practicable after closing the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice, substantially in the form attached as Exhibit F to the Motion, which shall identify the Successful Bidder and Backup Bidder.

e.     **No Collusion; Good-Faith Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder. All Potential Bidders and all Qualified Bidders will immediately disclose to the Debtors, the United States Trustee, the Committee and the Prepetition Term Loan Agent any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

**8.     Backup Bidder.**

a.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction with respect to the Bellefontaine Facility, as determined by the Debtors in their discretion and in consultation with the Committee and the Prepetition Term Loan Agent (the "<u>Backup Bid</u>"), shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b.     The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The

Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder and shall thereafter be returned within five (5) business days.

c.     If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select (in consultation with the Committee and the Prepetition Term Loan Agent) the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party (other than the Committee and the Prepetition Term Loan Agent). In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## 9.     Reservation of Rights.

Without prejudice to the rights of the Stalking Horse Bidder under the terms the Stalking Horse APA, the Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment (in consultation with the Committee and the Prepetition Term Loan Agent) in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Bellefontaine Facility, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any and all bids or Bids.

## 10.     Sale Hearing.

A hearing to consider approval of the Sale of the Bellefontaine Facility to the Successful Bidder (or to approve a Stalking Horse APA if no Auction is held) (the "Sale Hearing") is currently scheduled to take place at 10:00 a.m. (prevailing Eastern Time) on September 11, 2019, before the Honorable Laurie Selber Silverstein, at the Bankruptcy Court, 824 Market Street, 6th Floor, Courtroom No. 2, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

DM_US 161419330-4.105320.0013
69769011.1

**11.    Bid Protections.**

To provide an incentive and to compensate the Stalking Horse Bidder for the Bellefontaine Facility for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse APA with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidder for the Bellefontaine Facility, and the Court authorized under the conditions and in the amount set forth in the Bidding Procedures Order, the following "Bid Protections":

      a.      a break-up fee in the amount of $270,000 (the "<u>Breakup Fee</u>"); and

      b.      reasonable, actual, and documented costs and expenses incurred by the Stalking Horse Bidder for the Bellefontaine Facility related to its due diligence, and pursuing, negotiating, and documenting the transaction(s) contemplated by the Stalking Horse APA, in an amount not to exceed $100,000 (the "<u>Expense Reimbursement</u>" and, together with the Breakup Fee, the "<u>Bid Protections</u>"), payable pursuant to the terms of the Stalking Horse APA and the Bidding Procedures Order in the event that the Stalking Horse APA is terminated due to the Debtors' consummation of an Alternative Transaction and/or under such other conditions specified in the Stalking Horse APA.

The Debtors have agreed that their obligations to pay the Bid Protections shall survive termination of the Stalking Horse APA, and to the extent owed by the Debtors, be allowed administrative expense claims under sections 503(b) and 507 of the Bankruptcy Code and shall be payable under the terms of the Stalking Horse APA and the Bidding Procedures Order.

The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, including the right to object to the conduct of the Auction and interpretation of these Bidding Procedures.

**12.    Return of Deposit.**

The Deposit of the Successful Bidder shall be applied to the Purchase Price at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their reasonable business judgment and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction.

If the Successful Bidder fails to consummate the Sale because of a breach by the Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors (and subject to the Stalking Horse APA, as to the Stalking Horse Bidder), and the Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court, in  which case the Backup Bidder's Deposit shall be applied to the Purchase Price.

DM_US 161419330-4.105320.0013
69769011.1

13.     **Fiduciary Out.**

Nothing in these Bidding Procedures shall require the Debtors' boards of directors or members, as applicable, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' boards of directors or members determine, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law; *provided* that in the event of any such action, all rights and remedies of the Stalking Horse Bidder in these Bidding Procedures, the Stalking Horse APA, and/or applicable law shall be reserved and preserved.

In the event of any conflict or inconsistency between the terms of these Bidding Procedures and the Stalking Horse APA, these Bidding Procedures shall govern and control for all purposes.

DM_US 161419330-4.105320.0013
69769011.1