## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-11299 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 8, 51, & 160** |

## FINAL ORDER (I) APPROVING THE DEBTORS' POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS CONTINUED USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of SportCo Holdings, Inc. and certain of its wholly-owned direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an order (this "Final Order")[2] pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court the District of Delaware (the "Local Rules"), *inter alia:*

(i)     authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $25,000,000 (the "DIP Facility," and all amounts extended under the DIP Facility, the "DIP Loans") pursuant to the terms and conditions of that certain

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

[2] Unless otherwise expressly indicated, capitalized terms shall have the meanings set forth in this Final Order.

*Debtor-In-Possession Loan and Security Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Agreement"), by and among the Debtors, Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and the other lenders party thereto (the "DIP Lenders" and collectively with the DIP Agent and the other "Secured Parties" as defined in the DIP Agreement, the "DIP Secured Parties"), substantially in the form of Exhibit A, attached to the Motion;

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements and documents related thereto (collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     authorizing the use of proceeds of the DIP Facility extended to the Debtors as expressly provided in the DIP Documents and consistent with the Approved Budget and to allow a "creeping roll up" of Prepetition ABL Obligations outstanding under the Prepetition ABL Agreement pursuant to the procedures set forth below;

(iv)     granting the DIP Facility and all obligations owing thereunder and under the DIP Documents or otherwise to the DIP Secured Parties (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases;

(v)     granting to the DIP Agent, for the benefit of the DIP Secured Parties under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral, including, without limitation, all property constituting "Cash Collateral" as

defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(vi)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, continuing commitment fees, unused line fees, closing fees, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vii)    authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents, and providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral; and

(viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The initial hearing on the Motion having been held by this Court on June 11, 2019 (the "Interim Hearing"), and the Court having entered on June 13, 2019, the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 51] (the "Interim Order"); and the Court having entered on July 16, 2019 the *Bridge Order Amending the Court's Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and*

*Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 160] (the "<u>First Bridge Order</u>"); and the Court having entered on July 29, 2019 the *Second Bridge Order Amending the Court's Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 209] (the "<u>Second Bridge Order</u>," together with the First Bridge Order, the "<u>Bridge Orders</u>" and, together with the Interim Order and this Final Order, the "<u>DIP Financing and Cash Collateral Orders</u>"); and the final hearing on the Motion having been held by this Court on August 6, 2019 (the "<u>Final Hearing</u>" and, together with the Interim Hearing, the "<u>Hearings</u>");

The Court having considered the Motion, the exhibits attached thereto, the *Declaration of Bradley P. Johnson in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 9], the DIP Documents, and the evidence submitted and argument made at the Hearings; and notice of the Hearings having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Hearings having been held and concluded; and all objections, including the *Objection of the Official Committee of Unsecured Creditors to the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No.

130] and the *Supplemental Objection of the Official Committee of Unsecured Creditors to the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 146] (together the "Committee Objections", to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**.  On June 10, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Delaware (the "Court").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee Formation**.  On June 17, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 58].

E.      **Notice**.  Notice of the Hearings and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of thirty largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition Agents, (iv) counsel to the Committee and (v) all other parties entitled to notice under the Local Rules.

F.      **Debtors' Stipulations.**  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 40 hereof, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)     *Prepetition ABL Facility*.  Pursuant to that certain Third Amended and Restated Loan and Security Agreement dated as of September 28, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, certain mortgages on real property owned by the Debtors, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents"), among Bonitz Brothers, Inc., Ellett Brothers, LLC, Evans Sports, Inc., Jerry's Sports, Inc., Outdoor Sports Headquarters, Inc., and Simmons Gun Specialties, Inc. (collectively, the "Prepetition Borrowers"), Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "Prepetition ABL Agent"), and the lenders party thereto (the "Prepetition ABL Lenders," and collectively with the Prepetition Agent and the other "Secured Parties" as defined in the Prepetition ABL Agreement, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Prepetition Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

(ii)     *Prepetition ABL Obligations.*  The Prepetition ABL Facility provided the Prepetition Borrowers with, among other things, a Revolver Commitment (as defined in the Prepetition ABL Agreement).  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $23,056,470.93 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product, indemnification obligations, guarantee obligations, and other charges, amounts and

costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

(iii)    *Prepetition ABL Liens and Prepetition ABL Collateral.*  As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition Borrowers granted to the Prepetition ABL Agent (for the benefit of the Prepetition ABL Parties) a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all their Property (as defined in the Prepetition ABL Agreement) of such Prepetition Borrowers whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Collateral").

(iv)    *Prepetition Term Loan Facility.* Pursuant to that certain Second Lien Loan and Security Agreement dated as of September 28, 2012 (as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and the Intercreditor Agreement  (the "Prepetition Term Loan Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents and the Intercreditor Agreement, the "Prepetition Documents") by and among the Prepetition Borrowers, Prospect Capital Corporation, as administrative agent and collateral agent (in such capacity, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively

with the Prepetition Term Loan Agent and the other "Secured Parties" as defined in the Prepetition Term Loan Agreement, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, individually or collectively, the "Prepetition Secured Parties") Prepetition Term Loan Lenders provided term loans to the Prepetition Borrowers (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)     *Prepetition Term Obligations.*     As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility, together with accrued and unpaid interest as of the Petition Date, was not less than $249,800,405.00 (collectively, together with any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Borrowers' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)    *Prepetition Term Loan Liens and Prepetition Term Collateral.* As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Borrowers granted to the Prepetition Term Loan Agent (for the benefit of the Prepetition Term Loan Parties) a second priority security interest in and continuing lien on (the "Prepetition Term

Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all their real and personal Property (as defined in the Prepetition Term Loan Agreement, including, without limitation, the Debtors' distribution facility in Bellefontaine, Ohio) of such Prepetition Borrowers whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Term Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral").

