**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SPORTCO HOLDINGS, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11299 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Docket No. 309 |

**OBJECTION OF WELLSPRING TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (A) CONDITIONALLY APPROVING THE COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR SOLICITATION PURPOSES ONLY ON LIMITED NOTICE, (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN OF LIQUIDATION, (C) APPROVING THE FORM OF BALLOT AND SOLICITATION MATERIALS, (D) ESTABLISHING VOTING RECORD DATE, (E) FIXING THE DATE, TIME AND PLACE FOR THE CONFIRMATION HEARING AND THE DEADLINE FOR FILING OBJECTIONS THERETO, AND (F) APPROVING <u>RELATED NOTICE PROCEDURES</u>**

Wellspring Capital Management LLC, Wellspring Capital Partners IV, L.P., WCM GenPar IV, L.P., and WCM GenPar IV GP, LLC (collectively, "<u>Wellspring</u>"), hereby object (the "<u>Objection</u>") to the *Debtors' Motion for the Entry of an Order (A) Conditionally Approving the Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation for Solicitation Purposes Only on Limited Notice, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Liquidation, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and*

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

*(F) Approving Related Notice Procedures* [Docket No. 309] (the "<u>Motion</u>").[2] In support of its Objection, Wellspring respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Plan suffers from numerous infirmities that render it unconfirmable. Expending time and money to solicit votes on such a plan would be a waste of the estates' limited resources, and the Motion should therefore be denied. However, putting aside these glaring infirmities, the Disclosure Statement as it currently stands should not be approved (even on a conditional basis) because it also falls woefully short of providing the necessary information to allow a creditor to make an informed decision on whether to vote to accept or reject the Plan. The defects in the Disclosure Statement include, among other things:

   a. Failure to disclose any basis for the proposed substantive consolidation of the Debtor entities, notwithstanding that the Debtors must affirmatively prove that substantive consolidation—a rare and disfavored remedy in the Third Circuit—is appropriate;

   b. No discussion of, or justification for, either (a) the third-party releases (if any) proposed under the Plan, even though the proposed Ballot contains a box requiring voting creditors to opt out of the as-yet-unknown releases or (b) the broad injunction provided by the Plan, even though the Plan is a liquidating plan that cannot effectuate a discharge of claims;

   c. A one-page liquidation analysis that rests on unstated assumptions and does not provide any description or analysis of the recovery that unsecured creditors would receive in a liquidation;

   d. No description or explanation for whether the Debtors believe that the conditions precedent to the Effective Date of the Plan will be satisfied (*e.g.*, that Allowed Administrative Expense and Priority Claims will be less than the amounts set forth in the Approved Budget), making it impossible for a reasonably informed creditor to determine whether the Plan is likely to be implemented even if confirmed;

---

[2] The Motion seeks this Court's approval of an expedited solicitation and confirmation process for the combined plan and disclosure statement (the "<u>Plan</u>," the "<u>Disclosure Statement</u>," or the "<u>Plan and Disclosure Statement</u>," as context requires). Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion or the Plan and Disclosure Statement.

> e. No justification for the exculpation of non-estate fiduciaries (*e.g.*, Prospect) in connection with the Debtors' chapter 11 cases, notwithstanding that such exculpation is (at best) an extraordinary request;
>
> f. No explanation for the unusual purported funding structure for, and inadequate information with respect to other aspects of, the Liquidating Trust—the purported key source of recovery for general unsecured creditors;
>
> g. No clear process for providing holders of unliquidated and/or contingent claims with the right to vote and to have a meaningful voice in the Plan confirmation process; and
>
> h. No information regarding what purported settlements and compromises are included in the Plan, let alone whether such settlements and compromises satisfy the applicable standards for approval.

2. This dearth of critical information makes it impossible for Wellspring and other voting creditors to evaluate the Plan. The Disclosure Statement should not be approved on a conditional basis, and the Debtors' estates should not undertake the expensive and time-consuming process of soliciting votes, until the Disclosure Statement is amended to provide at least the essential information outlined herein.

