# **EXHIBIT A TO ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPORTCO HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-11299 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DEBTORS' FOURTH AMENDED COMBINED DISCLOSURE STATEMENT
## AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

Dated: November 6, 2019
Wilmington, Delaware

**POLSINELLI PC**
*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Brenna A. Dolphin (Del. Bar No. 5604)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
Email: cward@polsinelli.com
            bdolphin@polsinelli.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone:    (212) 547-5400
Facsimile:    (212) 547-5444
Email: twwalsh@mwe.com
            dazman@mwe.com
            mpreusker@mwe.com
            rorloff@mwe.com
*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, SC 29036.

I.

      INTRODUCTION ............................................................................. 2

II.

      DEFINITIONS AND CONSTRUCTION OF TERMS ...................................... 3

      A.      Definitions ............................................................................. 3

      B.      Interpretation; Application of Definitions and Rules of Construction ................. 18

III.

      BACKGROUND AND DISCLOSURES ...................................................... 18

      A.      Debtors' Organizational Structure. ................................................ 19

      B.      Description of the Debtors' Business as of the Petition Date. ..................... 19

      C.      The Debtors' Pre-Petition Indebtedness. .......................................... 20

      D.      Events Precipitating the Chapter 11 Filing. ....................................... 22

      E.      The Chapter 11 Cases. .............................................................. 24

      F.      Certain Federal Income Tax Consequences ........................................ 34

      G.      Certain Risk Factors To Be Considered ............................................ 38

IV.

      SUMMARY OF DEBTORS' ASSETS; SUMMARY
      OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES ...................... 40

      A.      Summary of Remaining Assets ...................................................... 40

V.

      CONFIRMATION AND VOTING PROCEDURES ........................................ 43

      A.      Confirmation Procedure .............................................................. 43

      B.      Voting Procedure .................................................................... 46

VI.

      TREATMENT OF UNCLASSIFIED CLAIMS ............................................ 49

      A.      Administrative Expense Bar Date. .................................................. 49

      B.      Administrative Expense Claims. .................................................... 50

      C.      Priority Tax Claims. ................................................................. 51

      D.      Intercompany Claims. ............................................................... 51

      E.      Payment of Statutory Fees. ......................................................... 51

VII.

      CLASSIFICATION OF CLAIMS AND
      EQUITY INTERESTS; ESTIMATED RECOVERIES ..................................... 52

      A.     TREATMENT OF CLAIMS AND EQUITY INTERESTS. ............................. 53

      B.     Modification of Treatment of Claims and Equity Interests. ................................. 57

VIII.

      LIQUIDATION TRUST AND OVERSIGHT BOARD ......................................... 58

      A.     The Liquidation Trust ..................................................................................... 58

      B.     The Liquidation Trustee.................................................................................. 61

      C.     Oversight Board .............................................................................................. 66

      D.     Causes of Action. ........................................................................................... 68

IX.

      PROVISIONS GOVERNING DISTRIBUTIONS UNDER
      THE COMBINED PLAN AND DISCLOSURE STATEMENT ................................... 73

      A.     Method of Payment......................................................................................... 73

      B.     Objections to and Resolution of Claims. ......................................................... 73

      C.     Claims Objection Deadline. ............................................................................ 73

      D.     No Distribution Pending Allowance. ............................................................... 73

      E.     Escrow of Cash Distributions. ........................................................................ 74

      F.     Distribution After Allowance. ........................................................................ 74

      G.     Investment of Segregated Cash and Property. .................................................. 74

      H.     Delivery of Distributions. ............................................................................... 75

      I.     Unclaimed Distributions. ................................................................................ 76

      J.     Set-Off............................................................................................................ 76

      K.     Minimum Distributions................................................................................... 76

X.

      IMPLEMENTATION AND EFFECT OF CONFIRMATION
      OF COMBINED PLAN AND DISCLOSURE STATEMENT....................................... 77

      A.     Means for Implementation of the Combined Plan and Disclosure
           Statement........................................................................................................ 77

XI.

      INJUNCTION, EXCULPATION, AND RELEASE ..................................... 82

- ii -

|       | A.  | Injunction. | 82 |
|       | B.  | Exculpation. | 83 |
|       | C.  | Release By Debtors. | 84 |
| XII.  |     |             |    |
|       |     | EXECUTORY CONTRACTS | 84 |
|       | A.  | Rejection of Executory Contracts. | 84 |
|       | B.  | Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement. | 85 |
| XIII. |     |             |    |
|       |     | CONDITIONS TO THE EFFECTIVE DATE | 85 |
|       | A.  | Conditions Precedent to the Effective Date. | 85 |
|       | B.  | Effect of Failure of Conditions. | 86 |
|       | C.  | Waiver of Conditions to Confirmation and Effective Date. | 87 |
| XIV.  |     |             |    |
|       |     | RETENTION OF JURISDICTION | 87 |
| XV.   |     |             |    |
|       |     | MISCELLANEOUS PROVISIONS | 89 |
|       | A.  | Amendment or Modification of the Combined Plan and Disclosure Statement. | 89 |
|       | B.  | Severability. | 90 |
|       | C.  | Revocation or Withdrawal of the Combined Plan and Disclosure Statement. | 90 |
|       | D.  | Binding Effect. | 90 |
|       | E.  | Notices. | 91 |
|       | F.  | Governing Law. | 91 |
|       | G.  | Withholding and Reporting Requirements. | 91 |
|       | H.  | Allocation of Distributions between Principal and Interest. | 91 |
|       | I.  | Headings. | 92 |
|       | J.  | Exhibits/Schedules. | 92 |
|       | K.  | Filing of Additional Documents. | 92 |
|       | L.  | No Admissions. | 92 |

M.    Successors and Assigns.........................................................................92

N.    Reservation of Rights..........................................................................93

O.    Implementation. ...................................................................................93

P.    Inconsistency.......................................................................................93

Q.    Closing of Chapter 11 Cases...............................................................93

R.    Dissolution of the Committee. ............................................................93

DM_US 161828158-10.105320.0013
71111814.1

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.  THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF.   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.  CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.   THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

# I.

# INTRODUCTION[2]

The Debtors in these Chapter 11 Cases hereby propose their Fourth Amended Combined Plan and Disclosure Statement (the "Combined Plan and Disclosure Statement") pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Debtors are the proponents of the Combined Plan and Disclosure Statement within the meaning of Bankruptcy Code section 1129.

The Combined Plan and Disclosure Statement is a liquidating chapter 11 plan. The Combined Plan and Disclosure Statement provides for the proceeds from the Debtors' assets already liquidated or to be liquidated over time to be distributed to holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions in the Bankruptcy Code. Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter, except as otherwise provided by Order of the Bankruptcy Court. At the Liquidation Trustee's option, the Liquidation Trustee will cause the Debtors' existence to be terminated by dissolution, or as otherwise permitted by applicable law, as soon as practicable on or after the Effective Date on such terms as the Liquidation Trustee determines to be necessary or appropriate to implement the Combined Plan and Disclosure Statement and without further order of the Bankruptcy Court. The Liquidation Trustee may cause the Debtors to adopt any plan and execute, deliver, and file any agreement or document the Liquidation Trustee determines to be necessary and appropriate.

Subject to the restrictions on modifications set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article XV of the Combined Plan and Disclosure Statement, the Debtors and the Liquidation Trustee, as applicable, expressly reserve the right to alter, amend, or

---

[2] All capitalized terms not defined in this introduction shall have the same meanings set forth in Article II of the Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

modify the Combined Plan and Disclosure Statement one or more times before its substantial consummation, with the prior written consent of the Prepetition Term Loan Agent and the Committee.

## II.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

Capitalized terms used but not otherwise defined herein shall have the respective meanings specified below, unless the context otherwise requires:

1.     "**Administrative Expense Bar Date**" means (i) October 16, 2019 at 5:00 p.m. (prevailing Eastern Time) for Administrative Expense Claims arising from the Petition Date through and including October 9, 2019 that are not Professional Claims; and (ii) for Professional Claims and all other Administrative Expense Claims arising after October 9, 2019, the date that is thirty (30) days after the Effective Date.  For the avoidance of doubt, Claims arising under Bankruptcy Code section 503(b)(9) shall be filed by the general bar date for proofs of Claim.

2.     "**Administrative Expense Claim**" means any right to payment constituting actual and necessary costs and expenses of preserving the Estate under Bankruptcy Code sections 503(b) and 507(a)(2) including, without limitation: (a) Professional Claims, (b) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (c) all Claims arising under Bankruptcy Code section 503(b)(9).

3.     "**Allowed**" means, with reference to any Claim, proof of which was timely and properly Filed or, if no proof of Claim was Filed, that has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period

-3-

fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

4.      **"Approved Budget"** shall have the meaning set forth in the Final Cash Collateral Order.  For the avoidance of doubt, the September 30, 2019 budget filed at Docket Number 438 is an Approved Budget, as the same may be amended.

5.      **"Avoidance Actions"** means all Claims and Causes of Action now owned or hereafter acquired by the Debtor or the Debtors' estates, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, any causes of action arising under chapter 5 of the Bankruptcy Code. All avoidance actions against the Prepetition Term Loan Lenders will be released and waived under the Combined Plan and Disclosure Statement.

6.      **"Ballot"** means the form or forms distributed to certain Holders of Claims or Interests that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

7.      "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

8.      "**Bankruptcy Court or Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases or, if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

9.      "**Bankruptcy Exceptions**" means the exception to the recognition of COD Income under Tax Code section 108(a)(l)(A) when a taxpayer discharging indebtedness is under

DM_US 161828158-10.105320.0013
71111814.1

the jurisdiction of a court in a case under the Bankruptcy Code and when the discharge is granted, or is effected pursuant to a plan approved, by a United States Bankruptcy Court.

10.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

11.     "**Bar Date**" means the date or dates that will be established by the Bankruptcy Court as the deadline for Holders of Claims against the Debtors to file proofs of Claim in the Chapter 11 Cases.

12.     "**Beneficiary**" means, with respect to the Liquidating Trust, any Holder of an Allowed Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of this Combined Plan and Disclosure Statement.

13.     "**Bonitz**" means Bonitz Brothers, Inc., a Delaware corporation.

14.     "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

15.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

16.     "**Cash on Hand**" means the Cash held by the Debtors' Estates as of the Effective Date, excluding a reserve for the Debtors' post-Effective Date operating expenses and Professional fees (including post-confirmation fees).

17.     "**Causes of Action**" means any Claim, cause of action (including Avoidance Actions, and including all claims direct or derivative, as applicable, that are set forth in the South Carolina Complaint), controversy, right of setoff, cross claim, counterclaim, or recoupment and

-5-

any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, which was the Debtors' property or property of the Estates, or in which the Debtors or their Estates held rights as of the Effective Date.

18.    **"Charity"** means any non-profit organization that is unrelated to the Liquidation Trustee or its professionals or the Debtors or their professionals, whose primary purpose is the pursuit of philanthropic endeavors that may be selected by the Liquidation Trustee in its sole discretion.

19.    **"Chapter 11 Cases"** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, jointly administered as SportCo Holdings, Inc., Case No. 19-11299 (LSS), currently pending in the Bankruptcy Court.

20.    **"Claim"** shall have the meaning set forth in Bankruptcy Code section 101(5).

21.    **"Claims and Balloting Agent"** means BMC Group, Inc.

22.    **"Claims Objection Deadline"** means one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

23.    **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

24.    **"Clerk"** means the clerk of the Bankruptcy Court.

DM_US 161828158-10.105320.0013
71111814.1

25.    **"COD"** means cancellation of indebtedness.

26.    **"Combined Plan and Disclosure Statement"** means this fourth amended combined disclosure statement and joint chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

27.    **"Committee"** means official committee of unsecured creditors in the Debtors' Chapter 11 Cases.

28.    **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket.

29.    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider (a) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

30.    **"Confirmation Order"** means the Order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129.

31.    **"Creditor"** means any Person that is the Holder of a Claim against the Debtors.

32.    **"D&O Policies"** means all primary and excess insurance policies that provide coverage for liability related to the actions or omissions of the Debtors' directors and officers, and, if applicable, "tail" or "runoff" coverage for such policies.

33.    **"Debtors"** means SportCo Holdings, Inc.; Bonitz Brothers, Inc.; Ellett Brothers, LLC; Evans Sports, Inc.; Jerry's Sports, Inc.; Outdoor Sports Headquarters, Inc.; Quality Boxes, Inc.; Simmons Guns Specialties, Inc.; and United Sporting Companies, Inc.

DM_US 161828158-10.105320.0013
71111814.1

34.    **"DIP Agent"** means Bank of America, N.A., as administrative and collateral agent to the DIP Lenders (as defined in Docket No. 238).

35.    **"Disputed"** means any Claim or Equity Interest, or any portion thereof, that is: (a) listed on the Schedules as unliquidated, disputed, and/or contingent for which no proof of claim in a liquidated and non-contingent amount has been filed, or (b) the subject of an objection or request for estimation filed by the Debtors, the Liquidation Trustee or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order.

36.    **"Distribution"** means any distribution to the Holders of Allowed Claims.

37.    **"Distribution Matrix"** means the Claims lists and data compiled by the Liquidation Trustee that will serve as the basis for Distributions to be made by the Liquidation Trustee under the Combined Plan and Disclosure Statement.

38.    **"Docket"** means the docket in the Chapter 11 Cases maintained by the Clerk.

39.    **"Ellett"** means Ellett Brothers, LLC, a South Carolina limited liability company and wholly-owned subsidiary of United Sporting Cos.

40.    **"Effective Date"** means the date on which the conditions specified in Article XIII of the Combined Plan and Disclosure Statement have been satisfied or waived.

41.    **"Entity"** means an entity as defined in Bankruptcy Code section 101(15).

42.    **"Equity Interests"** means all equity interests in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

-8-

43.    **"Estates"** means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to Bankruptcy Code section 541.

44.    **"Evans**" means Evans Sports, Inc., a South Carolina corporation.

45.    **"Executory Contract"** means any executory contract or unexpired lease as of the Petition Date between any of the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

46.    **"Exculpated Parties"** means, collectively and individually, the Debtors, the Committee, and each of their respective members, attorneys, financial advisors, investment bankers, accountants, agents, and other Professionals.

47.    **"File, Filed, or Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

48.    **"Final Cash Collateral Order"** means the *Final Order (I) Approving the Debtors' Postpetition Financing, (II) Authorizing the Debtors Continued Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 238].

49.    **"Final Order"** means an order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending.

50.    **"General Unsecured Claim"** means any Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen

-9-

before the Petition Date and that is not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Prepetition Term Loan Claim, Other Secured Claim, Prepetition Term Loan Deficiency Claims, or Intercompany Claim.

51.    **"Governmental Unit"** shall have the meaning set forth in Bankruptcy Code section 101(27).

52.    **"Holder"** means the beneficial holder of any Claim or Equity Interest.

53.    **"Insurance Policies"** means all insurance policies of the Debtors, including any D&O Policy.

54.    **"IRS"** means the Internal Revenue Service.

55.    **"Jerry's"** means Jerry's Sports, Inc., a Delaware corporation.

56.    "**Liquidation Trust**" means the trust to be established pursuant to Article VIII of this Combined Plan and Disclosure Statement.

57.    **"Liquidation Trustee"** means (a) initially, Ronald Friedman of SilvermanAcampora LLP, and (b) any successors or replacements, duly appointed under the terms of the Liquidation Trust Agreement and the Plan, who is defined in the Plan as the Liquidation Trustee.

58.    **"Liquidation Trust Agreement"** means the agreement which shall memorialize the conduct of the Liquidation Trust and Liquidation Trustee to be agreed to by the Committee, Prepetition Term Loan Agent, and the Debtors.

59.    **"Liquidation Trust Funding Amount B"** means the $500,000 in Cash to be funded initially from the Cash on hand in the Debtors' estates constituting cash collateral of the Prepetition Term Loan Lenders on the Effective Date to an account maintained by the Liquidation Trustee, plus additional amounts from such cash collateral, if any, as the Prepetition

-10-

Term Loan Lenders in their sole discretion may elect to fund the litigation by the Liquidation Trustee of the Type B Causes of Action.