(vii)   *Priority of Prepetition Liens; Intercreditor Agreement.*   The Prepetition Agents entered into that certain Intercreditor and Subordination Agreement (the "Intercreditor Agreement") dated as of September 28, 2012 to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors.  Each of the Prepetition Borrowers under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(viii)   *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*   The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, nonavoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or permitted by the Prepetition ABL Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition

ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the aggregate value of the Prepetition ABL Collateral exceeds the amount of the Prepetition ABL Obligations and the claims of the Prepetition ABL Parties arising under, or secured by, the Prepetition ABL Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ix)     *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected second priority liens and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably

equivalent value; (b) the Prepetition Term Loan Liens are subject only to (1) the Prepetition ABL Liens, and (2) liens senior by operation of law or permitted by the Prepetition Term Loan Documents (solely to the extent any such liens were valid, properly perfected, nonavoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "Prepetition Term Loan Permitted Prior Liens," and, together with the Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens"); (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations

constitute allowed, secured claims within the meaning of section 502 and 506 of the Bankruptcy Code.

(x)     *No Control.* None of the DIP Secured Parties or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Financing and Cash Collateral Orders, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, and/or the Prepetition Documents.

(xi)     *Cash Collateral.*  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(xii)     *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors have been and are in default of their obligations under the Prepetition Documents and that as of the Petition Date interest was accruing on the Prepetition Secured Obligations at the default rate.

G.     **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.

H.     **[Reserved]**

I.     **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the DIP Financing and Cash Collateral Orders or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of the DIP Financing and Cash Collateral Orders or the DIP Documents, unless expressly set forth herein or therein.  The DIP Agreement is a "replacement" of the Senior Loan Agreement as that term is used in the Intercreditor Agreement, and any repayment of the Prepetition ABL Obligations pursuant to the DIP Financing and Cash Collateral Orders shall not be deemed to constitute a "discharge" of Senior Liabilities as that term is used in the Intercreditor Agreement.

J.     **Findings Regarding Postpetition Financing**

(i)     *Request for Postpetition Financing.*  The Debtors sought authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Chapter 11 Cases and fund their operations.  At the Final Hearing, the Debtors sought final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to this Final Order.

(ii)     *Priming of the Prepetition Liens.*  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, enabled the Debtors to obtain the DIP Facility and

to operate their businesses to the benefit of their estates and creditors. The Prepetition Term Loan Parties are deemed to have consented to the priming pursuant to Section 4.5 of the Intercreditor Agreement. The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in the DIP Financing and Cash Collateral Orders pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing.*    Based on the record made at the Hearings regarding the Debtors' need for the DIP Facility from the Petition Date and through the date all DIP Obligations are indefeasibly repaid in full in cash ("Paid in Full") (such date, the "DIP Financing Period Termination Date" and such period, the "DIP Financing Period"), including the testimony of the Debtors' CRO, Dalton Edgecomb, and for the reasons given by the Court on the record at the Hearings, the Court finds it appropriate to approve, on a final basis, the Debtors' obtainment and payoff of credit on an final basis pursuant to the DIP Facility in order to, among other things, enable the orderly liquidation of their operations and to administer and preserve the value of their estates.

(iv)    *No Credit Available on More Favorable Terms.*    Given their financial condition, financing arrangements, and capital structure during the DIP Financing Period, the Debtors were unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors were unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors were also unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien;

or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis was not otherwise available without granting the DIP Agent, for the benefit of the DIP Secured Parties: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets, (2) superpriority claims and liens, and (3) the other protections set forth in the **DIP Financing and Cash Collateral Orders.**

    (v)  *Use of proceeds of the DIP Facility.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Secured Parties, the Prepetition ABL Parties and the **Prepetition Term Loan Parties** require, and the Debtors have agreed, that proceeds of the DIP Facility were to be used, in each case in a manner consistent with the terms and conditions of the **DIP Financing and Cash Collateral Orders** and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraph 19 hereof, the "Approved Budget" and, such variances, the "Permitted Variances")[4] solely to pay: (a) expenses and fees required to be paid to the office of the clerk of the Court or the office of the U.S. Trustee; (b) professional fees subject to any limitations in the DIP Financing and Cash Collateral Orders and the Approved Budget; (c) any of the DIP Obligations; (d) the Prepetition ABL Obligations to the extent authorized by the Court; (e) with respect to the Prepetition Term Obligation, fees in accordance with the Approved Budget; and (f) other expenses that are incurred during the pendency of the Chapter 11 Cases and described in the Approved Budget not to exceed the Permitted Variances or that are authorized by the Court in orders entered in the

---

[4] A copy of the Approved Budget is attached hereto as **Exhibit 1**.  This Approved Budget has been revised since entry of the Bridge Orders.

Chapter 11 Cases that are acceptable to the DIP Agent and, following the conclusion of the DIP Financing Period, the Prepetition Term Loan Parties, but excluding payment of any Prepetition Term Loan Obligations.

(vi)    *Application of Proceeds of Collateral.*    As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral during the DIP Financing Period, the Debtors, the DIP Secured Parties, and the Prepetition ABL Parties agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral and Cash Collateral in accordance with the Interim Order and Bridge Orders, as applicable.    From and after the DIP Financing Period Termination Date, the Debtors and the Prepetition Term Loan Parties agreed that as of and commencing on the date of the Final Hearing, the Debtors shall apply the proceeds of DIP Collateral and Cash Collateral in accordance with this Final Order and the Approved Budget.

(vii)    *Roll-up Obligations.*    Cash Collateral has been used to effectuate a "creeping roll up" of Prepetition ABL Obligations outstanding under the Prepetition ABL Agreement pursuant to the procedures set forth in Paragraph 11 of the Interim Order.

(viii)    *Need for Continued Use of Cash Collateral.*    From and after the DIP Financing Period Termination Date, the Debtors have a continuing need to use the Cash Collateral of the Prepetition Term Loan Parties in order to, among other things, administer and preserve the value of their estates.    The ability of the Debtors to pay their employees and related taxes, and otherwise to finance their operations requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates and all parties in interest.    The Debtors do not have sufficient available sources of working capital to operate

their businesses or maintain their properties to liquidate their assets without the continued authorized use of Cash Collateral.