3. Setting aside the inadequate Disclosure Statement and the unconfirmable Plan, the Debtors' desire to rush the confirmation timeline and thereby prejudice parties' due process rights is also not appropriate under Local Rule 3017-2. The Debtors do not meet the requirements for an expedited confirmation timeline under the Local Rules, as they expect to distribute assets with a cumulative value that is in excess of the $25 million statutory cap. And even if they satisfied the strict eligibility requirements, the Debtors have proposed a schedule that significantly (and unnecessarily) truncates the Local Rule's already compressed notice periods. The Debtors offer no credible justification for such an unprecedented departure from the typical notice periods afforded to parties in interest to consider confirmation of a chapter 11 plan. If the Debtors and Prospect wish to take advantage of the unique and streamlined

confirmation process Local Rule 3017-2 provides, they should, at a minimum, actually comply with the already truncated notice periods to allow for appropriate discovery and for parties in interest to evaluate the Plan with the benefit of a full evidentiary record.

4.  Finally, there are myriad other aspects of the proposed solicitation procedures that the Debtors initially proposed that appeared designed to hinder, instead of facilitate, creditor participation and enfranchisement. Based on comments made at the hearing on August 27, 2019, Wellspring expects that the Debtors will propose a new timeline for solicitation and confirmation. As of the date hereof, however, the Debtors have not filed an amended motion or a revised form of proposed order. Accordingly, rather than identify the clear issues with the solicitation schedule the Debtors initially requested, Wellspring reserves the right to supplement or amend this Objection to address any revised schedule the Debtors may propose.

5.  For these reasons, and as set forth below, the Motion should be denied.

**OBJECTION**

**I.  Applicable Legal Standards.**

6.  It is well-settled that a debtor may only solicit votes to accept or reject a chapter 11 plan after the court has approved the debtor's written disclosure statement for that plan as containing "adequate information." 11 U.S.C. § 1125(b). The Bankruptcy Code defines adequate information as "information of a kind, and in sufficient detail, as far as it is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

7.  Appropriate disclosure by the plan proponent is vital to the plan confirmation process, and the Debtors have an affirmative duty to provide a disclosure statement that contains complete and accurate information. *See Krystal Cadillac-Oldsmobile GMC Truck,*

01:25133671.1

4

*Inc.* v. *Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("[A] party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing adequate information to enable a creditor to make an informed judgment about the plan.") (internal citations omitted).  The importance of full disclosure is driven by "the reliance placed upon the disclosure statement by the creditors and the court." *Oneida Motor Freight, Inc.* v. *United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).

8. Although what constitutes "adequate information" is a subjective determination that is driven by the "facts and circumstances of each case," the Third Circuit Court of Appeals has stated that it "cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Id.*  Bankruptcy courts usually evaluate a disclosure statement in light of a number of factors, including "the size and complexity of the chapter 11 case, the type of plan proposed, the type of creditors and claims impaired by the proposed plan, and the access by impaired creditors to relevant information from other sources." *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987).[3]

**II.   The Disclosure Statement And Solicitation Procedures Should Not Be Conditionally Approved Because They Do Not Provide Adequate Information To Voting Creditors.**

9. In its current form, the Disclosure Statement fails to inform voting creditors on numerous important aspects of, and critical assumptions underlying, the Plan.  As a result, creditors cannot currently make an "informed judgment about the plan."

---

[3] Furthermore, although section 1125 of the Bankruptcy Code refers only to disclosure and solicitation obligations, it is a well-established principle that a disclosure statement should not be approved, and solicitation should not commence, if the underlying plan is unconfirmable. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("[A] court should not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable because it does not comply with confirmation requirements.") (citations omitted).

01:25133671.1

5

11 U.S.C. § 1125(a)(1). Solicitation should not commence until the Debtors cure at least the following infirmities:[4]

10. ***Substantive Consolidation.*** The Plan is premised upon a substantive consolidation of the Debtors' estates. While the Debtors describe the proposed substantive consolidation as "limited" in nature, in fact it is anything but limited, as it would affect:

- *Voting*—each vote will, apparently, be for one plan, rather than (as is typical in multi-debtor cases) a vote for the plan of a specific Debtor against which a creditor has a claim;

- *Distributions*—each unsecured creditor will share ratably in the assets of all Debtors, rather than ratably in the distributable assets of the particular Debtor against which a creditor has a claim; and

- *Claims Allowance*—each claim will be "deemed a single Claim against and a single obligation of the Debtors . . . ."