60.    "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

61.    "**Non-Operating Subsidiaries**" means, collectively, Quality Boxes and Bonitz.

62.    "**Non-United States Person**" means a Holder of a Claim that is not subject to either federal or state income taxation unless such Holder (a) is engaged in a trade or business in the United States to which income, gain, or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (b) is an individual, is present in the United States for 183 days or more during the taxable year of the exchange, and certain other requirements are met.

63.    "**Operating Subsidiaries**" means, collectively, Simmons, Evans, Jerry's, and Outdoor Sports.

64.    "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

65.    "**Other Priority Claim**" means a Claim that is entitled to priority in payment under Bankruptcy Code section 507, other than an Administrative Expense Claim or Priority Tax Claim.

66.    "**Other Secured Claim**" means any secured claim other than a Prepetition Term Loan Claim.

67.    "**Outdoor Sports**" means Outdoor Sports Headquarters, Inc., a Delaware corporation.

-11-

68.    **"Oversight Board"** means a creditors' oversight board consisting of two (2) members selected by Prepetition Term Loan Agent and one (1) member selected by the Committee.

69.    **"Permitted Investment"** shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States of America as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, provided, however, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

70.    **"Person"** shall have the meaning set forth in Bankruptcy Code section 101(41).

71.    **"Petition Date"** means June 10, 2019.

72.    **"Plan Supplement"** means the appendix of schedules and exhibits to be filed with the Bankruptcy Court at least ten (10) calendar days prior to the Voting Deadline, as may be modified and/or supplemented. The Plan Supplement shall include a description of any and all preserved Causes of Action, to the extent any are identified and such other documents as the Debtors deem appropriate.

73.    **"Prepetition ABL Agreement"** means that certain Third Amended and Restated Loan and Security Agreement (as amended and restated from time to time) dated September 28,

2012, between the Prepetition Borrowers, various lender parties thereto ( including the Prepetition ABL Lenders), and Bank of America, N.A., as administrative and collateral agent on behalf of the Prepetition ABL Lenders.

74.    **"Prepetition ABL Lenders"** means Bank of America, N.A., Wells Fargo Bank, National Association, and Regions Bank.

75.    **"Prepetition ABL Facility"** means the revolving loans by the various lender parties thereto (including the Prepetition ABL Lenders) to the Prepetition Borrowers in an aggregate principal amount not to exceed $175 million.

76.    **"Prepetition ABL Obligations"** means the aggregate principal amount outstanding under the Prepetition ABL Facility, which, as of the Petition Date, is approximately $23,056,470.93.

77.    **"Prepetition Borrowers"** means, collectively, Ellett, the Operating Subsidiaries, and Bonitz.

78.    **"Prepetition Guarantors"** means, collectively, SportCo and United Sporting Cos., pursuant to those certain Second Amended and Restated Guaranties, dated September 28, 2012.

79.    **"Prepetition Secured Obligations"** means, collectively, the Prepetition Term Loan Obligations and the Prepetition ABL Obligations.

80.    **"Prepetition Secured Parties"** means, collectively, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

81.    **"Prepetition Term Loan Agent"** means Prospect Capital Corporation, as administrative and collateral agent on behalf of the Prepetition Term Loan Lenders.

-13-

82.    **"Prepetition Term Loan Agreement"** means that certain Second Lien Loan and Security Agreement (as amended from time to time), dated September 28, 2012, and entered into between the Prepetition Borrowers and the Prepetition Secured Parties.

83.    **"Prepetition Term Loan Adequate Protection Liens"** shall have the meaning ascribed in the Final Cash Collateral Order.

84.     **"Prepetition Term Loan Claims"** means Claims on account of the Prepetition Term Loan Obligations.

85.    **"Prepetition Term Loan Deficiency Claims"** means that portion of the Prepetition Term Loan Claims not satisfied from the Remaining Assets and the proceeds thereof.

86.    **"Prepetition Term Loan Diminution Claim"** means the Allowed Prepetition Term Loan Adequate Protection Superpriority Claim as defined in the Final Cash Collateral Order and granted to the Prepetition Term Loan Agent pursuant thereto for diminution in value in the amount of at least $6,801,666, which are secured by the Prepetition Term Loan Adequate Protection Liens.

87.    **"Prepetition Term Loan Facility"** means the term loans in the aggregate principal amount of $230 million, pursuant to the Prepetition Term Loan Agreement, extended to the Prepetition Borrowers by the Prepetition Term Loan Lenders.

88.    **"Prepetition Term Loan Lenders"** means the various lenders party to the Prepetition Term Loan Agreement, which, as of the Petition Date, included:  (i) Prospect Capital Corporation; (ii) Summit Partners Credit Fund, L.P.; (iii) Summit Partners Credit Fund A-1, L.P.; (iv) Summit Investors I, LLC; (v) Summit Investors I (UK), L.P.; and (vi) Summit Partners Credit Offshore Intermediate Fund, L.P.

-14-

89.    **<u>Prepetition Term Loan Obligations</u>**" means the aggregate principal amount outstanding under the Prepetition Term Loan Facility, which, together with accrued and unpaid interest through the Petition Date, is approximately $249,800,405.00.

90.    **<u>Priority Tax Claim</u>**" means a Claim that is entitled to priority in payment under Bankruptcy Code section 507(a)(8).

91.    **<u>Professional</u>**" means any professional Person employed in the Chapter 11 Cases pursuant to Bankruptcy Code section 327, 328, 363, or 1103 pursuant to an Order of the Bankruptcy Court who is to be compensated for services rendered pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, or 363.

92.    **<u>Professional Claims</u>**" means all claims for compensation and reimbursement of expenses by Professionals to the extent Allowed by the Bankruptcy Court.

93.    **<u>Professional Fee Escrow Account</u>**" means the account to be established on the Confirmation Date with Winter Harbor, LLC (the Debtors' restructuring advisory service provider), which shall be funded with Cash on Hand, including from proceeds of the Remaining Assets, in an amount equal to the sum of the Professional fee amounts set forth in the Approved Budget plus a conditional $100,000, as further described in Sections VI. B. and X. A.2. of this Combined Plan and Disclosure Statement.

94.    **<u>Prospect Claims</u>**" shall have the meaning ascribed to such term in section VIII.D.1.a of the Combined Plan and Disclosure Statement.

95.    **<u>Pro Rata</u>**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

96.    **<u>Quality Boxes</u>**" means Quality Boxes, Inc., a South Carolina corporation.

-15-

97.    **"Remaining Assets"** means all of the assets held by the Debtors' Estates on the Effective Date, including, without limitation, any real and personal property, Cash on Hand, and Causes of Action.

98.    **"Schedules"** means the schedules of assets and liabilities, the lists of Holders of Equity Interests, and the statements of financial affairs filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto.

99.    **"Simmons"** means Simmons Gun Specialties, Inc., a Delaware corporation.

100.    **"South Carolina Action"** shall have the meaning ascribed to such term in section VIII.D.1.a of the Combined Plan and Disclosure Statement.

101.    **"South Carolina Complaint"** means the complaint filed by the Prepetition Term Loan Agent in *Prospect Capital Corp. v. Wellspring Capital Management LLC, et al.*, Case No. 2019CP3202045, which case is pending in the Eleventh Judicial Circuit Court for the State of South Carolina.

102.    **"SportCo"** means SportCo Holdings, Inc., a Delaware corporation.

103.    **"Tax Attributes"** means the collective attributes of the taxpayer, including net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets, and foreign tax credit carry forwards.

104.    **"Tax Code"** means the Internal Revenue Code, as amended.

105.    **"Treasury Regulations"** means the regulations, including temporary regulations or any successor regulations, promulgated under the United States Internal Revenue Code, as amended from time to time.

106.    **"Type A Causes of Action"** shall have the meaning ascribed to such term in section VIII.D.1.a of the Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

107. **"Type A Cause of Action Recoveries"** shall have the meaning ascribed to such term in section VII.A.4.c.i (Class 4) of the Combined Plan and Disclosure Statement.

108. **"Type B Causes of Action"** shall have the meaning ascribed to such term in section VIII.D.1.b of the Combined Plan and Disclosure Statement.

109. **"Type B Causes of Action Recoveries"** means shall have the meaning ascribed to such term in section VII.A.4.c.ii (Class 4) of the Combined Plan and Disclosure Statement.

110. **"Unclaimed Distribution"** means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

111. **"Unclaimed Distribution Deadline"** means ninety (90) days after the date on which the Liquidation Trustee makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

112. **"United Sporting Cos."** means United Sporting Companies, Inc., a Delaware corporation.

113. **"Unsecured Claims Distributions"** means Distributions on account of Allowed Unsecured Claims.

114. **"UST"** means the Office of the United States Trustee for the District of Delaware.

115. **"Voting Deadline"** means October 15, 2019 at 4:00 p.m. prevailing Eastern Time.

116. **"Wellspring"** shall have the meaning ascribed to such term in section VIII.D.1.a of the Combined Plan and Disclosure Statement.

117. **"Wellspring Defendants"** shall have the meaning ascribed to such term in section VIII.D.1.a of the Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

118.    **"Wellspring Subordinated Claims"** means any of Wellspring's Claims that the Bankruptcy Court finds are subordinate, whether by agreement or otherwise.  To the extent that any of Wellspring's Claims are not found to be subordinate, such Claims shall be General Unsecured Claims under this Combined Plan and Disclosure Statement.

B.    **Interpretation; Application of Definitions and Rules of Construction**.

1.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders. Unless otherwise specified, each section, article, schedule, or exhibit reference in the Combined Plan and Disclosure Statement is to the respective section in, article of, schedule to, or exhibit to the Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained in the Combined Plan and Disclosure Statement. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Combined Plan and Disclosure Statement. A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

## III.

## BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases.  After the Petition Date, the

DM_US 161828158-10.105320.0013
71111814.1

Debtors have remained in possession of their assets and management of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A.    **Debtors' Organizational Structure.**

SportCo is a holding company with no business operations. As of the Petition Date, 94.30% of SportCo's fully-diluted shares were held by three investor groups: Wellspring Capital Partners IV, L.P. (60.58%), Prospect Capital Corporation and certain affiliates (21.16%), and Summit Partners Credit Fund, L.P. and certain affiliates (12.55%). The remaining 5.70% of SportCo's fully-diluted shares are held by certain individuals, including current and former members of the Debtors' management team or reserved for issuance under the Debtors' management incentive plan.[3] United Sporting Cos. is an intermediate holding company and wholly-owned subsidiary of SportCo. Like SportCo, United Sporting Cos. has no business operations.

The Debtors operated their business primarily through Ellett, and four of Ellett's six wholly-owned subsidiaries: Evans, Jerry's, Outdoor Sports, and Simmons. Ellett's two remaining wholly-owned subsidiaries, Bonitz and Quality Boxes, ceased operations prior to the Petition Date.

B.    **Description of the Debtors' Business as of the Petition Date.**

The Debtors were founded in 1933 under the name Ellett Brothers, Inc. before merging with Jerry's Sports, Inc. in 2009 and formally changing their name to United Sporting Companies, Inc. on July 16, 2010. Headquartered in Chapin, South Carolina, the Debtors were a marketer and distributor of a broad line of products and accessories for hunting and shooting

---

[3] The individual shareholders and each of their respective holdings as of the Petition Date is as follows: Andy Kupchik (.57984%); Berne Ziomek (.04832%); Chuck Walker (.03276%); Hewitt Grant (.32790%); Jim McCrudden (.06562%); and Todd Boehly (.96641%).

DM_US 161828158-10.105320.0013
71111814.1

sports, marine, camping, archery, and other outdoor activities.  The Debtors' customer base consisted of 20,000 independent retailers covering all 50 states.

As of the Petition Date, the Debtors employed approximately 321 full-time, part-time, and temporary employees.  Their Chapin facility included a 154,000 square foot distribution center and a 40,000 square foot sales office.  In addition, the Debtors owned and operated two additional distribution centers—a 128,000 square foot facility in Newberry, South Carolina and a 192,000 square foot distribution facility in Bellefontaine, Ohio.   The Debtors also leased a 198,000 square foot distribution and office facility in Pittston, Pennsylvania, a 30,000 square foot distribution facility in Salt Lake City, Utah, and additional sales offices in Pennsylvania, California, Minnesota, and Texas.

In 2018, the Debtors' net sales across all distribution channels were approximately $557.0 million, with $531.1 million in net sales for 2017.  Despite the Debtors' strong sales volume, these figures are well below the Debtors' $885.3 million in average net sales from 2012 through 2016.

In line with the Debtors' decreased sales, their adjusted EBITDA dropped from an average of $55.8 million from 2012 through 2016 to $4.0 million in 2018.

C.    **The Debtors' Pre-Petition Indebtedness**.

In September 2012, the Prepetition Borrowers entered into the Prepetition ABL Agreement with the Prepetition ABL Lenders, and Bank of America, N.A., as administrative and collateral agent on behalf of the Prepetition ABL Lenders.  Pursuant to the Prepetition ABL Agreement, the Prepetition ABL Lenders agreed to extend to the Prepetition Borrowers the Prepetition ABL Facility in an aggregate principal amount not to exceed $175 million.  As of

February 15, 2019, the maximum revolver commitment under the Prepetition ABL Facility was reduced to $110 million.

The Prepetition ABL Facility was secured by a first priority lien over substantially all of the Prepetition Borrowers' assets, including the Prepetition Borrowers' accounts receivable, inventory, cash collateral, and real estate, all as set forth in greater detail in the Prepetition ABL Agreement and related documents.  The Prepetition ABL Facility is also guaranteed by the Prepetition Guarantors pursuant to those certain Second Amended and Restated Guaranties, dated September 28, 2012.

As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Obligations was approximately $23,056,470.93.  After the Petition Date, the Prepetition ABL Obligations were paid in full with the proceeds of certain sales of the Debtors' assets in the ordinary course of business.

In September 2012, the Prepetition Borrowers also entered into the Prepetition Term Loan Agreement with the Prepetition Term Loan Lenders, and the Prepetition Term Loan Agent. As of the Petition Date, the Prepetition Term Loan Lenders were:  (i) Prospect Capital Corporation; (ii) Summit Partners Credit Fund, L.P.; (iii) Summit Partners Credit Fund A-1, L.P.; (iv) Summit Investors I, LLC; (v) Summit Investors I (UK), L.P.; and (vi) Summit Partners Credit Offshore Intermediate Fund, L.P.

Pursuant to the Prepetition Term Loan Agreement, the Prepetition Term Loan Lenders agreed to extend to the Prepetition Borrowers the Prepetition Term Loan Facility in the aggregate principal amount of $230 million.

The Prepetition Term Loan Facility is secured by a second priority lien over substantially all of the Prepetition Borrowers' assets, including the Prepetition Borrowers' accounts

DM_US 161828158-10.105320.0013
71111814.1

receivable, inventory, cash collateral, and real estate, all as set forth in greater detail in the

Prepetition Term Loan Agreement and related documents.  The Prepetition Term Loan Facility is

guaranteed by the Prepetition Guarantors pursuant to those certain Guaranties, dated September

28, 2012.

As of the Petition Date, the aggregate Prepetition Term Loan Obligations outstanding

under the Prepetition Term Loan Facility, together with accrued and unpaid interest through the

Petition Date, is approximately $249,800,405.00.

In addition to the Prepetition Secured Obligations, as of the Petition Date, the Debtors

had approximately $40.9 million of outstanding unsecured debt, which was comprised mostly of

professional services, trade debt, and employee severance.

D.      **Events Precipitating the Chapter 11 Filing.**

The following recitation is provided by the Debtors, but is not agreed to by the creditors

or binding as an admission on any parties, including without limitation the Liquidation Trustee.

Since 2015, the Debtors faced economic headwinds and operational challenges that significantly

and adversely impacted the operating performance of the Debtors' businesses, including:

- *Industry-Wide Decline Due to an Uncertain Political Climate*. In the lead up to the 2016 presidential election, the Debtors anticipated an uptick in firearms sales historically attributable to the election of a Democratic presidential nominee. The Debtors increased their inventory to account for anticipated sales increases. In the aftermath of the unexpected Republican victory, the Debtors realized lower than expected sales figures for the 2017 and 2018 fiscal years, with higher than expected carrying costs due to the Debtors' increased inventory.  These factors contributed to the Debtors' tightening liquidity and an industry-wide glut of inventory.