K.    **Adequate Protection.**   Until all Prepetition Term Loan Obligations are Paid in Full, the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of such Prepetition Term Loan Parties' respective interests in the Prepetition Collateral as set forth in the DIP Financing and Cash Collateral Orders.

L.    **Sections 506(c) and 552(b)**.   No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Cash Collateral, or the Prepetition Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent and Prepetition Term Loan Agent and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, provided that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral or the Cash Collateral.

M.    **Good Faith of the Prepetition Secured Parties**.

(i)    *Willingness to Provide Financing.*   The DIP Lenders indicated a willingness to provide financing to the Debtors subject to: (a) entry of the DIP Financing and Cash Collateral Orders; (b) approval of the terms and conditions of the DIP Facility and the DIP

Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility was essential to the Debtors' estates, that the DIP Lenders were extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to the DIP Financing and Cash Collateral Orders and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)     *Business Judgment and Good Faith.*  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Secured Parties and Prepetition ABL Parties, and the Prepetition Term Loan Parties, with the assistance and counsel of their respective advisors.  Use of Cash Collateral during the DIP Facility Period and thereafter and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties, Prepetition ABL Parties, and the Prepetition Term Loan Lenders and within the meaning of section 364(e) of the Bankruptcy Code, as applicable.

N.     [Reserved]

O.     **Final Hearing**.  The notice of the Final Hearing described in Finding E is sufficient under the circumstances, and no further notice is required in connection with the relief set forth in this Final Order under the circumstances.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      <u>DIP Financing Approved</u>.  The Motion is GRANTED on a final basis, subject to the terms and conditions set forth in the DIP Documents and the DIP Financing and Cash Collateral Orders.  All objections to this Final Order, including the Committee Objections, to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

2.      <u>Authorization of the DIP Facility</u>.  All relief requested in the Motion and granted on an interim basis under the Interim Order with respect to the DIP Facility is hereby granted on a final basis.  Notwithstanding the foregoing, the Debtors are authorized to pay to the DIP Agent, for the benefit of the DIP Lenders, a closing fee in the amount of One Hundred Thousand Dollars ($100,000) (the "<u>Approved Closing Fee</u>").  The DIP Financing Period Termination Date shall be deemed to occur upon the later of (i) entry of this Final Order and (ii) payment of the Closing Fee and any other outstanding fees (including attorneys' fees) owed to the DIP Secured Parties.

3.      [Reserved].

4.      [Reserved].

5.      [Reserved].

6.      [Reserved].

7.      [Reserved].

8.      [Reserved].

9.      [Reserved].

10.     [Reserved].

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.    Following the DIP Financing Period Termination Date and until the date on which the Prepetition Term Loan Obligations are Paid in Full, all Cash Collateral received by the Debtors in excess of the Cash Collateral Reserve[5] shall be turned over to the Prepetition Term Loan Agent on the first business day of each week following entry of this Final Order to be applied against, and thereby reduce, the Prepetition Term Loan Obligations; *provided, however,* that the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget and this Final Order until September 30, 2019 (the "<u>Cash Collateral Termination Date</u>"); *provided further, however* that during the Default Notice Period, the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses critical the administration of the Debtors' estates in accordance with the Approved Budget, and as otherwise agreed by the Prepetition Term Loan Agent in its sole discretion.    Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, and in accordance with the Approved Budget.

12.    <u>Prepetition Term Loan Adequate Protection Liens</u>.    Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition

---

[5] For purposes of this Final Order, the term "<u>Cash Collateral Reserve</u>" shall mean the amount needed to satisfy the remaining disbursements set forth in the Approved Budget to be held by the Debtors in their operating account.

security interests in and liens (collectively, the "Prepetition Term Loan Adequate Protection Liens") upon (a) all of the Debtors' rights in property of the Debtors' estates as of the Petition Date, and all of the Debtors' rights in property acquired postpetition, whether now existing or hereafter acquired or arising, (b) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of Adequate Protection Collateral (defined below), (c) the proceeds of any avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code), (d) the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof, and (e) all property of the Debtors that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, the "Adequate Protection Collateral")[6].  To the extent any unencumbered assets or recovered assets are located, such assets shall constitute Adequate Protection Collateral.

13.     Priority of Adequate Protection Liens.

(a)     The Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to Prepetition Term Loan Permitted Prior Liens. The Prepetition Term Loan Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(b)     Except as provided herein, the Prepetition Term Loan Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.   The Prepetition Term Loan

---

[6]  The term "Adequate Protection Collateral" shall include, without limitation, the "DIP Collateral" as defined in the Interim Order.

Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Term Loan Liens or the Prepetition Term Loan Adequate Protection Liens.

14.     <u>Prepetition Term Loan Adequate Protection Superpriority Claims</u>.   As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties) is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases[7] (the "<u>Prepetition Term Loan Adequate Protection Superpriority Claim</u>").   For all purposes in this Final Order, Diminution in Value shall include, but not be limited to, amounts specifically designated as diminution claims in other orders of this Court.   The Prepetition Term Loan Parties' right to assert that any fees and expenses paid to any Case Professional(s), as well as any other costs and expenses of the administration of these Chapter 11 Cases, should be included as Diminution in Value is expressly preserved and reserved.

15.     <u>Priority of the Prepetition Term Loan Adequate Protection Superpriority Claims</u>. Except as set forth herein, the Prepetition Term Loan Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered

---

[7] "Successor Cases" shall mean any successors to the Debtors or their estates, including, without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing.

23

pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided, however,* that the Prepetition Term Loan Adequate Protection Superpriority Claims shall be subject to the Carve Out in all respects.

16.     <u>Adequate Protection Payments and Protections for Prepetition Term Loan Parties</u>. Subject to the Carve Out in all respects, as further adequate protection (the "<u>Prepetition Adequate Protection Payments</u>"), the Debtors are authorized and directed to provide adequate protection to the applicable Prepetition Term Loan Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of, subject to Paragraph 40 hereof, to the Prepetition Term Loan Parties, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including, without limitation, the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Parties, whether arising prior to or after the Petition Date.