(Plan and Disclosure Statement § X.A.1.)

11. The Third Circuit has characterized substantive consolidation as "extreme" and "imprecise" and noted that this "rough justice remedy" should be "rare" and utilized as a "last resort." *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (internal quotation marks omitted). There are only two circumstances where the extreme remedy of substantive consolidation is justified: either (i) where prepetition, the debtor disregarded the separateness of the entities to be consolidated such that "creditors relied on the breakdown of entity borders and treated them as one legal entity" or (ii) where postpetition, the entities' assets and liabilities are "so scrambled that separating them is prohibitive and hurts all creditors." *Id.* However, "[m]ere benefit to the administration of the case" is "hardly a harm calling substantive consolidation into play." *Id.*

---

[4] Even with enhanced disclosure, many of the infirmities described herein cannot be cured, as they reflect requested relief that render the plan unconfirmable. If the Court conditionally approves the Disclosure Statement, Wellspring reserves the right to raise these and other objections at confirmation, with the benefit of a full evidentiary record.

01:25133671.1

12. The Plan and Disclosure Statement contain almost no information for a voting creditor to assess the legal and factual bases that purportedly support application of this extraordinary remedy here. The Motion is devoid of any evidence of a prepetition disregard of the separateness of the nine Debtor entities or that creditors treated such entities as one legal entity. Moreover, the Debtors do not state—let alone prove—that the Debtors' assets and liabilities are so scrambled that respecting corporate separateness is prohibitively burdensome. Instead, the Debtors' apparent justification for treating multiple separate Debtors as one is the conclusory statement that it will "avoid the inefficiency of proposing and voting in respect of entity-specific Claims for which there would be no impact on distributions." (Plan and Disclosure Statement § X.A.1.) But "administrative benefit" alone "falls far short" and cannot justify substantive consolidation. *In re Owens Corning*, 419 F.3d at 214.

13. To satisfy the adequate information standard, the Disclosure Statement should be modified to provide voting creditors with information regarding, among other things, the creditors' prepetition reliance on, or disregard of, the Debtors' separate corporate entities (if any); the extent to which the Debtors' assets and liabilities are inextricably scrambled (if they are); the potential harm (if any) of failing to substantively consolidate the estates; and the extent to which the proposed substantive consolidation will have an adverse impact on the rights of any creditors or other parties in interest.

14. In short, the Disclosure Statement should not be approved on a conditional basis—and solicitation should not commence—until the Debtors explain the basis for their proposed substantive consolidation and why it is in the best interests of the Debtors' estates.

15. ***Third-Party Releases and Plan Injunction.*** Creditors should not have to guess whether a plan seeks to implement third-party releases. But that is precisely what the

Debtors would have creditors do here, as the Plan and Disclosure Statement are devoid of any discussion regarding third-party releases, while the Ballot (and the Motion) include several references to opt-out procedures for these unknown releases.  This is something that demands clarity, especially where the Debtors and Prospect are forcing parties to consider these issues with limited notice.  The Debtors should clearly state that the Plan will not provide for any third-party releases (and the Ballots should be updated accordingly) or, if they intend to seek approval of any such releases, the Plan, the Disclosure Statement, and the related solicitation materials must be updated to accurately reflect such structure and provide an explanation for why such extraordinary relief is appropriate.  Among other things, such additional disclosure regarding third-party releases should include clear descriptions of the claims that are being released, what investigation (if any) the Debtors have undertaken with respect to those claims, the potential value of any released claims, and the substantial contribution (if any) by third parties to warrant such treatment.[5]

16. Similarly, the Plan contains a broad injunction against all entities that have held, hold, or may hold Claims against, or Equity Interests in, the Debtors, which is inconsistent with section 1141(d)(3)(A) of the Bankruptcy Code and related case law.  *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 545-46 (Bankr. S.D. Tex. 2010) ("[A] liquidating Chapter 11 plan may not provide for the discharge of the debtor . . . .  For the same reasons, actions against property of the Estate may not be enjoined after the confirmation of a liquidating plan.").  As a result, the Debtors must (at the very least) provide information in the Disclosure Statement to allow voting

---

[5] The justification for such releases must be particularly compelling where, as here, the Plan is a liquidating plan, and there is no reorganization. *See, e.g.*, *In re Nickels Midway Pier, LLC*, 2010 WL 2034542, at *13 (Bankr. D.N.J. May 21, 2010) (finding that proposed third-party releases were impermissible in a liquidating plan). To the extent the Plan and Disclosure Statement is later amended to include releases of non-debtors, Wellspring reserves its rights to object on any basis to such releases at that time.