- *Excess Inventory Led to Discounting, Which Eroded the Debtors' Margins*. An over-supply of firearms following the 2016 presidential election and the financial distress of certain market participants led to industry-wide sales discounts.  The Debtors

DM_US 161828158-10.105320.0013
71111814.1

were forced to lower prices to remain competitive and maintain sales figures, which further eroded the Debtors' slim margins and contributed to the Debtors' tightening liquidity.

- *The Debtors' Over-Leveraged Capital Structure Further Eroded the Debtors' Margins*.  The Debtors' high fixed costs under the prepetition credit facilities adversely affected the Debtors' financial liquidity and required the Debtors' to stretch accounts payable beyond the Debtors' customary payment terms.  The resulting management of accounts payable resulted in the Debtors foregoing customary discount terms and volume rebates offered by the Debtors' top vendors.

- *Significant Disruptions in the Industry Eroded the Debtors' Channel Sales*.  Many of the Debtors' vendors and manufacturers suffered heavy losses as a result of the Cabela's-Bass Pro Shop merger, Dick's Sporting Good's pull back from the market, and the recent Gander Mountain and AcuSport bankruptcies.[4]  Those losses adversely impacted the terms and conditions on which such vendors and manufacturers were willing to extend credit to the Debtors.  With respect to the Gander Mountain and AcuSport bankruptcies, the dumping of excess product into the marketplace pushed prices—and margins—even lower.  The resulting tightening of credit terms eroded the Debtors' sales and further contributed to the Debtors' tightening liquidity.

- *Disruptions Caused by Natural Disasters*. The recent spate of disastrous hurricanes in the Southeastern United States resulted in decreased demand for firearms and other sporting goods where the Debtors' sales are disproportionately focused.  The reduction in demand caused additional losses for the Debtors and contributed to the Debtors' tightening liquidity.

In June 2018, the Debtors acquired certain assets from competitor AcuSport Corporation, including the Debtors' distribution facility in Bellefontaine, Ohio (the "AcuSport Assets"), in an asset sale approved by the United States Bankruptcy Court for the District of Ohio pursuant to Bankruptcy Code section 363 (the "AcuSport Transaction").  The Debtors consummated the AcuSport Transaction to realize certain supply chain synergies attributable to the integration of the AcuSport Assets and expand the Debtors' sales footprint.  However, as of the Petition Date,

---

[4] Case Nos. 17-30673 (MER) (Bankr. D. Minn. Mar. 10, 2017) and 18-52736 (Bankr. S.D. Ohio May 1, 2018), respectively.

-23-

the Debtors had been unable to realize the operational savings and increased sales anticipated from the AcuSport Transaction due to higher than anticipated costs of integrating the AcuSport Assets with the Debtors' existing distribution infrastructure and maintaining such assets post-integration, as well as lower than anticipated incremental sales.

The lower than anticipated increase in customer base following the AcuSport Transaction magnified the adverse effects of the market factors discussed above and resulted in a faster than expected tightening of the Debtors' liquidity and overall deterioration of the Debtors' financial condition.

**E.**     **The Chapter 11 Cases.**

The following is a brief description of certain major events that occurred during these Chapter 11 Cases.

1.     Second reading: First Day Motions and Orders.

On the Petition Date, in addition to the voluntary petitions for relief filed by the Debtors under chapter 11 of the Bankruptcy Code, the Debtors also filed a number of motions and applications seeking certain "first day" relief, including the following:

a.     *Debtors' Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases.*  The Debtors sought entry of an Order directing the joint administration of the Chapter 11 Cases and the consolidation thereof for procedural purposes only.  On June 11, 2019, the Bankruptcy Court entered an Order granting the motion [Docket No. 38].

b.     Debtors' Application for Entry of an Order Authorizing Employment and Retention of BMC Group, Inc. as the Claims and Noticing Agent *nunc pro tunc* to the Petition Date.  The Debtors sought to appoint BMC Group, Inc. as the claims and noticing agent in order

-24-

to assume responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases.  On June 11, 2019, the Bankruptcy Court entered an Order granting the application [Docket No. 40].

        c.        Debtors' Motion for Interim and Final Orders Authorizing the Debtors to Continue Using Existing Bank Accounts, Business Forms, and Cash Management System.  The Debtors requested the authority to, among other things, continue to use their existing bank accounts with the same account numbers, styles, and business forms as the Debtors used prepetition.  On June 11, 2019, the Bankruptcy Court entered an Order granting the motion on an interim basis [Docket No. 41]. On July 16, 2019, the Bankruptcy Court entered an order granting the motion on a final basis [Docket No. 155].

        d.        Debtors' Motion for Entry of Interim and Final Orders Authorizing Payment of Certain Prepetition Employee Wages, Benefits, and Related Items.  The Debtors sought entry of an Order authorizing, but not directing, the Debtors to pay all prepetition wages, salaries, and other accrued compensation to employees, all reimbursable prepetition employee business expenses, all payments for which prepetition payroll deductions, withholdings or matching employer contributions were made, and all processing costs and administrative expenses relating to the foregoing payments and contributions, including any payments to third-party administrators or other administrative service providers.  On June 11, 2019, the Bankruptcy Court entered an Order granting the motion on an interim basis [Docket No. 42]. On July 15, 2019, the Bankruptcy Court entered an order granting the motion on a final basis [Docket No. 136].

        e.        Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition

-25-

Obligations Related Thereto, Including Broker Fees, (B) Renew, Supplement, or Purchase Insurance Policies, (C) Honor Prepetition Insurance Premium Financing Agreement, and (D) Renew Insurance Premium Financing Agreement in the Ordinary Course of Business; (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief. The Debtors sought entry of an Order (i) authorizing, but not directing them to: (a) continue insurance coverage entered into prepetition, (b) renew, supplement, or purchase new insurance policies, including tail coverage for directors & officers liability and other insurance, (c) honor the Debtors' prepetition insurance premium financing agreement and renew such agreement in the ordinary course of business, (d) pay all prepetition obligations relating thereto, including broker fees, and (ii) authorizing and directing the Debtors' banks and other financial institutions to process and honor checks and transfers related to such obligations. On June 11, 2019, the Bankruptcy Court entered an Order granting the motion on an interim basis [Docket No. 43]. On July 15, 2019, the Bankruptcy Court entered an order granting the motion on a final basis [Docket No. 137].

    f.  Debtors' Motion for Entry of an Order Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs. The Debtors sought entry of an Order extending the deadline to file the Debtors' schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs to July 22, 2019. On June 11, 2019, the Bankruptcy Court entered an Order granting the motion [Docket No. 39].

    g.  Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV)

DM_US 161828158-10.105320.0013
71111814.1

Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief.  The Debtors sought an Order (a) authorizing the Debtors to obtain postpetition financing on a senior secured, priming, superpriority basis; (b) authorizing the Debtors to use Cash Collateral; (c) granting liens and providing superpriority administrative expense status to the DIP Secured Parties; (d) granting adequate protection to the Prepetition Secured Parties; (e) modifying the automatic stay; and (f) scheduling a final hearing on the DIP motion.  On June 13, 2019, the Bankruptcy Court entered an Order granting the motion on an interim basis [Docket No. 51].  On July 12, 2019, the Committee filed its Objection of the Official Committee of Unsecured Creditors to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief [Docket No. 130].  On July 15, 2019, the Committee filed its Supplemental Objection of the Official Committee of Unsecured Creditors to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief [Docket No. 146].  On July 16, 2019, and July 29, 2019 respectively, the Bankruptcy Court entered bridge orders continuing the Debtors' use of cash collateral on an interim basis while the Debtors, the Committee, the DIP Agent, and the Prepetition Term Loan Agent continued their negotiations to resolve the Committee's objections.

-27-

The Debtors, the Committee, the DIP Agent, and the Prepetition Term Loan Agent ultimately agreed to a resolution of the Committee's objections, and on August 6, 2019, the Bankruptcy Court entered an Order granting the motion on a final basis in accordance with the aforementioned resolution [Docket No. 238].

      2.    <u>Employee Retention Motions</u>.

On June 25, 2019, the Debtors filed a number of motions seeking additional relief, including the following:

      a.    *Motion to Approve the Debtors' Key Employee Retention Program for Certain Non-Insider Employees*.  The Debtors sought entry of an Order authorizing the Debtors to pay retention bonuses to certain non-insider employees necessary to effectuate an orderly liquidation of the Debtors' inventory and administration of the Debtors' Estates.  On July 11, 2019, the motion was supplemented to add certain additional employees to the proposed retention program [Docket No. 127].  On July 16, 2019, the Bankruptcy Court entered an Order granting the motion [Docket No. 154].

      b.    Motion to Authorize the Debtors to Make Post-Petition Severance Payments to Non-Insider Employees in Accordance with the Debtors' Pre-Petition Severance Program.  The Debtors sought entry of an Order authorizing the Debtors to continue their pre-petition severance program for non-insider employees on a post-petition basis.  On July 16, 2019, the Bankruptcy Court entered an Order granting the motion [Docket No. 156].

      c.    *Motion to Approve the Debtors' Key Employee Incentive Program for Certain Employees*.  The Debtors sought entry of an Order authorizing the Debtors to make certain bonus payments to certain members of the Debtors' management team.  On July 11, 2019, the Debtors withdrew the motion [Docket No. 128].

DM_US 161828158-10.105320.0013
71111814.1

3.    <u>Employment and Compensation of Debtors' Professionals and Advisors</u>.

On July 15, 2019, the Bankruptcy Court entered Orders authorizing the Debtors to retain McDermott Will & Emery LLP as general bankruptcy counsel [Docket No. 138], Polsinelli PC as Delaware bankruptcy counsel [Docket No. 139], and Winter Harbor LLC to provide the Debtors' with a chief restructuring officer and additional personnel [Docket No. 140], all *nunc pro tunc* to the Petition Date.  On August 5, 2019, the Bankruptcy Court entered an Order authorizing the Debtors to retain BMC Group, Inc. as administrative advisor *nunc pro tunc* to the Petition Date [Docket No. 235].  On August 16, 2019, the Bankruptcy Court entered an Order authorizing the Debtors to retain CBRE, Inc. as real estate broker for the Debtors' distribution facility located in Bellefontaine, Ohio.

On September 10, 2019, the Debtors were authorized to employ Wilson Kibler, Inc. as real estate broker for the Debtors' distribution facility located in Newberry, South Carolina and headquarters located in Chapin, South Carolina.  [Docket No. 363].

4.    <u>Appointment of Committee</u>.

On June 17, 2019, the UST appointed the Committee [Docket No. 58].  The members of the Committee are Vista Outdoor Sales, LLC, Magpul Industries Corporation, American Outdoor Brands Corporation and Subsidiaries, Garmin USA, Inc., Fiocchi of America, Inc., FN America, LLC, and Remington Arms Company, LLC.

To assist the Committee in carrying out its duties, the Committee selected Lowenstein Sandler LLP and Morris James LLP as its counsel, and Emerald Capital Advisors as its financial advisor.

DM_US 161828158-10.105320.0013
71111814.1

5.      Committee Going-Concern Sale Process.

On July 3, 2019, the Bankruptcy Court entered an order authorizing the Committee and its professionals to run a going-concern sale process for the Debtors' businesses [Docket No. 109].  The Committee's sale process lasted three weeks, after which time the process concluded without any interested parties submitting a binding offer.

6.      Claims Process and Bar Date.

        a.      Section 341(a) Meeting of Creditors

On July 26, 2019, the UST presided over the Section 341(a) meeting of creditors in the Chapter 11 Cases.

        b.      Schedules and Statements

The Debtors filed their Schedules with the Bankruptcy Court on July 24, 2019.  The Debtors subsequently amended certain Schedules on August 15, 2019.

        c.      Bar Date(s)

The Bankruptcy Court has fixed October 16, 2019 at 5:00 p.m. (prevailing Eastern Time) as the last date and time by which proofs of Claim (including Claims under Bankruptcy Code section 503(b)(9)) relating to the Debtors in these Chapter 11 Cases must be filed (with the exception of proofs of Claim of government units, the applicable bar date for which is December 9, 2019 at 5:00 p.m. (prevailing Eastern Time).

7.      The Prepetition Term Lenders' Adequate Protection Liens and Claims.

As adequate protection against diminution in value, the Final Cash Collateral Order granted to the Prepetition Term Loan Agent, among other things, the Prepetition Term Loan Diminution Claim and the Prepetition Term Loan Adequate Protection Liens, which liens include, but are not limited to, superpriority liens in Avoidance Actions.  The Prepetition Term

-30-

Loan Diminution Claim is at least $6,801,666 arising from the Prepetition Term Loan Lenders' funding from its cash collateral professional fees totaling $4,887,000 and employee severance and retention payments totaling $1,914,066 as of the date hereof pursuant to the *Order (I) Authorizing and Approving the Debtors' Key Employee Retention Program for Certain Non-Insider Employees and (II) Granting Related Relief* dated July 16, 2019 [Docket No. 156] and the *Order Pursuant to Sections 105(a), 363 and 503 of the Bankruptcy Code, Authorizing the Debtors to Make PostPetition Severance Payments to Non-Insider Employees in Accordance with the Debtors' PrePetition Severance Program* dated July 16, 2019 [Docket No. 154]. In consideration of certain treatment set forth in this Plan, upon the Effective Date, the Prepetition Term Loan Agent shall waive the Prepetition Term Loan Diminution Claim and release the Prepetition Adequate Protection Liens.

8.    The Wellspring Claims. Wellspring has filed proofs of Claim and alleges that the Debtors are liable to Wellspring for unpaid management fees and expenses owed pursuant to the Management Expense Reimbursement Agreement (as amended and restated, the "Management Agreement") in amounts of  not less than $3,000,000 and $486,259, respectively.  The Prepetition Term Loan Agent and the Committee allege that pursuant to the terms of the Prepetition Term Loan Agreement, such claims arising from the Management Agreement are contractually prohibited and subordinated to the Prepetition Term Loan Lenders until the Obligations (as defined in the Prepetition Term Loan Agreement) owing to the Prepetition Term Loan Lenders are indefeasibly paid in full, and as such have no value.  In addition, the Committee filed an omnibus reclassification objection to Wellspring's proofs of claim on September 10, 2019 [Docket No. 365]. The Committee asserts that Wellspring is not a general unsecured creditor entitled to vote on the Combined Plan and Disclosure Statement, given that

-31-

all of Wellspring's liquidated Claims are contractually subordinated to the Claims of the Prepetition Term Loan Lenders.

9.      For these reasons, Wellspring's Claims are separately classified pursuant to this Combined Plan and Disclosure Statement.

10.      Prior Sales of the Debtors' Assets.

As of the Petition Date, the Debtors had $59,384,717 in inventory and $23,481,902 in accounts receivable.  During the course of these Chapter 11 Cases, the Debtors sold substantially all of the remaining inventory in the ordinary course of business, with no remaining inventory as of the filing of this Combined Plan and Disclosure Statement.  Similarly, during the course of these Chapter 11 Cases, the Debtors collected substantially all of the initial $23,481,902 in accounts receivable, with only $3,391,210 of such amount remaining as of the filing of this Combined Plan and Disclosure Statement.  Additionally, during the course of these Chapter 11 Cases, the Debtors had gross sales of $47,238,647 of which $44,254,898 has been collected, leaving an additional $2,983,749 of accounts receivable remaining as of the filing of this Combined Plan and Disclosure Statement.  The Debtors intend to continue collecting the remaining accounts receivable in the ordinary course of business.  If any inventory or accounts receivable remain as of the Effective Date, such assets will be distributed to the Holders of the Class 2 Claims as set forth in this Combined Plan and Disclosure Statement.