17.     <u>Adequate Protection Reservation</u>.   Subject to the Carve Out in all respects, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Term Loan Parties hereunder is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Term Loan Parties to seek additional relief with respect to the continued use of Cash Collateral or for additional adequate protection.

**Provisions Common to DIP Financing and use of Cash Collateral**

18.    <u>Amendment of the DIP Documents</u>.  Until the DIP Financing Period Termination Date, the DIP Document may be amended as provided under the Interim Order.  From and after the DIP Financing Period Termination Date, the DIP Documents may not be amended, modified, or supplemented by the parties.

19.    <u>Budget Maintenance</u>.  The use of Cash Collateral shall be in accordance with the Approved Budget, subject to the variances set forth in paragraph 20 hereof, depicting on a weekly and line by line basis, (a) projected cash receipts, (b) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), and fees related to asset sales), (c) projected net cash flow, (d) projected inventory receipts and levels, and (e) professional fees.  From and after entry of this Final Order, the Approved Budget shall be in form and substance acceptable to Prepetition Term Loan Agent in its sole discretion.  The budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the Prepetition Term Loan Agent) from time to time (provided that such updated budget shall be in form and substance satisfactory to, and approved by, the Prepetition Term Loan Agent in its sole discretion), and actuals and variances shall be reported on a weekly basis.  No such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved Budget"; *provided*, *however*, that in the event that the Prepetition Term Loan Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior Approved Budget shall continue in effect, with weekly details for any periods after the initial 13-week period to be derived in a manner reasonably satisfactory to the Prepetition Term Loan Agent from the monthly budget prepared by the Debtors (and approved by the Prepetition Term Loan Agent in its sole discretion) for these Chapter 11 Cases, and such disagreement shall give rise to an Event

of Default under this Final Order once the period covered by the prior Approved Budget has terminated.  A copy of any updated Approved Budget shall be filed with the Court and delivered at least two (2) business days prior to its effective date to counsel for the Committee and the U.S. Trustee after (or if) it has been approved by the Prepetition Term Loan Agent.

20.    <u>Budget Compliance</u>.  The Debtors shall not permit unfavorable variance from the Approved Budget exceeding (a) 7.5% for total disbursements and (b) 7.5% with respect to cumulative net cash flow of the Debtors, in each case for the period from the Petition Date through the measurement date at the end of each week.  All variances shall be tested weekly on the Friday of such week, beginning with the two-week period ending on June 21, 2019, followed by the three-week period ending on June 28, 2019, and measured on a rolling four-week basis thereafter.

21.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the Prepetition Term Loan Adequate Protection Liens and Prepetition Term Loan Adequate Protection Superpriority Claims; (b) permit the Debtors to make periodic payments of cash in excess of the Cash Collateral Reserve to the Prepetition Term Loan Agents; (c) perform such acts as the Prepetition Term Loan Agent each may reasonably request to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtors to pay, and the DIP Secured Parties and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order.

22.    <u>Perfection of Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein,

including the Prepetition Term Loan Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Prepetition Term Loan Adequate Protection Liens, or to entitle the Prepetition Term Loan Parties to the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Term Loan Agent is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Term Loan Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the Prepetition Term Loan Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the Prepetition Term Loan Agent all such financing statements, mortgages, notices, and other documents as the Prepetition Term Loan Agent may reasonably request.  The Prepetition Term Loan Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition ABL Agent or the DIP Agent are the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition

Documents or is listed as loss payee, lender's loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the Prepetition Term Loan Agent shall also be deemed to be the secured party under such documents or to be the loss payee, lender's loss payee, mortgagee or additional insured, as applicable.  The Prepetition ABL Agent and/or the DIP Agent shall serve as agents for the Prepetition Term Loan Agent for purposes of perfecting the Prepetition Term Loan Adequate Protection Liens on all Prepetition Collateral, DIP Collateral, and/or Adequate Protection Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23.    [Reserved].

24.    <u>Protections of Rights of Prepetition Term Loan Parties.</u>

(a)    Unless the Prepetition Term Loan Agent shall have provided its prior written consent, or all Prepetition Term Loan Obligations have been Paid in Full, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Adequate Protection Collateral or the Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the Prepetition Term Loan Liens, the Prepetition Term Loan Adequate Protection Liens, and/or the Prepetition Term Loan Adequate Protection Superpriority Claims except as expressly set forth in this Final Order; (ii) the use of Cash Collateral for any purpose other than as permitted in this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition

indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Secured Parties', the Prepetition ABL Parties', or the Prepetition Term Loan Parties' rights under this Final Order, the DIP Documents or the Prepetition Documents with respect any DIP Obligations, Prepetition ABL Obligations, or the Prepetition Term Loan Obligations.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not all DIP Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders) to provide under the provisions of this Final Order; (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives (including third party representatives) of the Prepetition Term Loan Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the Prepetition Term Loan Documents; (iv) permit the Prepetition Term Loan Agent, and its consultants, advisors, and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition,

operations, and assets; and (v) upon reasonable advance notice, permit the Prepetition Term Loan Agent to conduct, at its discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Adequate Protection Collateral and Prepetition Collateral.

(c)     No Debtor shall object to any Prepetition Term Loan Parties credit bidding up to the full amount of the applicable outstanding Prepetition Term Loan Obligations, in each case including any accrued interest and expenses, in any sale of any Adequate Protection Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

25.     Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of this Final Order at any time prior to the Full Payment of all Prepetition Term Loan Obligations, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any Prepetition Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Term Loan Agent to be applied in accordance with this Final Order.