01:25133671.1

creditors to assess whether such extraordinary (and likely impermissible) relief is appropriate here.

17.  *Liquidation Analysis.*  Section 1129(a)(7) provides that a bankruptcy court can confirm a chapter 11 plan only if, among other things, "each holder of a claim . . . will receive or retain . . . property of a value . . . not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title . . . ." 11 U.S.C. § 1129(a)(7)(A)(ii).  Accordingly, a universal feature of all disclosure statements is a liquidation analysis that demonstrates a plan's compliance with this so-called "best interests of creditors" test.

18.  The liquidation analysis attached to the Plan, however, does not enable voting creditors to make such a determination.  The entire analysis covers approximately half a page and contains a table with approximately 10 lines of simple data.  (Plan and Disclosure Statement Ex. A.)  Moreover, even the limited information included is difficult to interpret.  It is unclear what assumptions underlie the liquidation analysis and how those differ, if at all, from the assumptions underlying the recoveries under the Plan and/or the Debtors' actual postpetition liquidation of assets.  There is also neither any reference to the recovery unsecured creditors would receive in a chapter 7 liquidation, nor any chart comparing that recovery to what is proposed under the Plan or any explanation of the difference, if any.  Far from carrying their evidentiary burden, the Debtors would force creditors to guess as to which outcome is superior. Courts frequently deny approval of disclosure statements with such a bare bones and conclusory liquidation analysis. *See*, *e.g.*, *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 406 (Bankr. S.D. Tex. 2016) (refusing to approve disclosure statement where the "Liquidation Analysis is woefully inadequate[,]" which made it "extremely difficult for a creditor to determine whether the

liquidation analysis is an adequate, if not preferable, alternative to the Debtor's Plan"). As currently drafted, the Disclosure Statement makes it impossible to assess whether this Plan is better for general unsecured creditors than a conversion to chapter 7 or outright dismissal of these chapter 11 cases.

19.     ***Conditions Precedent to Effectiveness.***  One of three conditions precedent to effectiveness of the Plan is that the Administrative Expense Claims and Priority Claims shall not exceed the amounts set forth in the Plan and Approved Budget. (Plan and Disclosure Statement § XIII.A.3.) In other words, the Plan—even if confirmed—will not go into effect unless this condition is met. Yet the Plan and Disclosure Statement provide no information to voting creditors to determine whether this condition is likely to be satisfied. "[T]he identity of the administrative claimants, and the amount of the Debtor's administrative claims, are material facts that are necessary for creditors to make an informed decision on the Plan." *In re Constr. Supervision Servs., Inc.*, 2012 WL 4681414, at *5 (Bankr. E.D.N.C. Oct. 1, 2012).[6] It is unreasonable to expect creditors to make an informed judgment on whether to vote to accept the Plan when its effectiveness is tied to preconditions that no reasonable voting creditor can assess on the current record.[7] As a result, the Disclosure Statement should be amended to provide additional information regarding current and estimated Administrative Expense Claims, along with any other information necessary for voting creditors to assess whether the Plan is likely to be implemented if it is confirmed.

---

[6]  *See also, e.g.*, *In re Preferred Door Co., Inc.*, 990 F.2d 547, 549 (10th Cir. 1993) (affirming a bankruptcy court's holding that a plan was not feasible where the debtor would be unable to pay administrative claims on or before the effective date); *In re Forest Grove, LLC*, 448 B.R. 729, 734-35 (Bankr. D.S.C. 2011) (denying approval of disclosure statement where debtor failed to provide enough information regarding trust or trustee's ability to satisfy potential administrative expenses).