11.      On July 25, 2019, the Debtors filed a motion to sell the business assets of Evans Sports, Inc. (the "Evans Assets") as a going concern through a private sale to Jeffrey Gabel and Jennifer Gabel.  The Debtors believed that the $170,000 purchase price, along with the value of certain liabilities that the buyers agreed to assume, provided value to the Estates superior to what would have resulted from liquidating the Evans Assets. The Debtors further believed that any

-32-

subsequent marketing efforts were unlikely to yield superior offers for the assets, and could have jeopardized the proposed transaction with the buyers and caused the Debtors to continue incurring administrative obligations with respect to the Evans Assets.  On August 16, 2019, the Bankruptcy Court entered an order authorizing the Debtors' sale of the Evans Assets [Docket No. 281], and the sale subsequently closed on August 19, 2019.

       12.    <u>Proposed Sales of Certain of the Debtors' Assets</u>.

On July 25, 2019, the Debtors filed a motion to sell the Debtors' distribution facility located in Bellefontaine, Ohio (the "<u>Bellefontaine Facility</u>").  As set forth in the Sale Motion, the bid procedures proposed thereunder provide a process designed to ensure the Debtors, their Estates and Creditors receive the highest and best value possible for the Bellefontaine Facility, in the context of these Chapter 11 Cases.  On August 16, 2019, the Bankruptcy Court entered an Order approving the Debtors' proposed bid procedures, approving E Brothers Ltd. as a stalking horse bidder (in the amount of $7,395,000) for the Bellefontaine Facility, scheduling a bid deadline of August 30, 2019, scheduling, if necessary, an auction to take place on September 6, 2019, and scheduling a sale hearing for September 11, 2019.  On August 30, 2019, the Debtors received a bid for the Bellefontaine Facility from Thomas & Marker Construction Co. for a purchase price of $7,815,000. The auction for the Bellefontaine Facility occurred on September 6, 2019, at which E Brothers Ltd. was the winning bidder with a bid of $8,415,000.  *See* [Docket No. 353].

The Debtors plan to liquidate all of their remaining property, including their owned real property located in Chapin, South Carolina and Newberry, South Carolina, and have retained Wilson Kibler, Inc. to assist with those efforts.

-33-

F.    **Certain Federal Income Tax Consequences**

The following discussion is a summary of certain U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtors and to Holders of Claims and Equity Interests.  This discussion is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof.

Due to the complexity of certain aspects of the Combined Plan and Disclosure Statement, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims, and each Holder's status and method of accounting and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are uncertain.  No legal opinions have been requested from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below.  Further, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims and Equity Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims or Equity Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies, financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the

-34-

alternative minimum tax, and persons holding Claims or Equity Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed.

EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

1.    Tax Consequences to the Debtors.

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize COD income to the extent that such taxpayer's indebtedness is discharged for an amount less than the indebtedness' adjusted issue price determined in the manner described below. Generally, the amount of COD income, subject to certain statutory and judicial exceptions, is the excess of (i) the adjusted issue price of the discharged indebtedness less, (ii) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such discharged indebtedness.

The recognition of COD income may be treated differently in the context of a confirmed chapter 11 plan. For example, under the Bankruptcy Exception, instead of recognizing COD Income, the taxpayer is required, pursuant to section 108(b) of the Tax Code to reduce certain of that taxpayer's tax attributes to the extent of the amount of COD income. The Tax Attributes of the taxpayer generally are reduced in the following order: net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's

-35-

assets and, finally, foreign tax credit carry forwards.  If the amount of COD income exceeds the amount of Tax Attributes available to be reduced, the excess still is excluded from income. Pursuant to section 108(b)(4)(A) of the Tax Code, the reduction of Tax Attributes does not occur until the end of the taxable year after such Tax Attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD income is realized.  Section l08(e)(2) of the Tax Code provides a further exception to the recognition of COD income upon the discharge of debt, providing that a taxpayer will not recognize COD income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for United States federal income tax purposes.

        2.      <u>Tax Consequences to Creditors</u>.

           a.      <u>Holders of Claims</u>

Generally, a Holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a Holder's Claim.  The tax basis of a Holder in a Claim will generally be equal to the Holder's cost.  To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized

-36-

generally will be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Combined Plan and Disclosure Statement, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Combined Plan and Disclosure Statement on account of its Claim.

b.    Non-United States Persons.

A Non-United States Person generally will not be subject to United States federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Combined Plan and Disclosure Statement.

3.    Importance of Obtaining Professional Tax Assistance.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN

DM_US 161828158-10.105320.0013
71111814.1

MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

**G.**      **Certain Risk Factors To Be Considered**

Prior to voting on the Combined Plan and Disclosure Statement, each Holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Combined Plan and Disclosure Statement, including the exhibits hereto.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Combined Plan and Disclosure Statement and its implementation.

1.      <u>Risk of Non-Confirmation of Combined Plan and Disclosure Statement</u>.

Although the Debtors believe the Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate a re-solicitation of votes.

2.      <u>Delays of Confirmation and/or Effective Date</u>.

Any delay in confirmation and effectiveness of the Combined Plan and Disclosure Statement could result in, among other things, increased Administrative Expense Claims.  These or any other negative effects of delays in confirmation or effectiveness of the Combined Plan and

-38-

Disclosure Statement could endanger the ultimate approval of the Combined Plan and Disclosure Statement by the Bankruptcy Court.

        3.      <u>Alternative Plan</u>.

        If the Combined Plan and Disclosure Statement is not confirmed, the Debtors, the Committee, or any other party in interest could attempt to formulate a different plan.  However, the additional costs, all of which would constitute Administrative Expense Claims, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7.  Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables creditors to realize the best return under the circumstances.

DM_US 161828158-10.105320.0013
71111814.1

## IV.

### SUMMARY OF DEBTORS' ASSETS; SUMMARY
### OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

**A.    Summary of Remaining Assets**

The following chart provides a summary of the Remaining Assets and the estimated value of such assets:[5]

| Asset | Estimated Value |
|---|---|
| Cash on Hand | $8,529,000 |
| Inventory | $0 |
| Accounts Receivable | $6,374,959 |
| Furniture, Fixtures and Equipment | Unknown |
| Personal Property and IT Assets | Unknown |
| Bellefontaine, Ohio Facility | $8,415,000.00 |
| Chapin, South Carolina Facility | $3,360,000 |
| Newberry, South Carolina Facility | $2,590,000 |
| Causes of Action | Unknown |
| Other Assets (including claims of the Debtors in the bankruptcy cases of Gander Mountain Company and Pacific Gas and Electric Company) | $152,800.56 (Gander Mountain Sports) $6,298.16 (PG&E) |

The following chart provides a summary of treatment of each Class of Claims and of unclassified claims and an estimate of the recoveries for each Class of Claims and the unclassified claims.  The treatment provided in the chart below is for information purposes only and is qualified in its entirety by Article VII of the Combined Plan and Disclosure Statement.

---

[5] Pursuant to this Combined Plan and Disclosure Statement, most Remaining Assets and proceeds thereof (excluding the Liquidation Trust Funding Amount B and after payment of Priority Claims and Administrative Claims) will be distributed to the Holders of Class 2 Prepetition Term Loan Claims. However, Type A Cause of Action Recoveries will be distributed pursuant to section VII.A.4.c.i of this Combined Plan and Disclosure Statement, and Type B Cause of Action Recoveries will be distributed pursuant to section VII.A.4.c.ii of this Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims[6] | Treatment | Estimated Recovery to Holders of Allowed Claims[7] |
|---|---|---|---|
| Unclassified Administrative Expense Claims | $3,261,145 | Paid in Full up to the total amount set forth in the Approved Budget; *provided, however*, that the Debtors reserve their right to seek payment of administrative and Debtors' Professional fees in excess of the total budgeted amount in light of any unforeseen substantial circumstances, so long as such amounts are incurred after September 30, 2019 and do not exceed $100,000 allocated solely to the Debtors' Professionals. | 100% |
| Unclassified Intercompany Claims | $0 | Disallowed as of the Effective Date | 0% |
| Unclassified Priority Tax Claims | $570,637 | Paid in Full | 100% |
| Class 1 – Other Priority Claims | $27,300 | Paid in Full | 100% |
| Class 2 – Prepetition Term Loan Claims | $249,800,405 | Payable from the Remaining Assets and proceeds thereof (but excluding the Liquidation Trust Funding Amount B), after carving out from the proceeds of the Remaining Assets to allow for the payment of Priority Claims and Administrative Claims.<br><br>Recoveries from the Type A Causes | 14.3% |

---

[6] These amounts represent estimated Allowed Claims, and, with the exception of the Allowed Class 2 Claims and Wellspring Subordinated Claims, do not represent amounts actually asserted by creditors in proofs of claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases, and objections to such Claims have not been fully litigated and may continue following the Effective Date. Moreover, as of the date hereof, the Bar Date has not been established and, as a result, additional Claims may be asserted against the Debtors. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[7] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases. As set forth in footnote 5 above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

| | | of Action will be distributed to Holders of Allowed Prepetition Term Loan Claims in the percentage amounts as described herein. | |
|---|---|---|---|
| Class 3 – Other Secured Claims | $815 | Paid in Full | 100% |
| Class 4 – General Unsecured Claims and Prepetition Term Loan Deficiency Claim | $43,000,000 in General Unsecured Claims amounting to approximately 16% of total Class 4 Claims.<br><br>$223,828,000 in Prepetition Term Loan Deficiency Claims amounting to approximately 84% of total Class 4 Claims. | Holders of Allowed General Unsecured Claims and Prepetition Term Loan Deficiency Claims will share in recoveries from both Type A and Type B Causes of Action in the percentage amounts described herein. | Unknown |
| Class 5 – Wellspring Subordinated Claims | $3,486,259[8] | No Distribution | 0% |
| Class 6 – Equity Interests | $0 | No Distribution | 0% |

---

[8] Wellspring has asserted Claims against the Debtors totaling not less than $3,486,259 for unpaid management fees and expenses owed pursuant to the Management Agreement, plus other contingent and unliquidated amounts. As described in this Combined Plan and Disclosure Statement, the Prepetition Term Loan Agent and the Committee allege that pursuant to the terms of the Prepetition Term Loan Agreement, Wellspring's Claims arising from the Management Agreement are contractually prohibited and subordinated to the Prepetition Term Loan Lenders until the Obligations (as defined in the Prepetition Term Loan Agreement) owing to the Prepetition Term Loan Lenders are indefeasibly paid in full, and as such have no value. As described herein, to the extent that the Bankruptcy Court finds that Wellspring's Claims are subordinate, by agreement or otherwise, such Claims shall be treated as Class 5 Wellspring Subordinated Claims. To the extent that any of Wellspring's Claims are not found to be subordinate, such Claims shall be General Unsecured Claims under this Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

## V.

## CONFIRMATION AND VOTING PROCEDURES

### A.    Confirmation Procedure

1.    Confirmation Hearing

A hearing before the Bankruptcy Court has been scheduled for October 21, 2019 at 10:00 a.m. (ET) at the United States Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom #2, Wilmington, DE 19801 to consider (i) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code, and (ii) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

2.    Procedure for Objections

Any objection to approval or confirmation of the Combined Plan and Disclosure Statement must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objection must be filed with the Bankruptcy Court and served on the Debtors' counsel, Committee's counsel, the UST, the Prepetition Term Loan Agent's counsel, and all parties who have filed a notice of appearance by 4:00 p.m., prevailing Eastern Time, on October 15, 2019.  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.

3.    Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the

-43-

requirements for confirmation in these Chapter 11 Cases are that the Combined Plan and Disclosure Statement be:  (i) accepted by all impaired classes of Claims and Equity Interests, or if rejected by an impaired class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such class; and (ii) feasible.

If the Combined Plan and Disclosure Statement is rejected by an impaired Class, as part of the Bankruptcy Court's analysis of whether the Combined Plan and Disclosure Statement is "fair and equitable" with respect to such Class, the Bankruptcy Court will consider whether the Combined Plan and Disclosure Statement is in the "best interests" of impaired Creditors.  The "best interests" of impaired creditors test requires that each Holder of a Claim that has not voted to accept the Combined Plan and Disclosure Statement and belongs to an impaired Class receive or retain under the Combined Plan and Disclosure Statement property of a value that is not less than the value such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To determine what members of each impaired Class of Claims would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that a liquidation of the Debtors' assets would generate in the context of a chapter 7 liquidation. The amount available for satisfaction of Claims would consist of the proceeds resulting from the liquidation, reduced by the Claims of secured creditors to the extent of the value of their collateral, and the costs and expenses of the liquidation.

Because the Combined Plan and Disclosure Statement is a plan of orderly liquidation, each Class of Creditors will receive substantially the same treatment it would receive if the Debtors' assets were liquidated pursuant to chapter 7 of the Bankruptcy Code, except that the Estates will neither be taxed with the additional expenses and commissions of a chapter 7 trustee

-44-

nor delayed by such a trustee's appointment and need to become familiar with these Chapter 11 Cases.  Attached as **Exhibit A** is a liquidation analysis prepared by the Debtors' financial advisors reflecting a greater distribution to Creditors pursuant to the Combined Plan and Disclosure Statement than Creditors would receive in a hypothetical chapter 7 liquidation.  Accordingly, the Debtors believe the Combined Plan and Disclosure Statement satisfies the "best interests" of impaired creditors test.

In addition, to confirm the Combined Plan and Disclosure Statement, the Bankruptcy Court must also find that:

a.    The Combined Plan and Disclosure Statement has classified claims and interests in a permissible manner;

b.    The Combined Plan and Disclosure Statement complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.    The Combined Plan and Disclosure Statement has been proposed in good faith.

4.    Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a claim or equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with priority Claims, secured Claims, unsecured Claims, and Equity Interests.  The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

-45-

B.    **Voting Procedure**

    1.    Impaired Claims and Equity Interests

Pursuant to Bankruptcy Code section 1126, only the Holders of Claims in Classes "Impaired" by the Combined Plan and Disclosure Statement that may receive a payment or Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement.  Pursuant to Bankruptcy Code section 1124, a Class of Claims may be "Impaired" if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims treated in such Class.  The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement.  The Holders of Claims in any Class that will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

    2.    Eligibility to Vote on the Combined Plan and Disclosure Statement

Unless otherwise ordered by the Bankruptcy Court, only Holders of Prepetition Term Loan Claims in Class 2 and General Unsecured Claims and Prepetition Term Loan Deficiency Claims in Class 4 may vote on the Combined Plan and Disclosure Statement.  In order to vote on the Combined Plan and Disclosure Statement, you must hold a Claim in Class 2 or 4 and have timely filed a proof of Claim or have a Claim that is identified on the Schedules that is not listed as disputed, unliquidated or contingent, or be the holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

-46-

3.      Solicitation Notice

All parties in interest will receive a notice containing (a) notice of the Confirmation Hearing; (b) the email address, wlancaster@mwe.com, at which parties in interest may request copies of the Combined Plan and Disclosure Statement, ballot, and related documents; and (c) a telephone number, (212) 547-5511, through which parties in interest can request to obtain paper copies of the Combined Plan and Disclosure Statement, ballot, and related documents.  Holders of Claims in Classes 2 and 4, which are the only Classes entitled to vote to accept or reject the Combined Plan and Disclosure Statement, will be provided a notice and a ballot.  Each Holder of a Claim in Classes 2 or 4 should complete its respective ballot by (i) indicating such Holder's decision to either accept or reject the Combined Plan and Disclosure Statement in the boxes provided on the ballot, and (ii) signing and returning the ballot to the address set forth on the ballot (please note that envelopes and prepaid postage will be included with the ballot).  BALLOTS SENT BY FACSIMILE OR EMAIL TRANSMISSION ARE NOT ALLOWED AND WILL NOT BE COUNTED.

4.      Procedure/Voting Deadlines

In order for your ballot to count, you must complete, date, sign and properly mail a paper ballot to the Claims and Balloting Agent at the following address:

| If by Regular Mail: | If by Messenger or Overnight Delivery: |
|---|---|
| BMC Group<br>Attn: SportCo Claims Processing<br>PO Box 90100<br>     Los Angeles, CA 90009 | BMC Group<br>Attn: SportCo Claims Processing<br>3732 West 120th Street<br>Hawthorne, CA 90250 |

The Claims and Balloting Agent must RECEIVE original ballots by mail or overnight delivery, on or before **October 15, 2019 at 4:00 p.m. (ET)** (the "**Voting Deadline**").