26.     Cash Collection.  From and after the date of the entry of this Final Order, all collections and proceeds of any Prepetition Collateral or services provided by any Debtor and all Cash Collateral, that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, except for the Cash

Collateral Reserve, shall be promptly deposited in the same lock-box and/or deposit accounts as is designated by the Prepetition Term Loan Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the Prepetition Term Loan Agent.  The Debtors shall cooperate and execute all documents necessary for the Prepetition Loan Agent to obtain account control agreements with respect to any account of the Debtors.  All proceeds and other amounts in the Cash Collection Accounts, except for the Cash Collateral Reserve, shall be remitted to the Prepetition Term Loan Agent for application against the Prepetition Term Loan Obligations in accordance with the terms of the Prepetition Term Loan Documents, until all Prepetition Term Loan Obligations are Paid in Full.  Unless otherwise agreed to in writing by the Prepetition Term Loan Agent, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in the *Final Order Authorizing the Debtors to Continue Using Existing Bank Accounts, Business Forms, and Cash Management System* [Docket No. 155] (the "Cash Management Order").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the Prepetition Term Loan Agent.

27.    Maintenance of Prepetition Collateral.  Until the Full Payment of all Prepetition Term Loan Obligations, the Debtors shall: (a) insure the Prepetition Collateral as required under the Prepetition Term Loan Documents; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order that has first been agreed to by the Prepetition Term Loan Agent or as otherwise required by this Final Order.

28.    <u>Disposition of Prepetition Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral other than in the ordinary course of business without the prior written consent of the Prepetition Term Loan Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Term Loan Parties or from any order of this Court), except as otherwise ordered by the Court. To the extent any Prepetition Collateral, DIP Collateral, or Adequate Protection Collateral is sold, the proceeds shall be paid to the Prepetition Term Loan Agent for application to the Prepetition Term Loan Obligations.

29.    [Reserved].

30.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the Prepetition Term Loan Agent in writing and in accordance with the terms of the Prepetition Term Loan Documents and this Final Order, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)    the Debtor's continued use of Cash Collateral after the Cash Collateral Termination Date without the consent of the Prepetition Term Loan Agent;

(b)    the Debtors' failure to (i) comply with the Approved Budget, subject in each case to any Permitted Variances permitted herein, or (ii) perform, in any material respect, any of its obligations under this Final Order, including but not limited to the Debtors' failure to make any payments required under Paragraph 11 hereof;

(c)    the Debtors obtaining credit or incurring indebtedness without the consent of the Prepetition Term Loan Agent that is (i) secured by a security

interest, mortgage or other lien on all or any portion of the Adequate Protection Collateral which is equal or senior to any security interest, mortgage or lien of the Prepetition Term Loan Agent Parties, or (ii) entitled to priority administrative status which is equal to or senior to that granted to the Prepetition Term Loan Parties;

(d) any lien or security interest purported to be created under the Prepetition Term Loan Documents shall cease to be, shall be asserted by the Debtors not to be, or shall otherwise be determined by the Bankruptcy Court not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Term Loan Documents or herein;

(e) dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Cases;

(f) an order shall be entered staying, reversing, vacating, amending, or rescinding any of the terms of the Interim Order or this Final Order without the consent of the Prepetition Term Loan Parties;

(g) the Debtors shall have failed to file a chapter 11 plan acceptable to the Prepetition Term Loan Parties on or before August 12, 2019 (unless extended in writing by the Prepetition Term Loan Agent);

(h) the Debtors shall have failed to confirm a Chapter 11 plan acceptable to the Prepetition Term Loan Parties on or before September 30, 2019 at a

combined hearing for approval of the disclosure statement and confirmation of the Chapter 11 plan;

(i)     the Debtors shall have filed with this Court a Chapter 11 plan or materially modified any previously filed Chapter 11 plan, in each case without the prior written approval of the Prepetition Term Loan Parties;

(j)     the entry of an order or judgment by this Court or any other court:  (i) modifying, limiting, subordinating, or avoiding the priority of the obligations of the Debtors under the Interim Order or this Final Order, the obligations of the Debtors under the Prepetition Term Loan Agreement and the other Prepetition Term Loan Documents, or the perfection, priority, or validity of the Prepetition Term Loan Liens, or the Prepetition Term Loan Adequate Protection Liens; (ii) imposing, surcharging, or assessing against the Prepetition Term Loan Parties' claims, the Prepetition Collateral, the DIP Collateral or the Adequate Protection Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; (iii) impairing the Prepetition Term Loan Agent's right to credit bid; or (iv) authorizing the obtaining of credit or the incurrence of indebtedness that is secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral, the DIP Collateral, or the Adequate Protection Collateral which is equal or senior to any security interest, mortgage, or other lien of the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Parties, or

entitled to administrative expense priority status which is equal or senior to that granted to the Prepetition Term Loan Parties herein;

(k)    any Cash Collateral or the Carve Out is used, whether or not pursuant to Court order, in a manner inconsistent with the Approved Budget or this Final Order; or

(l)    a Challenge (as defined below) is brought by any party.

31.    <u>Rights and Remedies Upon Event of Default</u>.  Upon or at any time after the occurrence of an Event of Default and for so long as such Event of Default shall exist, subject to giving four (4) business days' written notice to Debtors and any other applicable notice parties under the DIP Financing and Cash Collateral Orders (in either event, the "<u>Default Notice Period</u>"), the Prepetition Term Loan Agent may in its discretion (and, upon receipt of written instructions to do so from the Prepetition Term Loan Lenders, shall) exercise from time to time the following rights and remedies in accordance with applicable non bankruptcy law: (i) all of the rights and remedies of a secured party under the UCC or under other applicable law, and all other legal and equitable rights to which the Prepetition Term Loan Agent may be entitled under any of the Prepetition Term Loan Documents, all of which rights and remedies shall be cumulative and shall be in addition to any other rights or remedies contained in the Prepetition Term Loan Agreement or any of the other Prepetition Term Loan Documents, and none of which shall be exclusive; (ii) the right to collect all amounts at any time payable to a Debtor from any account of a person at any time indebted to a Debtor; (iii) the right to take immediate possession of any of the Prepetition Collateral, DIP Collateral, or Adequate Protection Collateral; (iv) the right to sell or otherwise dispose of all or any Prepetition Collateral, DIP Collateral, or Adequate Protection Collateral in its then condition, or after any further manufacturing or processing

thereof, at public or private sale or sales, with such notice as may be required by applicable law, in lots or in bulk, for cash or on credit, all as the Prepetition Term Loan Agent, in its sole discretion, may deem advisable; and (v) appointment of a receiver, to take possession of all or any portion of the Prepetition Collateral, DIP Collateral or Adequate Protection Collateral and to exercise such rights and powers as the court appointing such receiver shall confer upon such receiver. The Debtor's right to use, and the Prepetition Term Loan Parties' consent to the Debtor's use of, Cash Collateral shall cease as of the expiration of the Default Notice Period absent further order of the Court.