[7]  While the Plan allows the Debtors to waive the conditions to effectiveness, it is unclear from the drafting whether any such waiver would require the consent of Prospect and the Committee. If their consent is required, the Disclosure Statement should explain whether the Debtors believe it is likely that such consent would be granted (and the basis for any such expectation).

20. ***Exculpation of Non-Estate Fiduciaries.*** The definition of "Exculpated Parties" under the Plan includes "the Prepetition Term Loan Lenders" and their successors and assigns. Exculpation of non-estate fiduciaries is rarely approved by courts in the Third Circuit. As the *Washington Mutual* bankruptcy court stated, the "fiduciary standard" underlying exculpation clauses "applies only to estate fiduciaries" and, therefore, "must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *In re Wash. Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (*citing In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)); *see also In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011) (excluding non-fiduciaries from the exculpation provision of the plan). The Disclosure Statement provides no explanation for why this extraordinary relief is warranted here.

21. ***Liquidating Trust.*** The key source of recovery for unsecured creditors under the Plan is the Liquidating Trust. As a result, unsecured creditors have a particular interest in understanding the details of how the Liquidating Trust is funded. Although the Disclosure Statement states that 37.5% of the proceeds arising from any Type A Causes of Action go to Prospect (and potentially other Prepetition Term Loan Lenders) purportedly on account of their agreement to fund the Type A Causes of Action (Plan and Disclosure Statement § X.A.2), the Debtors provide no explanation of how this amount was calculated or whether it is reasonable. Nor is there any explanation as to why the opportunity to participate in this alleged funding mechanism is only available to the Prepetition Term Loan Lenders.

22. Moreover, the Disclosure Statement provides inadequate information regarding the organizational and governance documents for the Liquidating Trust, which are key features of any liquidating chapter 11 plan. In *In re Affordable Med Scrubs, LLC*, for example,

the bankruptcy court refused to approve a disclosure statement based on its failure to include information regarding the experience and credentials of the liquidating trustee and the relationship between the trustee and a secured creditor who held consultation rights over the trustee's conduct. 2016 WL 3693978, at *2 (Bankr. N.D. Ohio July 5, 2016). As the *Affordable Med Scrubs* court noted, absent such information, "[a] hypothetical investor cannot make an informed judgment as to whether his interests would be better served by a liquidation conducted by a Chapter 7 trustee and overseen by the court . . . which is the question an investor would want to answer in assessing the merits of a liquidation plan . . . ." *Id.* The Debtors here should not start the expensive and time-consuming process of solicitation until basic information about the Liquidating Trust, including (but not limited to) the justification for its unusual funding structure and the identity and credentials of the Liquidating Trustee, is included in the Disclosure Statement.

23. ***Voting Rights for Holders of Contingent and/or Unliquidated Claims.*** The Disclosure Statement is (at best) unclear as to how holders of contingent and/or unliquidated claims can meaningfully participate in the Plan confirmation process. Requiring such creditors to file a Rule 3018(a) motion (as the solicitation procedures appear to contemplate) solely to secure the right to vote on the Plan is unduly burdensome and clearly aimed at hindering, rather than encouraging, creditor involvement. Instead, the Debtors should follow common practice and temporarily allow timely filed contingent and/or unliquidated claims for voting purposes only, in the interest of fairness.[8]

---

[8] *See, e.g.*, *In re Panda Temple Power, LLC*, Case No. 17-10839 [Docket No. 242] (LSS) (Bankr. D. Del. June 29, 2017) (temporarily allowing such claims for voting purposes in the amount of $1.00); *In re FKF Madison Group Owner LLC*, Case No. 10-11867 [Docket No. 1078] (KG) (Bankr. D. Del. Feb. 24, 2012) (same); *In re Visteon Corp.*, Case No. 09-11786 [Docket No. 3491] (CSS) (Bankr. D. Del. June 28, 2010) (same).