-47-

Any Ballot that is timely received and contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Combined Plan and Disclosure Statement will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Combined Plan and Disclosure Statement.

The following Ballots will not be counted or considered for any purpose in determining whether the Combined Plan and Disclosure Statement has been accepted or rejected:

1.      any Ballot received after the Voting Deadline, unless the Court grants an extension of the Voting Deadline with respect to such Ballot;

2.      any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

3.      any Ballot cast by a Person or Entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Combined Plan and Disclosure Statement;

4.      any Ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which there is no timely filed proof of Claim or no Bankruptcy Rule 3018(a) motion has been filed by the Bankruptcy Rule 3018(a) motion deadline;

5.      any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of the Combined Plan and Disclosure Statement;

6.      any unsigned Ballot; or

7.      any Ballot that is submitted by fax or email.

-48-

5.      Acceptance of the Combined Plan and Disclosure Statement.

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one impaired Class of creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY, IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM, AND THE NAME OF THE CREDITOR.**

## VI.

## TREATMENT OF UNCLASSIFIED CLAIMS

A.      **Administrative Expense Bar Date.**

Administrative Expense Claims must be filed no later than the Administrative Expense Bar Date (except for claims pursuant to 28 U.S.C. § 1930 and administrative tax claims pursuant to 11 U.S.C. § 503(b)(1)(D), for which no request for payment is required; and except for Claims under Bankruptcy Code section 503(b)(9), which will be filed by the proposed general bar date of October 16, 2019).  Holders of Administrative Expense Claims that do not file proofs of Claim on or before the Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors or their Estates.

-49-

B.    **Administrative Expense Claims.**

Except to the extent that any Person entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the date that is the later of the Effective Date and seven (7) Business Days after such Administrative Expense Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable.  All administrative and Professional fees that are Allowed Administrative Expense Claims shall be paid up to and capped by the Approved Budget[9]; *provided, however*, that the Debtors reserve their right to seek payment of such administrative and Debtors' Professional fees in excess of the budgeted amount in light of any unforeseen substantial circumstances, so long as such amounts are incurred after September 30, 2019 and do not exceed $100,000 allocated solely to the Debtors' Professionals.

If Administrative Claims exceed the Approved Budget, the Plan may not be able to go effective.  The most recent Approved Budget filed with the Bankruptcy Court provides for the payment in full of all estimated Allowed Administrative Claims.  As noted in the Liquidation Analysis, all Professional Fees set forth in the Approved Budget have been segregated into a separate, fully funded account, and all Administrative Expenses that have accrued to date have been paid in the ordinary course of business.  Therefore, barring any unforeseen substantial Administrative Claims, the Debtors and their Chief Restructuring Officer believe that the budgeted amounts are sufficient to provide for the payment in full of Administrative Claims.

The deadline for submission by Professionals for Bankruptcy Court approval of accrued compensation and reimbursement of expenses shall be thirty (30) days after the Effective Date.

---

[9] For the avoidance of doubt, any budgeted Professional fees that are unearned in any week shall rollover and thereby increase the budgeted Professional fee amount for subsequent weeks.

-50-

C.    **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the date that is the earlier of the Effective Date and seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable; or (b) Cash in an amount agreed to by the Liquidation Trustee and such Holder; *provided, however*, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be disallowed pursuant to this Combined Plan and Disclosure Statement and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Liquidation Trust, Liquidation Trustee, the Debtors, or the Debtors' Estates, as applicable.

As detailed in the most recent Approved Budget filed with the Bankruptcy Court, and barring any unforeseen substantial circumstances, the Debtors and their Chief Restructuring Officer believe that the budgeted amounts are sufficient to provide for the payment in full of all Priority Tax Claims.

D.    **Intercompany Claims.**

All Intercompany Claims shall be disallowed pursuant to this Combined Plan and Disclosure Statement as of the Effective Date.

E.    **Payment of Statutory Fees.**

All fees due and payable prior to the Effective Date, pursuant to section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Debtors or the Liquidation Trustee, as applicable, from Cash on Hand.  On and after the Effective Date and through the closing of the Chapter 11 Cases, (i) all fees payable pursuant to section 1930 of

-51-

title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Liquidation Trustee, and (ii) the Liquidation Trustee shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the UST. Notwithstanding any substantive consolidation of the Debtors under the Combined Plan and Disclosure Statement, each and every Debtor and the Liquidation Trustee shall remain obligated to pay quarterly fees to the Office of the UST until the particular Debtor's case has been closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## VII.

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS; ESTIMATED RECOVERIES

Claims, other than Administrative Expense Claims, Priority Tax Claims and Intercompany Claims are classified for all purposes, including voting, confirmation and Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

| Class | Status |
|---|---|
| Class 1 – Other Priority Claims | Unimpaired |
| Class 2 – Prepetition Term Loan Claims | Impaired |
| Class 3 – Other Secured Claims | Unimpaired |
| Class 4 – General Unsecured Claims and Prepetition Term Loan Deficiency Claims | Impaired |
| Class 5 – Wellspring Subordinated Claims[10] | Impaired |
| Class 6 – Equity Interests | Impaired |

---

[10] To the extent that any Wellspring Claim is not a Class 5 Wellspring Subordinated Claim, such claim shall be treated as a Class 4 General Unsecured Claim.

DM_US 161828158-10.105320.0013
71111814.1

A.    **TREATMENT OF CLAIMS AND EQUITY INTERESTS.**

1.    CLASS 1 –OTHER PRIORITY CLAIMS

a.    Classification.  Class 1 consists of Other Priority Claims against the Debtors.

b.    Impairment and Voting.  Class 1 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 1 Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    Treatment.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Debtors or the Liquidation Trustee, as applicable, Holders of Allowed Class 1 Claims, if any, shall be paid on the date that is the earlier of the Effective Date and seven (7) Business Days after such Allowed Class 1 Claim becomes an Allowed Claim, in full and final satisfaction of their Class 1 Claims, Cash equal to one hundred percent (100%) of their Allowed Claims.

2.    CLASS 2 – PREPETITION TERM LOAN CLAIMS

a.    Classification.  Class 2 consists of the Prepetition Term Loan Claims against the Debtors.

b.    Allowance.  The Prepetition Term Loan Claims shall be Allowed in the amount of $249,800,405.00, less any payments made to the Prepetition Term Loan Agent after the Petition Date.

c.    Impairment and Voting.  Class 2 is impaired by the Combined Plan and Disclosure Statement.  Holders of Class 2 Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

-53-

d.    <u>Treatment</u>.  Holders of Prepetition Term Loan Claims shall be deemed to hold Allowed Prepetition Term Loan Claims and shall receive on account of such Allowed Prepetition Term Loan Claims on the Effective Date the Remaining Assets and proceeds thereof (but excluding the Liquidation Trust Funding Amount B and proceeds of Causes of Action), subject to a carve out from proceeds of the Remaining Assets for payment of Administrative Claims (up to the amounts set forth in the Approved Budget) and Other Priority Claims. Holders of Allowed Prepetition Term Loan Claims shall have an Allowed Prepetition Term Loan Deficiency Claim equal to the portion of their Allowed Prepetition Term Loan Claim that is unpaid, calculated in accordance with Bankruptcy Code section 506(a) and on account of such Allowed Prepetition Term Loan Deficiency Claim, shall further receive a share of Recoveries from the Type A Causes of Action and Type B Causes of Action as set forth in Section VII A.4.c(i)-(ii) hereto.

3.    <u>CLASS 3 – OTHER SECURED CLAIMS</u>

a.    <u>Classification</u>.  Class 3 consists of all Other Secured Claims against the Debtors.

b.    <u>Impairment and Voting</u>.  Class 3 is unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 3 Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    <u>Treatment</u>.  Unless otherwise agreed to by Holders of Allowed Class 3 Claims and the Debtors, Holders of Allowed Class 3 Claims, if any, shall receive in full satisfaction of such Allowed Class 3 Claim on the date that is the earlier of the Effective Date and seven (7) Business Days after such Allowed Class 3 Claim becomes an Allowed Claim, the

-54-

collateral securing their Claims, or Cash equal to one hundred percent (100%) of the value of the collateral securing their Allowed Claims.

        4.     <u>CLASS 4 – GENERAL UNSECURED CLAIMS AND PREPETITION TERM LOAN DEFICIENCY CLAIMS</u>

        a.     <u>Classification</u>.    Class 4 consists of General Unsecured Claims and Prepetition Term Loan Deficiency Claims against the Debtors.

        b.     <u>Impairment and Voting</u>.    Class 4 is impaired by the Combined Plan and Disclosure Statement.    Holders of Class 4 Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

        c.     <u>Treatment</u>.    Holders of Allowed Class 4 Claims shall receive an interest in the Recoveries from the Type A Causes of Action and Type B Causes of Action as follows:

        i.     *Type A Cause of Action Recoveries*: The Prepetition Term Loan Agent and those Prepetition Term Loan Lenders which agree to fund the Type A Causes of Action shall receive 38% of the proceeds from the Type A Causes of Action (representing repayment of (i) the costs associated with the prosecution of the Type A Causes of Action, including, but not limited to contingency fees, (ii) the general economic risk incurred in funding litigation, (iii) funding by the Prepetition Term Loan Agent of administrative and priority claims, (iv) the Effective Date waiver of the Allowed Prepetition Term Loan Diminution Claim, and (v) the Effective Date release of the Prepetition Term Loan Adequate Protection Liens), and the remaining 62% of such proceeds shall be distributed as follows: Holders of General Unsecured Claims shall be entitled to receive 15%,

and the Prepetition Term Loan Lenders on account of their Allowed

Prepetition Term Loan Deficiency Claims shall be entitled to receive 85%,

of the remaining proceeds from the Type A Causes of Action. The Type A

Cause of Action Recoveries shall be unaffected by any stay, removal,

remand, transfer (by any mechanism whatsoever, including but not limited

to an order granting a motion to transfer or a dismissal without prejudice

to refile in a different jurisdiction), or appeal of any of the Type A Causes

of Action.

ii.     *Type B Causes of Action Recoveries*: After repayment of the Liquidation

Trust Funding Amount B (plus any potential additional funding amounts

in accordance with the Liquidating Trust Agreement) to the Prepetition

Term Loan Agent and Prepetition Term Loan Lenders which agree to fund

the Type B Causes of Action (in each case up to the amounts such

Prepetition Term Loan Lender in fact participates in such funding whether

out of the Cash on hand in the Debtors' estates constituting cash collateral

of the Prepetition Term Loan Lenders or otherwise), and any additional

professional fees, expenses, and any and all other related costs associated

with the prosecution of the Type B Causes of Action, Holders of General

Unsecured Claims shall be entitled to receive 30%, and the Prepetition

Term Loan Deficiency Claims shall be entitled to receive 70%, of the

proceeds from the Type B Causes of Action.

DM_US 161828158-10.105320.0013
71111814.1

5.     <u>CLASS 5 – WELLSPRING SUBORDINATED CLAIMS</u>

     a.     <u>Classification</u>.  Class 5 consists of the Wellspring Subordinated Claims.[11]

     b.     <u>Impairment and Voting</u>.  Class 5 is impaired under the Combined Plan and Disclosure Statement.  The Holders of the Class 5 Wellspring Subordinated Claims are deemed to have rejected the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

     c.     <u>Treatment</u>.  The Holders of the Class 5 Wellspring Subordinated Claims will receive no Distribution.

6.     <u>CLASS 6– EQUITY INTERESTS</u>

     a.     <u>Classification</u>.  Class 6 consists of the Equity Interests in the Debtors.

     b.     <u>Impairment and Voting</u>.  Class 6 is impaired under the Combined Plan and Disclosure Statement.  The Holders of the Class 6 Equity Interests are deemed to have rejected the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

     c.     <u>Treatment</u>.  The Holders of the Class 6 Equity Interests will receive no Distribution.  On the Effective Date, all outstanding Equity Interests will be cancelled.  Upon cancellation, no property will be distributed to, or retained by, Holders of such Equity Interests.

**B.**     <u>Modification of Treatment of Claims and Equity Interests.</u>

The Liquidation Trustee reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim is being adversely affected.

---

[11] To the extent that the Bankruptcy Court finds that Wellspring's Claims are subordinate, by agreement or otherwise, such Claims shall be treated as Class 5 Wellspring Subordinated Claims.  To the extent that any of Wellspring's Claims are not found to be subordinate, such Claims shall be General Unsecured Claims under this Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

**VIII.**
**LIQUIDATION TRUST AND OVERSIGHT BOARD**

A.      **The Liquidation Trust**

1.      <u>Execution of the Liquidation Trust Agreement</u>.    On the Effective Date, the Liquidation Trust Agreement shall be executed by the Debtors and the Liquidation Trustee, and all other necessary steps shall be taken to establish the Liquidation Trust and the beneficial interests therein, which shall be for the benefit of the Liquidation Trust beneficiaries, whether their Claims are Allowed on or after the Effective Date.

2.      <u>Purpose of the Liquidation Trust</u>.  The Liquidation Trust shall be established for the purposes set forth in the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business.  The Liquidation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d).

3.      <u>Transfer of Assets and Assumption of Liabilities</u>.  On the Effective Date, after the payment of claims as described herein, (i) the Debtors shall, in accordance with the Combined Plan and Disclosure Statement, cause the Remaining Assets to be transferred to the Liquidation Trust subject only to Liens of the Prepetition Term Loan Agent under the Final Cash Collateral Order and Prepetition Term Loan Agreement, but free and clear of liens, claims, and interests, and subject to the Combined Plan and Disclosure Statement.  Under this Combined Plan and Disclosure Statement, the Debtors (under the authority of the Liquidation Trustee) shall retain any remaining obligations of the Debtors' Estates, including without limitation the payment of any Allowed Administrative Expense Claim and Allowed Priority Tax Claim or other Priority Claim.  Prior to the Effective Date, the Debtors shall be permitted to (i) continue liquidating their assets, including inventory, in the ordinary course of business, and (ii) file one or more motions with the Bankruptcy Court seeking approval of any non-ordinary course sale or sales of assets,

-58-

including the sale of the Debtors' facilities in Chapin and Newberry, South Carolina and Bellefontaine, Ohio. All proceeds from the sale of the Remaining Assets, excluding proceeds of any Causes of Action (which shall be distributed after the Effective Date as described herein), shall be paid to the Prepetition Term Loan Agent for the benefit of the Prepetition Term Loan Lenders and to be distributed to them in accordance with the Plan as and when received. The Debtors are authorized and directed to turnover their books, records, and all other materials – including, but not limited to, privileged books, records and other materials – to the Liquidation Trust.

4.    <u>Insurance Policies</u>. Nothing in this Combined Plan and Disclosure Statement, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies. For the avoidance of doubt, the Debtors are deemed to have assumed all of the Insurance Policies.

5.    <u>Liquidation and Dissolution of Debtors</u>.    On the Effective Date, without the necessity for any other or further action to be taken by or on behalf of the Debtors, and upon the transfer of the Remaining Assets to the Liquidation Trust in accordance with this Section VIII(B) of the Combined Plan and Disclosure Statement, the members of the board of directors or managers, as the case may be, and the respective officers, of each of the Debtors shall be deemed

-59-

to have been removed, and each such Debtor shall be deemed dissolved for all purposes unless the Liquidation Trustee determines that dissolution can have any adverse impact on the Causes of Action; provided, however, that neither the Debtors nor any party released pursuant to Article XI of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors.

6.      Liquidation Trust Funding Amount B. The Liquidation Trust will be funded initially with $500,000 in Cash from the Cash on hand in the Debtors' estates constituting cash collateral of the Prepetition Term Loan Lenders on the Effective Date and may be funded with additional amounts from such cash collateral, if any, at the sole discretion of Prepetition Term Loan Lenders.