32.    <u>Reversal, Modification, Vacatur, or Stay</u>. The Prepetition Term Loan Parties have acted in good faith in connection with this Final Order and are entitled to rely upon the protections granted herein and by section 363(m) and 364(e) of the Bankruptcy Code, as applicable. Based on the findings set forth in this Final Order and the record made during the Hearings, and in accordance with section 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the Prepetition Term Loan Parties are entitled to the protections provided in section 363(m) and 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any extensions of credit previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

33.    <u>Expenses</u>. Subject to paragraph 40 hereof, the Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such

fees and expenses shall not be subject to allowance by the Court.   Professionals for the Prepetition Term Loan Parties shall not be required to comply with the U.S. Trustee fee guidelines, *provided, however*, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide reasonably detailed invoice summaries of its fee and expenses (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Committee contemporaneously with the delivery of such fee and expense statements to the Debtors.   Any objections raised by the Debtors, the U.S. Trustee or the Committee with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court.   Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.   Notwithstanding the foregoing, the Debtors are authorized and directed to pay upon entry of this Final Order all undisputed reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition Term Loan Parties incurred on or prior to such date without the need for any professional engaged by the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice as provided for herein.   No attorney or advisor to the Prepetition Term Loan Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

34.   <u>Indemnification</u>.   The Debtors shall indemnify and hold harmless the DIP Secured Parties in accordance with the terms and conditions of the DIP Agreement.

35.    <u>Proofs of Claim</u>.  The Prepetition Term Loan Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein, including any Prepetition Term Loan Adequate Protection Claim or Prepetition Adequate Protection Term Loan Lien.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of (a) the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the Prepetition Term Loan Parties.

36.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the Prepetition Term Loan Parties under the Prepetition Term Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the Prepetition Term Loan Parties reasonable access to the Debtors' premises and their books and records in accordance with the Prepetition Term Loan Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and the Prepetition Term Loan Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

37.    <u>Carve Out</u>.

38

(a)     Subject to the terms, conditions and limitations contained in this paragraph 37 hereof, but only to the extent and subject to the express exclusions set forth herein, the Prepetition Term Loan Liens, the Prepetition Term Loan Adequate Protection Liens and the Prepetition Term Loan Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "Carve Out"):

(i)     Allowed administrative expenses pursuant to 28 U.S.C. § 1930 for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(ii)     All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Carve Out");

(iii)     All accrued and unpaid fees (other than any "success," "restructuring," "transaction" or similar fees), disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Committee (the "Case Professionals" ), at any time prior to the delivery of the Carve Out Trigger Notice, but solely to the extent the same are in amounts incurred in accordance with the Approved Budget, which estimated professional fees and disbursements shall in no event be more than the amounts set forth in the Approved Budget for such Case Professionals (the aggregate amount of which shall not be increased absent consent of each of the Prepetition Agents), less the amount of any prepetition retainers received by such Case Professionals and not previously returned or applied to fees and expenses; and

(iv)     All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the

extent allowed at any time, in an aggregate amount not to exceed $300,000 (the "<u>Wind-Down</u> <u>Carve Out Amount</u>") less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (iii) above.

(b)    So long as no Carve Out Trigger Notice has been issued by the Prepetition Term Loan Agent, until all Prepetition Term Loan Obligations are Paid in Full, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code but solely to the extent the same are incurred in accordance with the Approved Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base certificate delivered to the Prepetition Term Loan Agent by the Debtors prior to the delivery of the Carve Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount.  A reserve may be kept by the Debtors for accruing Case Professional fees under the Approved Budget, which funds shall constitute Cash Collateral. The Carve Out shall not be deemed increased if actual fees are higher in fact than the Approved Budget.  "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by the Prepetition Term Loan Agent to the Debtors and their counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered at any time by the Prepetition Term Loan Agent (i) at the time all Prepetition Term Loan Obligations are to be Paid in Full or (ii) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice." Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any fees or expenses of the Case Professionals shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar basis.  Any fees

paid from Cash Collateral may be reimbursed to the Prepetition Term Loan Agent from the proceeds of any unencumbered assets.  Any funding of the Carve Out shall be added to and made a part of the Prepetition Term Loan Obligations and secured by the Adequate Protection Collateral and otherwise entitled to the protections granted under this Final Order, the Prepetition Term Loan Documents, the Bankruptcy Code and applicable law.

(c)     Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of the Committee, or of any other person or shall affect the right of the Prepetition Term Loan Agents or the Prepetition Term Loan Parties to object to the allowance and payment of such fees and expenses.  The Prepetition Term Loan Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Term Loan Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)     The above Carve Out for Case Professionals  is a Carve Out cap and the Case Professionals cannot seek any fees or expenses in excess thereof to be paid as any administrative expense claim in connection with confirmation of a Chapter 11 plan.

(e)     The Debtors shall maintain an escrow or segregated account for the payment of allowed fees and expenses (the "Allowed Professional Fees") of Case Professionals (the "Carve Out Reserve Account") which account shall be funded by or on behalf of the Debtors in accordance with the Approved Budget on a weekly basis at the end of the subject week until

the occurrence of the Cash Collateral Termination Date provided the Debtors are in compliance with the Approved Budget. From funds in the Carve Out Reserve Account, the Debtors shall pay the Case Professionals for which a reserve was established in any given month the applicable allowed Case Professional fees and expenses for such month in connection with the Carve Out compensation and reimbursement. To the extent the allowed Case Professional fees and expenses that have accrued from the Petition Date through and including the Cash Collateral Termination Date are less than the amounts funded into the Carve Out Reserve Account, any excess shall be remitted to the Debtor for further disposition in accordance with this Final Order. Funds held in the Carve Out Reserve Account shall be applied to the allowed Case Professional fees and expenses that have been incurred following the Petition Date in accordance with the compensation procedures established in the Chapter 11 Cases with the excess, if any, to be remitted as set forth in the preceding sentence.