01:25133671.1

24. *Settlements and Compromises.* Finally, the Plan states that "[p]ursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under [the Plan], the provisions of this [Plan] shall constitute a good faith compromise and settlement of Claims or controversies resolved pursuant to the [Plan] and in these Chapter 11 Cases." (Plan and Disclosure Statement § XV.S.) Other than this conclusory statement, the Disclosure Statement provides no indication as to what actual compromises and settlements (if any) this provision refers to. It is not clear how this Court (let alone voting creditors) can, in the absence of any relevant information, find that "such compromises and settlements are in the best interests of the Debtors," as the Plan provides. (*Id.*) The Disclosure Statement should therefore be modified to indicate (i) what settlements and compromises are included in the Plan and (ii) why such settlements are appropriate and satisfy the applicable standards for approval. Alternatively, if no such settlements or compromises actually exist, then section XV.S of the Plan should be stricken.

### III. The Debtors Cannot Avail Themselves Of Local Rules 3017-2's Expedited Timeline For Consideration Of The Plan And Disclosure Statement.

25. The Debtors' proposed timeline for solicitation and confirmation of the Plan and Disclosure Statement does not satisfy Local Rule 3017-2. Local Rule 3017-2 allows certain debtors in specific (and limited) factual circumstances to take advantage of an expedited plan confirmation process. Specifically, the Local Rules allow a plan proponent to "combine the disclosure statement and plan of liquidation into one document" where **all** of the following requirements are met:

> (i) All or substantially all of the assets of the debtor(s) were or will be liquidated pursuant to a sale under 11 U.S.C. § 363; and
>
> (ii) The plan of liquidation proposes to comply with section 1129(a)(9) of the Bankruptcy Code; and

      (iii)    The plan of liquidation does not seek non-consensual releases/injunctions with respect to claims creditors may hold against non-debtor parties; and

      (iv)    The debtor's combined assets to be distributed pursuant to the proposed plan of liquidation are estimated, in good faith, to be worth less than $25 million (excluding causes of action).

Local Rule 3017-2(a). For the reasons set forth below, the Plan and Disclosure Statement fail to satisfy such eligibility requirements. In addition, even if such requirements were met, the timeline the Debtors initially proposed does not comply with even the more truncated notice periods required by the Local Rules and should be rejected by the Court.

    26.    ***Disbursements Exceed $25 Million.***  As an initial matter, the Plan does not satisfy Local Rule 3017-2's eligibility requirement of a $25 million cap on the value of assets (excluding causes of action) to be distributed pursuant to the Plan. The Debtors state that their "combined assets to be distributed pursuant to the Plan are estimated to be worth approximately $20 million," a figure that "excludes proceeds from the sales of the Debtors' facilities located in Bellefontaine, Ohio, Chapin, South Carolina and Newberry, South Carolina as such assets are proposed to be sold outside the Plan pursuant to separate motions" (such assets, the "Non-Plan Facilities"). (Motion ¶ 17; *see also* Plan and Disclosure Statement § IV.A.)  The Debtors have misconstrued the requirements of Local Rule 3017-2(a)(iv) in suggesting that the appropriate inquiry is whether the Non-Plan Facilities are being *sold* pursuant to the Plan and Disclosure Statement or otherwise. Rather, the plain language of Local Rule 3017-2(a)(iv) provides that the Plan and Disclosure Statement may only *distribute* assets worth less than $25 million (excluding causes of action). And nothing in the Plan or Disclosure Statement indicates that the proceeds of any Non-Plan Facilities will (or should) be distributed outside of a plan.[9]

---

[9]   Indeed, the Plan appears to contemplate that all of the Debtors' remaining assets will be distributed under the Plan. Specifically, the Prepetition Term Loan Lenders are proposed to receive the "Remaining Assets **and proceeds thereof** . . . ." (Plan and Disclosure Statement § VII.A.2.d (emphasis added).) The Remaining Assets

01:25133671.1

14

27. Properly accounting for the Non-Plan Facilities, valued in the Disclosure Statement at a combined estimate of approximately $13,345,000, the Plan and Disclosure Statement propose to distribute assets worth over $33 million, well above the limit established under Local Rule 3017-2(a)(iv).[10] Accordingly, the Plan and Disclosure Statement do not meet the strict requirements under Local Rule 3017-2, and the Debtors should be required to follow the standard process of filing a separate disclosure statement and plan on regular notice to creditors.