7.      Exemption from Certain Taxes and Fees. Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor to the Liquidating Trust, or to any other Person pursuant to this Combined Plan and Disclosure Statement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

DM_US 161828158-10.105320.0013
71111814.1

B.    **The Liquidation Trustee**

1.    Appointment of the Liquidation Trustee.    Ronald Friedman of SilvermanAcampora LLP shall be the Liquidation Trustee, and upon and after the Effective Date shall serve in accordance with the Plan and the Liquidation Trust Agreement.

2.    Duties and Powers of the Liquidation Trustee.    The Liquidation Trustee shall (i) be a representative of the Estates pursuant to Bankruptcy Code section 1123 and serve as the Estates' representative before the Bankruptcy Court or any other court as necessary, (ii) have the rights and powers set forth in the Plan and the Liquidation Trust Agreement, and (iii) be governed in all things by the terms hereof and the Liquidation Trust Agreement.  Subject to the terms of the Plan and the Liquidation Trust Agreement, and the limitations and/or obligations set forth in this ARTICLE VIII, the Liquidation Trustee shall be authorized, empowered, and directed to take all actions necessary to comply with the Combined Plan and Disclosure Statement exercise and fulfill the duties and obligations arising hereunder, including, without limitation, the rights, powers, and duties of a trustee under Bankruptcy Code sections 704(a)(1), (2), (4), (5) and (7) and 1106(a)(6) and (7) and the rights and duties set forth in this Combined Plan and Disclosure Statement (i) to act as a trustee for and administer the Remaining Assets, including to enter into a lease or leases with respect to the Remaining Assets; (ii) to take any action necessary to effect the transfer of the Remaining Assets to the Liquidation Trust; (iii) to employ and compensate the Professionals currently employed by the Debtors or the Committee or other professionals; (iv) to collect, administer, sell, liquidate, and dispose of all Remaining Assets and to otherwise administer the Estates as necessary; (v) to review, investigate and (if appropriate) object to or seek equitable subordination of Claims against the Estates and to assert any rights of setoff, or other legal or equitable defenses of the Debtors; (vi) to investigate,

-61-

prosecute and/or settle all Causes of Action; (vii) to voluntarily engage in arbitration or mediation with respect to any Cause of Action; (viii) to invest the Debtors' Cash in any Permitted Investment;[12] (ix) to open, maintain, and administer bank accounts as necessary and appropriate to carry out the powers and duties of the Liquidation Trustee, including to establish, as necessary, disbursement accounts for the deposit and Distribution of all amounts distributed under the Combined Plan and Disclosure Statement; (x) to calculate and make all Distributions; (xi) to prepare and file tax returns for the Debtors; (xii) to seek estimation of contingent or unliquidated Claims under Bankruptcy Code section 502(c) or determinations of tax liabilities under Bankruptcy Code section 505; (xiii) to prepare and file quarterly financial reports after the Effective Date; (xiv) to comply with applicable Orders of the Bankruptcy Court over the matters set forth herein, and all applicable laws and regulations concerning the matters set forth herein; (xv) to enter into the Liquidating Trust Agreement; (xvi) to obtain any funding necessary for the prosecution of the Causes of Action; (xvii) to take all other actions in furtherance of the implementation of the Combined Plan and Disclosure Statement, including executing all agreements, instruments, and other documents necessary to perform the Liquidation Trustee's duties under the Combined Plan and Disclosure Statement and Liquidating Trust Agreement; and (xviii) after the Estates are fully administered, to bring a motion for a final decree closing the Chapter 11 Cases.  Except as otherwise set forth in the Combined Plan and Disclosure Statement or Liquidating Trust Agreement, the Liquidation Trustee may take any and all actions that it deems reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to prosecute or settle a Cause of Action or defend against or settle any Claim,

---

[12] The Liquidation Trustee shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

DM_US 161828158-10.105320.0013
71111814.1

including, without limitation, the retention of professionals, experts and consultants; and (b) enter into any settlement agreement in good faith.  While the Liquidation Trustee is granted standing to pursue the Type A Causes of Action and the Type B Causes of Action, this and the foregoing duties and powers of the Liquidation Trustee are subject in all respects to the rights of the Prepetition Term Loan Agent to consent to the Liquidation Trustee's conduct with regard to the Type A Causes of Action, and the rights of the Committee's appointee to the Oversight Board to consent to the Liquidation Trustee's conduct with regard to the Type B Causes of Action.

    3. <u>Effectuating Documents and Further Transactions</u>. All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Combined Plan and Disclosure Statement, Plan Supplement, the Confirmation Order and any other agreement or document related to or entered into in connection with the Combined Plan and Disclosure Statement, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement). The Debtors or Liquidation Trustee, as applicable, may, and all Holders of Allowed Claims receiving Distributions pursuant to this Combined Plan and Disclosure Statement, at the request or direction of the Debtors or Liquidation Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Combined Plan and Disclosure Statement.

DM_US 161828158-10.105320.0013
71111814.1

4.      Liquidation Trustee Compensation.    The Liquidation Trustee shall receive reasonable compensation from the Liquidation Trust Funding Amount B and from the proceeds of the Causes of Action for services rendered pursuant to the Combined Plan and Disclosure Statement without further Court Order on such terms and conditions as shall be set forth in the Liquidating Trust Agreement to be negotiated with the Prepetition Term Loan Agent and the Committee and filed with the Bankruptcy Court as part of the Plan Supplement.

5.      Accounting and Reporting.  The Liquidation Trustee shall maintain an accounting of receipts and disbursements.  After the Effective Date, the Liquidation Trustee shall serve the UST with, and shall file with the Bankruptcy Court, a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Cases remain open, as well as a final financial report after the Bankruptcy Court enters a final decree closing each of the Chapter 11 Cases.

6.      Termination of the Liquidation Trust and Liquidation Trustee.  The Liquidation Trust and Liquidation Trustee shall be terminated upon the earlier of (i) the three (3) year anniversary of the Effective Date, or (ii) the entry by the Bankruptcy Court of a final decree closing each of the Chapter 11 Cases and submission by the Liquidation Trustee of the final financial report to the Bankruptcy Court, except the Liquidation Trust may be extended to the extent the litigation, of any Causes of Action, is ongoing.  On or prior to the date of termination of the Liquidation Trust, the Bankruptcy Court, upon motion the Liquidation Trustee, may extend the term of the Liquidation Trust for cause shown.  Upon termination of the Liquidation Trust, or as soon as practicable thereafter, the balance of any Cash and other property of the Liquidation Trust shall be given to Charity.

7.      The Liquidation Trustee may resign at any time by giving the Oversight Board at least 30 days' written notice of the Liquidation Trustee's intention to do so, in which case the

-64-

resignation shall be effective on the 30th day following issuance of such notice or such other date agreed to by the Liquidation Trustee and Oversight Board. In the event of a resignation, the resigning Liquidation Trustee shall render to the Oversight Board an accounting of monies and assets received, disbursed, and held during the term of office of the resigning Liquidation Trustee. In the event of a resignation of the Liquidation Trustee, the resigning Liquidation Trustee shall be entitled to payment of all compensation earned by the Liquidation Trustee through and including the effective date of such resignation.

8.      <u>Limitation on Liability</u>.  No recourse shall ever be had, directly or indirectly, against the Liquidation Trustee or its officers, directors, agents, employees, attorneys, advisors or other Professionals by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee under the Combined Plan and Disclosure Statement or by reason of the creation of any indebtedness by the Liquidation Trustee under the Combined Plan and Disclosure Statement for any purpose authorized by the Combined Plan and Disclosure Statement.  All such liabilities, covenants, and agreements of the Liquidation Trustee, its respective officers, directors, agents, employees, attorneys, advisors, or other Professionals, whether in writing or otherwise, under the Combined Plan and Disclosure Statement shall be enforceable, if at all, only against, and shall be satisfied only out of, the Remaining Assets. Every undertaking, contract, covenant or agreement entered into in writing by the Liquidation Trustee shall provide expressly against the personal liability of the Liquidation Trustee.  The Liquidation Trustee and its officers, directors, agents, employees, attorneys, advisors and other Professionals shall not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their respective best judgment,

DM_US 161828158-10.105320.0013
71111814.1

and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Liquidation Trustee shall be conclusive evidence of such good faith and best judgment; *provided*, *however*, that this Section VIII(B) shall not apply to any bad faith, fraud, gross negligence, or willful misconduct by the Liquidation Trustee or its officers, directors, agents, employees, attorneys, advisors or other Professionals.

9.      Reliance on Documents.    The Liquidation Trustee may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity, including, without limitation, claims lists and data provided to the Liquidation Trustee by the Claims and Balloting Agent, the Debtors, or the Debtors' financial advisor, upon which the Liquidation Trustee shall base Distributions.

## C.      **Oversight Board**

1.      Appointment.    The Oversight Board's membership shall consist of one Person appointed by the Committee and two Persons appointed by the Prepetition Term Loan Agent no later than ten (10) calendar days prior to the Voting Deadline.  On or before the Effective Date, the Debtors shall file in the Chapter 11 Cases a notice identifying the initial members of the Oversight Board, and stating that any party may obtain a copy of such notice by contacting wlancaster@mwe.com or (212) 547-5511.

2.      Termination**.**  The Oversight Board shall continue in existence until such time as the Liquidation Trust is terminated or its member(s) unanimously elect to cause the Oversight Board's dissolution.

3.      Oversight Board Duties and Powers.    The Oversight Board shall represent the interests of Holders of Allowed General Unsecured Claims and Allowed Prepetition Term Loan

-66-

Claims during the existence of the Liquidation Trust and shall have the obligation to undertake in good faith each of the acts and the responsibilities set forth for the Oversight Board in this Combined Plan and Disclosure Statement to:

(a)     Terminate by unanimous vote the Liquidation Trustee for cause or upon resignation, death, incapacity or removal of the Liquidation Trustee, with the agreement of the Prepetition Term Loan Agent and the Committee, appoint a successor Liquidation Trustee; *provided*, that the Oversight Board shall file with the Bankruptcy Court a notice of the appointment of such successor;

(b)     Approve the sale of any Remaining Assets;

(c)     Receive and review any report detailing the means by which the Liquidation Trustee invests and/or insures the Remaining Assets pending final Distribution; and

(d)     Approve any and all actions of the Liquidation Trustee, as detailed in the Liquidation Trust Agreement.

4.     <u>Voting Rights</u>.   The Oversight Board shall create such by-laws (if any) as it deems necessary or convenient.

5.     <u>Reporting Rights</u>.   The Liquidation Trustee shall report to the Oversight Board at such period as agreed to by the Oversight Board and the Liquidation Trustee, as to the status of all Distributions, material litigation, investment/insurance of Remaining Assets, Claims objections, and all other material matters affecting the Allowed General Unsecured Claims and Prepetition Term Loan Deficiency Claims.  The Liquidation Trustee shall also host a monthly call with the Oversight Board, and all Prepetition Term Loan Lenders will be invited onto such call.

-67-

D.    **Causes of Action.**

1.    <u>Preservation of Causes of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code or any corresponding provision of federal or state laws, and except as otherwise provided in the Combined Plan and Disclosure Statement or the Confirmation Order, on and after the Effective Date, all Remaining Assets shall be transferred to the Liquidation Trust, and the Liquidation Trustee may, in accordance with this Combined Plan and Disclosure Statement, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Remaining Assets.  The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust.  Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors and the Committee prior to the Effective Date, shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.   Subject to Section XI.C of the Combined Plan and Disclosure Statement, these preserved Causes of Action include, but are not limited to, (i) the potential Causes of Action related to the South Carolina Action; (ii) any potential Causes of Action that may result from the Committee's investigation of the Wellspring Defendants; (iii) any Causes of Action resulting from the yet-undiscovered conduct of the Debtors', their managers, directors, and shareholders; (iv) any Causes of Action that may result from financial transactions that may have resulted in the improper taking of value out of the Debtors' estates; and (v) any other potential Causes of Action that likely exist, but have yet to be identified, due to the Committee's ongoing investigation.

a.    *Type A Causes of Action*.  The Remaining Assets to be transferred to the Liquidation Trust on the Effective Date include the following, subject to Section XI.C of the

-68-

Combined Plan and Disclosure Statement, "Type A Causes of Action": The First, Second and Fifth Causes of Action, and those aspects of the Sixth Cause of Action that arise from the First, Second and Fifth Causes of Action, filed by Prepetition Term Loan Agent  (collectively, the "Prospect Claims") in a pending lawsuit filed in the Court of Common Pleas for the County of Lexington, South Carolina captioned *Prospect Capital Corp. v. Wellspring Capital Management LLC, et al.*, Civil Action No. 2019-CP-32-02045 (the "South Carolina Action") against (i) Wellspring Capital Management LLC, Wellspring Capital Partners IV, L.P., WCM GenPar IV, L.P., and WCM GenPar IV GP, LLC (collectively, "Wellspring"), (ii) Alexander E. Carles, William F. Dawson, Jr., and John E. Morningstar (collectively with  Wellspring, the "Wellspring Defendants"), and (iii) Bradley Johnson, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek, Andrew Kupchik, and John Does One through One Hundred, along with (x) any cause of action that seeks any of the damages arising from any of the Prospect Claims and (y) any direct cause of action possessed by the Prepetition Term Loan Agent (together, the "Type A Causes of Action"), with the proceeds to be shared as set forth herein.

The Prepetition Term Loan Agent shall have sole discretion over the conduct of the litigation of any and all Type A Causes of Action, including, but not limited to, with respect to the choice and funding of counsel and expenses. The Liquidation Trustee shall consult with the two Persons appointed by the Prepetition Term Loan Agent to the Oversight Board in connection with all aspects of the Type A Causes of Action.

The Prepetition Term Loan Agent shall amend the South Carolina Complaint to dismiss without prejudice all causes of action that are not Type A Causes of Action, after consultation with the Liquidation Trustee.  After consultation with the Liquidation Trustee, the Prepetition

-69-

Term Loan Agent intends to substitute, or add, the Liquidation Trustee as the, or an additional, named plaintiff with respect to the Type A Causes of Action, and such substitution or addition shall have no effect on this Section VIII D.1.a. as a whole, Section VIII D.1.b. below, and Section VII A.4.c(i)-(ii) above.  The provisions in this Section VIII D.1.a as a whole, Section VIII D.1.b. below, and Section VII A.4.c(i)-(ii) above shall be unaffected by any stay, removal, remand, transfer (by any mechanism whatsoever, including but not limited to an order granting a motion to transfer or a dismissal without prejudice to refile in a different jurisdiction), or appeal of any of the Type A Causes of Action.

In the event that the Type A Causes of Action are transferred to the Bankruptcy Court and consolidated, in any manner with the Type B Causes of Action (*e.g*., for discovery only and/or trial), counsel for both matters shall negotiate and enter into joint prosecution agreement whereby counsel responsible for prosecuting the Type B Causes of Action shall be designated lead counsel.  The Prepetition Term Loan Agent shall maintain day-to-day authority and control over the Type A Causes of Action.

The Type A Causes of Action shall be unaffected by any stay, removal, remand, transfer (by any mechanism whatsoever, including but not limited to an order granting a motion to transfer or a dismissal without prejudice to refile in a different jurisdiction), or appeal of any of the Type A Causes of Action.

        b.     *Type B Causes of Action*.  The Remaining Assets to be transferred to the Liquidation Trust on the Effective Date include the following "Type B Causes of Action": All Causes of Action preserved and not released under this Combined Plan and Disclosure Statement aside from the Type A Causes of Action, including, but expressly not limited to, Causes of Action against the Debtors' current and former directors, officers and/or managers, any third-

DM_US 161828158-10.105320.0013
71111814.1

party, and claims against Insiders (as defined in the Bankruptcy Code), Avoidance Actions or otherwise shall collectively be referred to as the "Type B Causes of Action", with the proceeds to be shared as detailed in Section VIII.A.4.c.ii (Type B Causes of Action Recoveries) of the Combined Plan and Disclosure Statement.

The Committee's appointee to the Oversight Board shall have sole discretion over the conduct of the litigation of any and all Type B Causes of Action, including, but not limited to, with respect to the choice of counsel, except that with respect to the funding of counsel and expenses, the definition of "Liquidation Trust Funding Amount B" and Section VIII. A.5 of the Combined Plan and Disclosure Statement shall apply.   For the avoidance of doubt, the Liquidation Trust Agreement shall vest all power to consent to the Liquidation Trustee's conduct in the Type B Causes of Action (including the settlement thereof) in the Committee's appointee to the Oversight Board. The Liquidation Trustee shall consult with the Person appointed by the Committee to the Oversight Board in connection with all aspects of the Type B Causes of Action.