(f) Any payment made into the Carve Out Reserve Account or payments of fees and expenses made directly to the Case Professionals shall permanently reduce the Carve Out on a dollar-for-dollar basis; provided further that payment of any amounts of the Carve Out, whether by or on behalf of the Prepetition Term Loan Agent, shall not be deemed to reduce the Prepetition Term Loan Obligations*; provided further,* that the Prepetition Term Loan Agent and Prepetition Term Loan Lenders shall not under any circumstances, be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professional incurred in connection with the Chapter 11 Cases; and *provided further, however*, that notwithstanding anything to the contrary in this Final Order, if the Carve Out is used at any time to pay the Case Professional fees and expenses and if subsequently unencumbered assets or recovered assets become available, then the Prepetition Term Loan Agent shall be reimbursed from such

42

unencumbered or recovered assets or proceeds thereof until the Prepetition Term Loan Obligations are Paid in Full.

38.    <u>Limitations on Use of Cash Collateral and Carve Out</u>.  The Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the Prepetition Term Loan Parties' enforcement or realization upon any of the Prepetition Collateral, DIP Collateral, or Adequate Protection Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of Prepetition Collateral, DIP Collateral or Adequate Protection Collateral without the consent of the Prepetition Term Loan Agent; (c) using or seeking to use any insurance proceeds constituting Prepetition Collateral, DIP Collateral, or Adequate Protection Collateral without the consent of the Prepetition Term Loan Agent; (d) incurring debt without the prior consent of the Prepetition Term Loan Agent, except to the extent permitted under the Prepetition Term Loan Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties under this Final Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral, DIP Collateral and/or Adequate Protection Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Obligations, Adequate Protection Collateral, DIP Collateral, Cash Collateral or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Secured Parties or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Secured Parties, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Secured Parties or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Obligations; provided that the Committee may use up to $50,000 (in the aggregate) in connection with the investigation (including discovery proceedings), but not the initiation or prosecution, of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties.

39.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Prepetition Term Loan Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Approved Budget provided by the Debtors to the Prepetition Term Loan Agent.

40.     Effect of Stipulations on Third Parties.

(a)     *Prepetition ABL Parties.*   The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order with respect to the Prepetition ABL Parties and DIP Secured Parties are and shall be binding on the Debtors, each of the Debtors' estates, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors

in interest and assigns, including, without limitation, the Committee, upon entry of this Final Order.

(b)    *Prepetition Term Loan Secured Parties.*    The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order with respect to the Prepetition Term Loan Parties (collectively, the "Prepetition Term Lien and Claim Matters") are and shall be binding on the Debtors, each of the Debtors' estates, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, the Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge  is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings required under the Bankruptcy Code and Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 40 hereof) challenging the Prepetition Term Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (a) 60 days from the date of formation of a Committee (if appointed), or (b) August 27, 2019 for any other party with requisite standing (the deadline established by clauses (a) and (b), the "Challenge Deadline"), and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the thirtieth (30th) day after the appointment of the chapter 11 trustee or the

conversion of the Case to chapter 7, as applicable to commence a Challenge. Notwithstanding the foregoing the Debtors, for themselves and their estates, and the Committee each hereby (a) forever and irrevocably waive any right to bring a Challenge and agree that the Challenge Deadline is terminated as to each of them; and (b) covenant that in the event any party makes a Challenge, (i) any amounts budgeted to the Committee pursuant to the Budget will terminate on a pro rata basis effective as of the date of any Challenge such that the Committee shall, subject to the Carve-Out, only have the right to such budgeted amount prior to the date of such Challenge; and (ii) the Debtors and the Committee will support resolution of the Challenge such that the settlement would result in a condition consistent with the terms of this Order and the Budget. Notwithstanding the foregoing in Paragraph 40(b)(i), the Committee's reasonable attorneys fees and expenses in connection with supporting the resolution of any Challenge shall be paid by the Debtors and deemed to be added to the amounts allocated to the Committee in the Budget.

(c)     *Binding Effect.*    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Term Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Term Lien and Claim Matters shall become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition

Term Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Term Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof. Upon entry of this Final Order, to the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 40 hereof, the Court may fashion any appropriate remedy, including without limitation claw back of Prepetition Obligations repaid pursuant to the DIP Financing and Cash Collateral Orders.

41.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

42.     Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Secured Parties, the Prepetition ABL Parties, the Prepetition Term Loan Parties, or any of their respective claims, the DIP Collateral, the Adequate Protection Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Secured Parties, the Prepetition ABL Parties, and the Prepetition Term Loan Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

43.     <u>No Marshaling/Applications of Proceeds</u>.     The DIP Secured Parties and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, the Adequate Protection Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Financing and Cash Collateral Orders and the DIP Documents notwithstanding any other agreement or provision to the contrary.

44.     <u>Section 552(b)</u>.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral, the Adequate Protection Collateral, or the DIP Collateral.

45.     <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Prepetition Term Loan Agent exercisable on behalf of the Prepetition Term Loan Parties contained in this Final Order, or otherwise available at law or in equity, and subject to the terms of the Prepetition Term Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing, the Prepetition Term Loan Agent, may, subject to the applicable notice provisions, if any, in this Final Order and any separate applicable agreement by and between such landlord and the Prepetition Term Loan Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to the Prepetition Collateral, the DIP Collateral or the Adequate Protection Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that the Prepetition Term Loan Agent shall be obligated only to

pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Prepetition Term Loan Agent calculated on a daily per diem basis.  Nothing herein shall require the Prepetition Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph 45 hereof.  For the avoidance of doubt, subject to (and without waiver of) the rights of the Prepetition Term Loan Parties under applicable nonbankruptcy law, the Prepetition Term Loan Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the Prepetition Term Loan Agent on such notice to the landlord as shall be required by this Court.