28. ***Shortened Notice***. In addition to failing to satisfy the eligibility requirements of Local Rule 3017-2, the Motion contemplates a significant shortening of notice in contravention of the Rule's already truncated timeline. The Debtors have requested that the Court consider the Motion at the hearing on September 11, 2019.[11] Pursuant to Local Rules 3017-2(f) and 3017-2(c)(v), a confirmation hearing for a combined plan and disclosure statement must "not occur earlier than forty-five (45) days after entry of an order scheduling the combined hearing to consider the final approval of the adequacy of the disclosure statement and confirmation of the plan of liquidation." However, the Debtors initially proposed a confirmation hearing on September 30, 2019, with an objection deadline of September 24, 2019. (Motion ¶ 30.) If this Court approves the Motion on September 11, and even assuming notice of the confirmation hearing could be served on that same day, parties would have only 19 days'

---

include "all of the assets held by the Debtors' Estates on the Effective Date, including, without limitation, any real and personal property, Cash on Hand, the Liquidation Trust Funding Amount B, and Causes of Action." (*Id.* § II.A.64.)

[10] To the extent that the Debtors intend to sell the Non-Plan Facilities pursuant to separate motion and request authority to distribute the proceeds thereof outside of any chapter 11 plan, any such request should be denied as a transparent attempt to evade the requirements of Local Rule 3017-2.

[11] Although the Debtors were required under Local Rule 3017-2(c)(i) to provide 14 days' notice of the objection deadline for the Motion, and an additional 7 days between the objection deadline and the proposed hearing date, the Debtors filed the Motion and the Plan and Disclosure Statement on August 22, 2019, providing only 13 days' notice of the objection deadline and 20 days' notice of the proposed hearing.

01:25133671.1

notice of the proposed hearing and 13 days' notice of the proposed objection and voting deadlines.  However, the Debtors also intend to give themselves five **business** days (*i.e.*, a full week) from the entry of the order to serve notice of the confirmation hearing.  (Motion ¶ 23.)  Accordingly, as initially proposed, the Debtors requested authority to give parties in interest a mere six days to (i) receive the confirmation notice, (ii) request a copy of the Plan and Disclosure Statement from the Debtors' claims agent, (iii) review the Plan and Disclosure Statement, (iv) determine whether to vote or reject the Plan, notwithstanding the inadequate and vague Disclosure Statement, and (v) formulate and file any objections.  The requested timeline would shorten the notice of the confirmation hearing and associated objection deadline by an astounding 33 days and 32 days, respectively.  Such shortened notice is wholly inappropriate here and would violate the due process rights of creditors and other parties in interest.

29.  At the hearing before the Court on August 27, 2019, after the Office of the U.S. Trustee objected to this significant and unjustified shortening of notice, the Debtors indicated that they would propose a revised confirmation schedule.  As of the date hereof, the Debtors have not filed any materials that reflect any such amended schedule, and therefore Wellspring reserves the right to consider and object to such schedule if and when it is disclosed.

**RESERVATION OF RIGHTS**

30.  Wellspring reserves the right to:  (a) supplement or amend this Objection prior to or at any hearing on the Motion, including with respect to any revised confirmation timeline or solicitation procedures the Debtors may propose; and (b) raise additional objections and arguments with respect to confirmation of the Plan or final approval of the Disclosure Statement.  Nothing herein shall be, or shall be construed as, a waiver or release of any objections, rights, or arguments, all of which are expressly preserved.

## **CONCLUSION**

WHEREFORE, Wellspring respectfully requests that the Court deny the Motion and grant such other relief as is just and proper.

Dated: September 4, 2019
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ian J. Bambrick*
Pauline K. Morgan, Esq. (No. 3650)
M. Blake Cleary, Esq. (No. 3614)
Ian J. Bambrick, Esq. (No. 5455)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
pmorgan@ycst.com
mbcleary@ycst.com

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Lewis R. Clayton, Esq. (admitted *pro hac vice*)
Elizabeth R. McColm, Esq. (admitted *pro hac vice*)
Jacqueline P. Rubin, Esq. (admitted *pro hac vice*)
Jacob A. Adlerstein, Esq. (admitted *pro hac vice*)

1285 Avenue of the Americas
New York, New York  10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
lclayton@paulweiss.com
jadlerstein@paulweiss.com

*Counsel for Wellspring*