The Liquidation Trust Funding Amount B shall be used solely (i) to fund the litigation by the Liquidation Trustee of the Type B Causes of Action, and (ii) by the Liquidation Trustee to conduct daily trust business (*i.e.*, claims reconciliation, reporting, etc.).

In the event a dispute arises over whether a claim or cause of action is a Type A Cause of Action or Type B Cause of Action, counsel for the Type A Causes of Action and the Type B Causes of Action shall meet and confer and attempt to resolve the dispute.  If a resolution cannot be reached, the dispute shall be presented to, and resolved by, the Oversight Board.

2.      No Waiver.  Except as otherwise explicitly provided in this Combined Plan and Disclosure Statement, nothing in the Combined Plan and Disclosure Statement shall be deemed

DM_US 161828158-10.105320.0013
71111814.1

to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estates may have or choose to assert on behalf of the Debtors or their respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law.  No entity may rely on the absence of a specific reference in the Combined Plan and Disclosure Statement to any Cause of Action or account receivable against it as an indication that the Liquidation Trustee will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of the Combined Plan and Disclosure Statement.  The Debtors intend to preserve, and expressly reserve, all Causes of Action, rights, and remedies, if any, the Debtors may have against any and all Persons for the benefit of their Estates and Creditors.

3.    <u>Authority to Act</u>.  Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization or other action by such stockholders, equity security holders, officers, directors, partners, managers, members or other owners of such entities or notice to, order of or hearing before the Bankruptcy Court.

DM_US 161828158-10.105320.0013
71111814.1

IX.

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER
## THE COMBINED PLAN AND DISCLOSURE STATEMENT

**A.**     **Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank, an electronic wire, or ACH transfer.

**B.**     **Objections to and Resolution of Claims.**

The Liquidation Trustee shall have the right to file objections to Claims after the Effective Date.  All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Liquidation Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court.

**C.**     **Claims Objection Deadline.**

The Liquidation Trustee, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later than the Claims Objection Deadline; *provided*, *however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Liquidation Trustee for cause.

**D.**     **No Distribution Pending Allowance.**

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

-73-

E.    **Escrow of Cash Distributions.**

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Liquidation Trustee shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would otherwise be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim, but for the pendency of a dispute with respect thereto.  The Liquidation Trustee shall also segregate any interest, dividends or proceeds of such Cash.  Such Cash, together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

F.    **Distribution After Allowance.**

Except as otherwise provided herein, within the earlier of (i) seven (7) Business Days after a Claim becomes an Allowed Claim, and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Liquidation Trustee shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

G.    **Investment of Segregated Cash and Property.**

To the extent practicable, the Liquidation Trustee may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof in any Permitted Investment; *provided, however,* that the Liquidation Trustee shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

DM_US 161828158-10.105320.0013
71111814.1

**H.**    **Delivery of Distributions.**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Liquidation Trustee has not received a written notice of a change of address.  The Liquidation Trustee shall be entitled to conclusively rely on the Distribution Matrix for purposes of making Distributions.

1.    <u>Undeliverable Distributions</u>.  If the Distribution to the Holder of any Claim is returned to the Liquidation Trustee as undeliverable, no further distribution shall be made to such holder unless and until the Liquidation Trustee is notified in writing of such Holder's then current address.  Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable, or (ii) such undeliverable Distribution becomes an Unclaimed Distribution.

2.    Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within 30 days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, the Liquidation Trustee shall make distributions of all Cash and property that has become deliverable during the preceding quarter.  Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

DM_US 161828158-10.105320.0013
71111814.1

3.       The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided, however*, nothing contained in the Combined Plan and Disclosure Statement shall require the Liquidation Trustee to locate any Holder or an Allowed Claim.

**I.       Unclaimed Distributions.**

Any Cash or other property to be distributed under the Combined Plan and Disclosure Statement shall revert to the Liquidation Trustee if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline, without any further motion or court order.  If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution made to such Entity shall be deemed to be reduced to zero.  Any Unclaimed Distributions to Holders of General Unsecured Claims shall be donated to Charity if the amount of the Unclaimed Distribution exceeds the cost of effectuating another Distribution.

**J.       Set-Off.**

The Debtors and/or Liquidation Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records and in accordance with the Bankruptcy Code.

**K.       Minimum Distributions.**

Notwithstanding anything herein to the contrary, the Liquidation Trustee shall not be required to make Distributions or payments of less than $50.00.

DM_US 161828158-10.105320.0013
71111814.1

**X.**

**IMPLEMENTATION AND EFFECT OF CONFIRMATION**
**OF COMBINED PLAN AND DISCLOSURE STATEMENT**

**A.**      **Means for Implementation of the Combined Plan and Disclosure Statement**.

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

1.      Limited Substantive Consolidation. This Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Combined Plan and Disclosure Statement, including voting on this Combined Plan and Disclosure Statement by the Holders of Claims and making any Distributions to Holders of Claims. On the Effective Date: (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against, and a single obligation of, the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Plan and Disclosure Statement shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to

-77-

this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtors.

The Debtors propose limited substantive consolidation as described herein for a number of reasons. Prepetition, the Prepetition Term Loan Lenders obtained a blanket lien on substantially all of the assets of the Prepetition Borrowers, including the Prepetition Borrowers' accounts receivable, inventory, cash collateral, and real estate, all as set forth in greater detail in the Prepetition Term Loan Agreement and related documents. The Prepetition Term Loan Obligations are guaranteed by SportCo and United Sporting Cos., both of which are holding companies with no business operations, and whose only assets are equity interests in the other Debtors (which interests, pursuant to this Combined Plan and Disclosure Statement, will receive no recovery and have no value).

Prior to the Petition Date, the Prepetition Term Loan Lenders extended credit to the Debtors as consolidated entities. For example, under the Prepetition Term Loan Agreement, the Prepetition Term Loan Lenders received combined financial reports from the Debtors and calculated covenant compliance based on the assets and liabilities of all of the Debtor entities. The restrictions imposed on the Prepetition Borrowers by the Prepetition Term Loan Agreement (for example, restrictions on the ability to incur additional indebtedness, make certain payments, and sell certain assets) indicate that the Prepetition Term Loan Lenders relied upon the collective identity of the Prepetition Borrowers and Prepetition Guarantors when extending credit. In addition, when the Debtors commenced the liquidation of their assets but prior to their bankruptcy filings, the Debtors commingled their inventory and the proceeds from the sale of such inventory.

DM_US 161828158-10.105320.0013
71111814.1

Further, after the Petition Date, the Debtors have not maintained a separate accounting of assets and liabilities for each Debtor.  The Debtors' inventory remained commingled, as did the proceeds from the sale of such inventory.  This is because all proceeds of assets that have been liquidated are Cash Collateral of the Prepetition Term Loan Lenders.  The Debtors have either used such Cash Collateral for operational and wind-down purposes consistent with the Approved Budget (including the payment of Professional fees and other administrative expenses, which were not allocated on a Debtor by Debtor basis), or have paid down the Prepetition Term Loan Lenders as required under the Final Cash Collateral Order.  The Approved Budget pursuant to the Final Cash Collateral Order (and the interim debtor-in-possession financing and cash collateral order) was and continues to be a consolidated budget, reflecting cash flows and expenses on a consolidated basis.  Separating the Debtors' assets and liabilities at this stage would be prohibitive and harm all of the Debtors' creditors.

Limited substantive consolidation will avoid the inefficiency of proposing and voting in respect of entity-specific Claims where there would be no impact on distributions.  In fact, the Debtors, their Chief Restructuring Officer, the Prepetition Agent, and the Committee believe that creditors would receive less under separate plans than they stand to receive under the Combined Plan and Disclosure Statement because, among other things, the Combined Plan and Disclosure Statement provides for a recovery on account of General Unsecured Claims that Holders of such Claims would not otherwise stand to receive.  Therefore, the Debtors believe that the benefits of substantive consolidation outweigh any harm suffered by creditors.

2.      <u>Funding of Liabilities and Distributions</u>.  On the date that is the earlier of the Effective Date and the date that such Claims become Allowed Claims, the Liquidation Trustee shall pay using Cash on Hand: (i) Allowed Administrative Expense Claims, including Allowed

-79-

Professional Claims up to the amounts set forth in the Approved Budget (*provided, however*, that the Debtors reserve their right to seek payment of such administrative and Debtors' Professional fees in excess of the budgeted amount in light of any unforeseen substantial circumstances, so long as such amounts are incurred after September 30, 2019 and do not exceed $100,000 allocated solely to the Debtors' Professionals), (ii) Allowed Priority Tax Claims, (iii) Allowed Other Priority Claims, and (iv) Allowed Other Secured Claims.  On and after the Effective Date, the Liquidation Trustee shall use the Remaining Assets to satisfy the wind-down costs of the Estates consistent with the Approved Budget and make Distributions to the Holders of Allowed Prepetition Term Loan Claims.  The Liquidation Trust Funding Amount B shall be used solely (i) to fund the litigation by the Liquidation Trustee of the Type B Causes of Action, and (ii) by the Liquidation Trustee to conduct daily trust business (*i.e.*, claims reconciliation, reporting, etc.). One hundred percent (100%) of all outstanding Allowed section 503(b)(9) claims, if any, will be paid by the Debtors within 3 business days of the Effective Date.  If any section 503(b)(9) claim is not allowed by the Effective Date, the Liquidation Trustee must, in good faith, file any objections to such section 503(b)(9) claim within 60 days after the Effective Date or the claim will be deemed allowed in the amount asserted by the creditor and paid by the Liquidation Trustee within 10 days of allowance. Additionally, intercompany claims between the Debtors will receive no distribution under the Plan.

       3.      Recoveries from the Type A Causes of Action and Type B Causes of Action shall be distributed by the Liquidation Trustee as follows:

- *Type A Cause of Action Recoveries*: The Prepetition Term Loan Agent and those Prepetition Term Loan Lenders which agree to fund the Type A Causes of Action shall receive 38% of the proceeds from the Type A Causes of Action (representing repayment of (i) the costs associated with the prosecution of the Type A Causes of Action, including, but not limited to contingency

-80-

fees, (ii) the general economic risk incurred in funding litigation, (iii) funding by the Prepetition Term Loan Agent of administrative and priority claims, (iv) the Effective Date waiver of the Allowed Prepetition Term Loan Diminution Claim, and (v) the Effective Date release of the Prepetition Term Loan Adequate Protection Liens), and the remaining 62% of such proceeds shall be distributed as follows: Holders of General Unsecured Claims shall be entitled to receive 15%, and the Prepetition Term Loan Lenders on account of their Allowed Prepetition Term Loan Deficiency Claims shall be entitled to receive 85%, of the remaining proceeds from the Type A Causes of Action. The Type A Cause of Action Recoveries shall be unaffected by any stay, removal, remand, transfer (by any mechanism whatsoever, including but not limited to an order granting a motion to transfer or a dismissal without prejudice to refile in a different jurisdiction), or appeal of any of the Type A Causes of Action.

- *Type B Causes of Action Recoveries*: After repayment of the Liquidation Trust Funding Amount B (plus any potential additional funding amounts in accordance with the Liquidating Trust Agreement) to the Prepetition Term Loan Agent and Prepetition Term Loan Lenders which agree to fund the Type B Causes of Action (in each case up to the amounts such Prepetition Term Loan Lender in fact participates in such funding whether out of the Cash on hand in the Debtors' estates constituting cash collateral of the Prepetition Term Loan Lenders or otherwise), and any additional professional fees, expenses, and any and all other related costs associated with the prosecution of the Type B Causes of Action, Holders of General Unsecured Claims shall be entitled to receive 30%, and the Prepetition Term Loan Deficiency Claims shall be entitled to receive 70%, of the proceeds from the Type B Causes of Action.

4.    Professional Fee Escrow Account.  In accordance with this Combined Plan and Disclosure Statement, on the Confirmation Date, the Debtors shall establish with Winter Harbor, LLC (the Debtors' restructuring advisory service provider) a Professional Fee Escrow Account and shall fund such Professional Fee Escrow Account with Cash on Hand, including from proceeds of the Remaining Assets, in an amount equal to the sum of the Professional Fee amounts set forth in the Approved Budget plus a conditional $100,000 as provided for in Sections VI. B. and X. A.2. herein.  The Professional Fee Escrow Account shall be maintained in

-81-

trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates and shall not vest with the Liquidation Trustee/Liquidation Trust.  The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. When all Allowed Professional Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Liquidation Trustee and constitute a Liquidation Trust asset subject to further disposition as provided for herein.

5.      Corporate Action; Effectuating Documents; Further Transactions.    On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the member or managers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the members and managers of the Debtors.

## XI.

## INJUNCTION, EXCULPATION, AND RELEASE

### A.      Injunction.

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Except as otherwise provided in the Combined Plan and Disclosure Statement or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against, or Equity Interests in, the Debtors shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Combined Plan and

-82-

Disclosure Statement on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right, or subrogation of any kind against any debt, liability or obligation due to the Debtors, unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement; *provided, however*, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Plan and Disclosure Statement or the Confirmation Order; *provided, further*, that the foregoing provisions of this Article XI.A shall not apply to any acts, omissions, claims, causes of action or other obligations expressly set forth in and preserved by this Combined Plan and Disclosure Statement or any defenses thereto.

**B.**  **Exculpation.**

Except as otherwise specifically provided in this Combined Plan and Disclosure Statement, the Exculpated Parties and any of such parties' successors and assigns, solely in their capacities as such, shall not have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement or the administration of the Combined Plan and Disclosure Statement or the property to be liquidated and/or distributed under the Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence as determined

-83-

by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement.

The foregoing paragraph shall apply to attorneys only to the extent permissible under applicable bar rules and applicable case law.

**C.      Release By Debtors.**

AS OF THE EFFECTIVE DATE, THE DEBTORS AND DEBTORS IN POSSESSION, ON BEHALF OF THEMSELVES AND THEIR ESTATES, SHALL BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE AS AGAINST THE PREPETITION TERM LOAN AGENT AND THE PREPETITION TERM LOAN LENDERS ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES (OTHER THAN THE RIGHTS OF THE PLAN DEBTOR TO ENFORCE THE PLAN) THAT ARE BASED ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN OR THE DISCLOSURE STATEMENT, AND THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES IN ANY CAPACITY.

**XII.**

**EXECUTORY CONTRACTS**

**A.      Rejection of Executory Contracts.**

On the Effective Date, all Executory Contracts not assumed before the Confirmation Date will be deemed rejected.  For the avoidance of doubt, the Debtors shall assume Executory

-84-

Contracts, if any, relevant to the preservation of data necessary for the Liquidation Trustee to perform his duties under the Liquidation Trust Agreement. The Confirmation Order shall constitute an Order approving such rejections in this Section XII.A. The Debtors believe that all Claims arising from the rejection of Executory Contracts should be treated as General Unsecured Claims under the Combined Plan and Disclosure Statement. The rights of all parties with respect to the classification of such Claims are reserved. For the avoidance of doubt, the Debtors shall assume all of their Insurance Policies.

Unless otherwise specified, each Executory Contract assumed or rejected by the Debtors shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract.

**B.**     **Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement.**

If the rejection by the Debtors, pursuant to the Combined Plan and Disclosure Statement or otherwise, of an Executory Contract gives rise to a Claim, a Proof of Claim must be filed with the Claims and Balloting Agent on or before the deadline for filing proofs of Claim, once such a deadline is established by the Court.

## XIII.

## CONDITIONS TO THE EFFECTIVE DATE

**A.**     **Conditions Precedent to the Effective Date.**

The Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

1.     The Confirmation Order shall have become a Final Order.

DM_US 161828158-10.105320.0013
71111814.1

2.      All actions, documents, and agreements necessary to implement this Combined Plan and Disclosure Statement, including, without limitation, all actions, documents, and agreements necessary to implement any actions or transactions contemplated under this Combined Plan and Disclosure Statement, including the Liquidating Trust Agreement, shall have been effected or executed.