46.    <u>Limits on Lender Liability</u>.  Nothing in the DIP Financing and Cash Collateral Orders, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Term Loan Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases.  The Prepetition Term Loan Parties shall not, solely by reason of permitting the Debtors to use Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.,* as amended, or any similar federal or state statute).  Nothing in this Final Order, shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Term Loan Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

47.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this Final Order and to the fullest extent provided by applicable law, the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties) shall be, and shall be deemed to be, without any further action or notice, named as loss payee, lender's loss payee, mortgagee or additional insured, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the Prepetition Collateral, the Adequate Protection Collateral or the DIP Collateral.

48.    <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all Prepetition Term Loan Obligations in accordance with the terms hereof or of the Prepetition Term Loan Documents.

49.    <u>No Superior Rights of Reclamation</u>.  Based on the findings and rulings herein regarding the integrated nature of the Prepetition Documents and the relation back of the Prepetition Term Loan Adequate Protection Liens, any alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition Term Loan Adequate Protection Liens as such claim had with the Prepetition Liens.

50.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Term Loan Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition Term Loan Parties under the

Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of Prepetition Term Loan Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.  Entry of this Final Order is without prejudice to any and all rights of any party in interest with respect to any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 Cases.

51.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Prepetition Term Loan Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Term Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Term Loan Parties, the Committee, or any party in interest.

52.     <u>Binding Effect of Final Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Parties, Prepetition Secured Parties, all other creditors of any of the Debtors, the Committee (or any other court appointed committee), and all other parties-in-

interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

53.    <u>No Modification of Final Order</u>.  Until and unless all Prepetition Term Loan Obligations have been Paid in Full, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Prepetition Term Loan Agent, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the Prepetition Term Loan Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the Prepetition Term Loan Agent for any order allowing use of Cash Collateral (other than as permitted during the Default Notice Period) resulting from Adequate Protection Collateral; or (c) without the prior written consent of the Prepetition Term Loan Agent, any lien on any of the Adequate Protection Collateral, the DIP Collateral, or the Prepetition Collateral with priority equal or superior to the Prepetition Term Loan Liens or Prepetition Term Loan Adequate Protection Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent or the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agents.

54.     <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties each shall be bound by, and in all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement, to the extent such agreement remains in effect in accordance with its terms as of the date in question.

55.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Prepetition Term Loan Documents or the other DIP Financing and Cash Collateral Orders and of this Final Order, the provisions of this Final Order shall govern and control.

56.     <u>Discharge</u>.  The obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full, on or before the effective date of such confirmed plan of reorganization, or the Prepetition Term Loan Agent has otherwise agreed in writing.   None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "<u>Prohibited Plan or Sale</u>") without the written consent of the Prepetition Term Loan Agent.  For the avoidance of doubt, (i) the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder; and (ii) in no event may the adequate protection provided herein to

the Prepetition Term Loan Lenders be discharged under a reorganization plan in these Chapter 11 Cases or otherwise absent consent of the Prepetition Term Loan Agent or indefeasible payment in full of the Prepetition Term Loan Obligations.

57. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the Prepetition Term Loan Parties granted pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: in respect of the Prepetition Term Loan Facility, all Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Final Order, have been paid in full. The terms and provisions concerning the indemnification of the DIP Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

58. Subject to the expiration of the Challenge Period in the case of the Prepetition Term Loan Parties and effective upon entry of this Final Order in the case of the Prepetition ABL Parties and the DIP Secured Parties, the Debtors have agreed as a condition to obtaining financing under the DIP Facility, that in consideration of the Prepetition Term Loan Parties,

Prepetition ABL Parties, the DIP Agent, and the DIP Lenders permitting the Debtors to use the prepetition collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Prepetition Term Loan Documents, the Prepetition ABL Documents, the DIP Documents, and the DIP Financing and Cash Collateral Order, each Debtor, on behalf of itself its estates and its successors and assigns, (collectively, the "Prepetition Secured Parties and DIP Releasors"), do hereby forever release, discharge and acquit each Prepetition Term Loan Party (solely in its capacity as such), Prepetition ABL Party, the DIP Agent, and each DIP Lender, and each of their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, with respect to the Prepetition Term Loan Obligations, Prepetition ABL Obligations, the Prepetition ABL Documents, the DIP Obligations, and the DIP Documents, and any loans, advances, letters of credit, bank products, or other financial accommodations made by any of the Prepetition Term Loan Parties (solely in their capacities as such) or the Prepetition ABL Parties to the Debtors (or any of them) pursuant to the Prepetition Term Loan Documents or the Prepetition ABL Documents, respectively, including, without limitation, any so-called "lender liability" claims or defenses, that the Prepetition Secured Parties and DIP Releasors had, have or hereafter can or may have against the Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof.  In addition, upon the July 12, 2019 repayment in full of all Prepetition ABL Obligations owed to the Prepetition ABL Parties and the DIP Obligations owed to the DIP Agent and the DIP Lenders by

the Debtors and the termination of the rights and obligations arising under the Prepetition ABL Documents and the DIP Documents (which payment and termination were on terms and conditions acceptable to the Prepetition ABL Agent and DIP Agent, respectively), the Prepetition ABL Parties, the DIP Agent and the DIP Lenders, were released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Prepetition ABL Documents, the DIP Documents, the DIP Financing and Cash Collateral Orders (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out (or any portion thereof), on terms and conditions acceptable to the Prepetition ABL Agent and DIP Agent, but for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct).

59.     [Reserved].

60.     [Reserved].

61.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, the Debtors' use of Cash Collateral, and/or this Final Order.

**Dated: August 7th, 2019**
**Wilmington, Delaware**

                        **LAURIE SELBER SILVERSTEIN**
                        **UNITED STATES BANKRUPTCY JUDGE**