3.      The Liquidation Trustee and the Oversight Board shall be duly appointed, qualified and acting in their respective capacities.

4.      The Professional Fee Escrow Account shall be fully funded.

**B.      <u>Effect of Failure of Conditions.</u>**

If each condition to the Effective Date has not been satisfied or duly waived by the Debtors within forty-five (45) days after the Confirmation Date, *provided*, *however*, the Debtors shall provide written notice to the Committee and the Prepetition Term Loan Agent of any such waiver and an opportunity to consent, which consent shall not be unreasonably withheld, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court*; provided further, however*, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtors before the any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Section, the Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (A) constitute a waiver or release any Claims by or against the Debtors, or (B) prejudice in any manner the Debtors' rights.

DM_US 161828158-10.105320.0013
71111814.1

**C.**     **Waiver of Conditions to Confirmation and Effective Date.**

Each of the conditions to the Effective Date may be waived, in whole or in part, by the

Debtors, without notice or an Order of the Bankruptcy Court, *provided, however*, the Debtors

shall provide written notice to the Committee and the Prepetition Term Loan Agent of any such

waiver and an opportunity to consent, which consent shall not be unreasonably withheld.

## XIV.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and

related to, the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to,

and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other

things, the following purposes:

1.     To hear and determine any objections to Claims and to address any issues

relating to Disputed Claims;

2.     To enter and implement such Orders as may be appropriate in the event

the Confirmation Order is for any reason stayed, revoked, modified or vacated;

3.     To issue such Orders in aid of execution and consummation of the

Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the

Bankruptcy Code;

4.     To consider any amendments to, or modifications of, the Combined Plan

and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any

Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

-87-

5. To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

6. To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

7. To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

8. To hear any other matter not inconsistent with the Bankruptcy Code;

9. To enter a final decree closing the Chapter 11 Cases;

10. To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

11. To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending in the Bankruptcy Court on the Effective Date or filed prior to the Effective Date, *provided*, *however*, that nothing in this Paragraph or Combined Plan and Disclosure Statement shall be deemed to confer jurisdiction with respect to any Type A Cause of Action;

12. To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

13. To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Confirmation Order or any contract,

DM_US 161828158-10.105320.0013
71111814.1

instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement;

14.     To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

15.     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

16.     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, the hearing on the confirmation of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is discharged hereunder or for any other purpose; and

17.     To resolve any other matter or for any purpose specified in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Liquidating Trust Agreement, or any other document entered into in connection with any of the foregoing.

## XV.

## MISCELLANEOUS PROVISIONS

### A.     Amendment or Modification of the Combined Plan and Disclosure Statement.

Alterations, amendments or modifications of the Combined Plan and Disclosure Statement may be proposed in writing by the Debtors, at any time before the Confirmation Date, *provided that* the Combined Plan and Disclosure Statement, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, *provided also that* the Debtors have the prior written consent of the Prepetition Term Loan Agent and the Committee, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors

-89-

shall not propose any material modifications to the Combined Plan and Disclosure Statement without consent of the Prepetition Term Loan Agent and the Committee.

**B.      Severability.**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

**C.      Revocation or Withdrawal of the Combined Plan and Disclosure Statement.**

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or to prejudice in any manner the rights of either of the Debtors, or any Holders of Claims in any further proceedings involving the Debtors.

**D.      Binding Effect.**

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, and the Holders of Equity Interests, and their respective successors and assigns.

-90-

**E.**    **Notices.**

All notices, requests and demands to or upon the Liquidation Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, as shall be set forth in the Confirmation Order.

**F.**    **Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**G.**    **Withholding and Reporting Requirements.**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors and Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. All Beneficiaries, as a condition to receiving any distribution, shall provide the Liquidation Trustee with a completed and executed tax form W-8 or Tax Form W-9, or similar form.

**H.**    **Allocation of Distributions between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the

extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**I.**     **Headings.**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**J.**     **Exhibits/Schedules.**

All exhibits and schedules to the Combined Plan and Disclosure Statement are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**K.**     **Filing of Additional Documents.**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtors or the Liquidation Trustee, as applicable, shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

**L.**     **No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**M.**     **Successors and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

-92-

**N.**      **Reservation of Rights.**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors, Holders of Claims or Equity Interest before the Effective Date.

**O.**      **Implementation.**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement.

**P.**      **Inconsistency.**

In the event of any inconsistency among the Combined Plan and Disclosure Statement or any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

**Q.**      **Closing of Chapter 11 Cases.**

Upon substantial consummation, the Liquidation Trustee may move for a final decree to close the Chapter 11 Cases and to request such other Order as may be just.

**R.**      **Dissolution of the Committee.**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to

-93-

(i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) applications for payment of fees and reimbursement of expenses of Professionals, (iii) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Combined Plan and Disclosure Statement), and (iv) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

Dated:  November 6, 2019

SPORTCO HOLDINGS, INC.


By:      */s/ Dalton Edgecomb*
Name: Dalton Edgecomb
Title:   Chief Restructuring Officer

**Exhibit A**

Liquidation Analysis

## Liquidation Analysis[13]

### A. Introduction

Under the best interests of creditors test, as set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court shall confirm a chapter 11 plan only if the plan provides each holder of an impaired class of claims or interests that does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the best interests of creditors test, a hypothetical chapter 7 liquidation analysis (the "Liquidation Analysis") was prepared. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims in a hypothetical chapter 7 liquidation of all of the Debtors' assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Combined Plan and Disclosure Statement.

With respect to each Class of Claims under the Plan, each Holder of an Allowed Claim in such Class is estimated to receive the following percentage of its estimated aggregate Allowed Claim out of the Liquidation Proceeds (as defined below) in a Plan of Reorganization or a Chapter 7 liquidation:

| Estimated Recovery of Estimated Aggregate Amount of Allowed Claims | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Proposed Plan of Liquidation | | | Chapter 7 Liquidation | | | Plan vs. Liquidation | | |
| | Claim Amounts | Recovery | | Claim Amounts | Recovery | | Plan Better / (Worse) | | |
| | $ | % | $ | $ | % | $ | % | $ | |
| DIP Claims | $0 | N/A | $0 | $0 | N/A | $0 | N/A | $0 | |
| Other Priority Claims | $27,300 | 100.0% | $27,300 | $27,300 | 0.0% | $0 | 100.0% | $27,300 | |
| Unclassified Priority Tax Claims | $570,637 | 100.0% | $570,637 | $570,637 | 0.0% | $0 | 100.0% | $570,637 | |
| Prepetition Term Loan Claim | $249,800,405 | 14.3% | $35,792,569 | $249,800,405 | 13.6% | $33,915,842 | 0.8% | $1,876,727 | |
| Other Secured Claims | $815 | 100.0% | $815 | $815 | 0.0% | $0 | 100.0% | $815 | |
| General Unsecured Claims | $43,000,000 | 0.0% | $0 | $43,000,000 | 0.0% | $0 | 0.0% | $0 | |
| Prepetition Term Loan Deficiency Claim | $223,828,000 | 0.0% | $0 | $223,828,000 | 0.0% | $0 | 0.0% | $0 | |
| Equity Interests | $0 | N/A | $0 | $0 | N/A | $0 | N/A | $0 | |
| Administrative / Professional Fees (a) | $3,220,003 | 100.0% | $3,220,003 | $3,220,003 | 100.0% | $3,220,003 | 0.0% | $0 | |
| Unclassified Intercompany Claims | $0 | N/A | $0 | $0 | N/A | $0 | N/A | $0 | |
| Wellspring Claims | $3,486,259 | 0.0% | $0 | $3,486,259 | 0.0% | $0 | 0.0% | $0 | |

Notes
(a) Professional fees are 100% recoverable as funds have been segregated to a separate account and are fully funded.
    Additionally, Administrative Expenses are being funded as they come due and will be fully funded upon a conversion to Chapter 7 or upon final confirmation of a Chapter 11 plan of reorganization.

Estimated asset recovery is greater under the Plan due to the consistent and orderly process under the Plan as opposed to the cost intensive nature of a chapter 7 liquidation. Liquidation costs under the Plan are significantly less than a chapter 7 liquidation as the Plan assumes professionals that were retained in the Chapter 11 Cases would not have a "learning curve" regarding case history, litigation, and other relevant matters. The institutional case knowledge of the current chapter 11 professionals would likely result in a faster process and lower overall professional fees. Additionally, chapter 7 trustee fees on disbursed assets are not paid under the Plan and the Liquidation Trust will be more effective in collecting on Causes of Action under the Plan.

---

[13] 1. Unless otherwise specifically set forth in the Liquidation Analysis, all capitalized terms used but not defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

B.  Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the hypothetical proceeds from, and costs of the liquidation of the Debtors' assets, is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors' professionals, are inherently subject to significant business and economic uncertainties and contingencies beyond the control of the Debtors and their advisors.  Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation.  The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code.  The Liquidation Analysis is not intended and should not be used for any other purpose.  The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.  No independent appraisals were conducted in preparing the Liquidation Analysis.  ACCORDINGLY, WHILE DEEMED REASONABLE BASED ON THE FACTS CURRENTLY AVAILABLE, NEITHER THE DEBTORS NOR THEIR PROFESSIONALS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS.  ACTUAL RESULTS COULD VARY MATERIALLY.

In preparing the Liquidation Analysis, Winter Harbor, LLC ("Winter Harbor"), the Debtors' Chief Restructuring Officer and financial advisor, estimated Allowed Claims based upon a review of Claims listed on the proofs of Claim filed in the Chapter 11 CaseS, the Claims scheduled by the Debtors in their Schedules, and other financial information received from the Debtors, their advisors, and the Claims and Noticing Agent.  In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Cases or currently contingent, but which could be asserted and Allowed in a chapter 7 liquidation, including but not limited to Administrative Claims, liquidation costs, chapter 7 trustee fees, and other Allowed Claims.  To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims to be used for purposes of preparing the Liquidation Analysis. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION OR AN ADMISSION OF THE DEBTORS.  THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

## Global Notes to the Liquidation Analysis

1. Conversion Date and Appointment of a Chapter 7 Trustee

The Liquidation Analysis assumes conversion of the Chapter 11 Cases to a chapter 7 liquidation case on October 21, 2019.  It is assumed that the Bankruptcy Court would appoint one chapter 7 trustee (the "Trustee") to oversee the liquidation of the Estates.

The Liquidation Analysis is based upon certain assumptions discussed in the Combined Plan and Disclosure Statement and demonstrates that the Plan satisfies the "best interests" test.

2. Debtors' Assets

The Liquidation Analysis assumes all of the Debtors' assets have been liquidated to fund the operating expenses of the chapter 7 cases.

3. Factors Considered in Valuing Hypothetical Liquidation Proceeds

The following are some, but not all, of the considered factors that could negatively impact the recoveries estimated under a chapter 7 liquidation: (a) delays in the liquidation process; and (b) Allowed Claims are materially greater than estimated.

These factors may limit the amount of the proceeds generated by the liquidation of the Debtors' assets (the "Liquidation Proceeds") available to the Trustee.  For example, it is possible that the liquidation of the Debtors' remaining assets would be delayed while the trustee and his or her professionals become knowledgeable about the Chapter 11 Cases and the Debtors' business and assets.  This delay could materially reduce the value, on a "present value" basis, of the Liquidation Proceeds.

4. Waterfall and Recovery Ranges

The Liquidation Analysis assumes that the proceeds generated from the liquidation of all of the Debtors' assets will be reasonably available to the Trustee.  After deducting the costs of liquidation, including the Trustee's fees and expenses and other administrative expenses incurred in the liquidation, the Trustee would allocate net Liquidation Proceeds to Holders of Claims in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code.  The Liquidation Analysis provides for a recovery percentage for Claims upon the Trustee's application of the Liquidation Proceeds.  The recovery reflects an estimate of Liquidation Proceeds.

Winter Harbor (a) worked with the Debtors' other professionals, and (b) drew upon personal experiences in order to estimate recovery percentages by asset class.  Winter Harbor and the Debtors do not provide any assurance of such recoveries but have given their best estimates in this scenario.

**Specific Notes to the Asset and Liability Assumptions Contained in the Liquidation Analysis**

**Cash on Hand**

The Liquidation Analysis assumes the Debtors have exhausted all cash upon conversion to a Chapter 7 liquidation.

**Real Estate**

At the time of the conversion to a Chapter 7 liquidation, the Estates will still hold the properties located in Chapin, South Carolina and Newberry, South Carolina. The Liquidation Analysis assumes that the properties will be sold for the same net proceeds that are assumed in the Plan, however; it is assumed that the properties will take longer to sell in a Chapter 7 liquidation than with the Plan, thus the carrying costs will be greater in a Chapter 7 liquidation.

**Causes of Action**

Since it is not known whether chapter 5 causes of action will ever be pursued, no value from causes of action have been assigned to either the Plan or the Liquidation Analysis. However, the Liquidation Trust has a better chance to collect the Causes of Action under the Plan.

Winter Harbor LLC estimates that directors' and officers' insurance ("D&O Insurance") available in a successful prosecution of such directors' and officers' claims is $33 million, which represents $35 million in policy limits less $2 million of attorney fees paid from the policies. Given the inherent uncertainty of the litigation, both the Liquidation Analysis and recoveries under the Plan assign no value from D&O Insurance, although D&O recoveries are likely to be higher under a Plan as compared to Chapter 7 liquidation.

**Claims**

*DIP Claims*

DIP Claims are zero as the Debtors' debtor-in-possession financing has been fully repaid.

*Other Priority Claims*

Other Priority Claims largely consist of Priority Claims estimated from scheduled and filed proofs of Claim. The Liquidation Analysis assumes Allowed Other Priority Claims total $27,300.

*Unclassified Priority Tax Claims*

Unclassified Priority Tax Claims largely consist of Priority Tax Claims estimated from scheduled and filed proofs of Claim.  The Liquidation Analysis assumes Allowed Unclassified Priority Tax Claims total $570,637.

*Prepetition Term Loan Claims*

The Prepetition Term Loan Claims estimates is derived from scheduled Claims and filed proofs of Claim and amount to $249,800,405.

*Other Secured Claims*

The Prepetition Term Loan Claims estimates is derived from scheduled Claims and filed proofs of Claim and amount to $815.

*General Unsecured Claims and Prepetition Term Loan Deficiency Claims*

The majority of General Unsecured Claims were estimated from the proofs of Claim filed in the Chapter 11 Cases and the Debtors' Schedules filed with the Bankruptcy Court.  The Debtors have not begun a claims analysis or reconciliation and therefore cannot offer any further guidance in relation to the Allowed General Unsecured Claim amounts.  For the purpose of this analysis, the Debtors estimate that $43,000,000 of General Unsecured Claims and $223,828,000 of Prepetition Term Loan Deficiency Claims will be Allowed in the scenario.

*Equity Interests*

Equity Interests are zero.

*Administrative Expense Claims, Including Professional Claims*

Administrative Expense Claims, including Professional Claims, largely consist of Claims estimated from filed proofs of Claim.  Based upon scheduled and filed proof of Claims, $3,220,003 of Administrative / Professional Fee Claims are included in the Liquidation Analysis. These claims are 100% recoverable as funds have been segregated to a separate account and are fully funded. Additionally, Administrative Expenses are being funded as they come due and will be fully funded upon a conversion to chapter 7 or upon final confirmation of a chapter 11 plan of reorganization.

*Unclassified Intercompany Claims*

Unclassified Intercompany Claims are zero.

*Wellspring Claims*

Wellspring has asserted Claims against the Debtors totaling not less than $3,486,259 for unpaid management fees and expenses owed pursuant to the Management Agreement, plus other

contingent and unliquidated amounts. To the extent that the Bankruptcy Court finds that Wellspring's Claims are subordinate, by agreement or otherwise, such Claims shall be treated as Class 5 Wellspring Subordinated Claims. To the extent that any of Wellspring's Claims are not found to be subordinate, such Claims shall be General Unsecured Claims under this Combined Plan and Disclosure Statement.